UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SENECA INSURANCE<br>COMPANY, INC.<br>　　　　Plaintiff,<br><br>v.<br><br>SAFEWAY GROUP, INC.; WH-<br>TRI COUNTY SHOPPING<br>CENTER, LLC; and KEITH<br>MITCHELL,<br>　　　　Defendants,<br><br>v.<br><br>HAMBY & ALOISIO, INC.,<br>　　　　Third-Party Defendant. | )<br>)<br>)<br>)<br>)<br>) CIVIL FILE NO. 1:16-CV-00174-WSD<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF PLAINTIFF SENECA INSURANCE COMPANY, INC.

COMES NOW Seneca Insurance Company, Inc. (hereinafter "Plaintiff" or "Seneca"), and pursuant to Federal Rule of Civil Procedure 56 submits this Brief in Support of its Motion for Summary Judgment as follows:

## I.    INTRODUCTION

This declaratory judgment action stems from a lawsuit filed by Keith Mitchell (hereinafter "Mitchell") against WH-Tri County Shopping Center, LLC (hereinafter "WH-Tri County") and Safeway Group, Inc. (hereinafter "Safeway") in the State Court of Fulton County (hereinafter the "Underlying Lawsuit"). [See generally,

[1]

*Petition for Rescission and Declaratory Judgment* and Exhibit A to *Petition*]. Mitchell was shot on August 17, 2014 at Tri County Shopping Center (hereinafter the "property" or "premises") and alleges Safeway and WH-Tri County knew of various crimes occurring on the premises in the three years prior to his shooting, yet failed to exercise ordinary care to keep the premises safe.[1] [Exhibit "A": *Deposition of 30(b)(6) Rafat Shaikh*: pp. 155:14-25; 156:1-17; 263:1-4; Exhibit 36, ¶¶1, 16-30, 35, 37-39, 43 (hereinafter "*Safeway 30(b)(6) Depo.*")].[2]

Based upon Safeway's material misrepresentations in its October 2, 2013 Commercial Insurance Application (hereinafter "October 2013 Application") and the signed January 27, 2014 Commercial Insurance Application (hereinafter "January 2014 Application"), concerning claims, losses, occurrences, and crimes, Seneca seeks rescission of the Commercial General Liability (CGL) Policy in effect at the time of the Mitchell incident (hereinafter the "Policy"), as well as a determination it owes no duty to defend or indemnify Safeway and WH-Tri County in the Underlying Lawsuit. Without question, Safeway and WH-Tri County misrepresented multiple violent

---

[1] Seneca sent a reservation of rights letter to Safeway and WH-Tri County, wherein Seneca advised Safeway of potential coverage issues based on Safeway's misrepresentation or omission of material information in the Applications. [*Safeway 30(b)(6) Depo.*, pp. 264:12-25; 265:1-2; Exhibit 42 and Exhibit "B": *Deposition of John Mrakovcic*, pp. 57:10-13, 23-25; 58:1-2; 60:7-25; 61:1-6 (hereinafter "*Mrakovcic Depo.*")].

[2] Excerpts of the deposition transcripts, as cited herein, are attached hereto as Exhibits "A" through "H". The original transcripts will be filed with the Court.

crimes that resulted in claims, yet failed to disclose them to Seneca, warranting rescission of the Policy.

## II.    STATEMENT OF FACTS

WH-Tri County owns both the physical shopping center structure and parking lot of Tri County Shopping Center, located at 7400 Old National Highway in Fulton County, Georgia and Safeway manages the property. [*Safeway 30(b)(6) Depo.*, pp. 13: 12-13; 14:10-13; 16:23-25; 17:24-25; 18:1-5, 10-14; 19:19-24].[3]

### The Application And Underwriting Process

Hamby & Aloisio (hereinafter "H&A") procured insurance policies for Safeway for approximately six years prior to procuring the Seneca Policy. [*Safeway 30(b)(6) Depo.*, p. 146:4-7 and Exhibit "C": *Deposition of Rafat Shaikh*, pp. 11:16-25; 12:1-7 (hereinafter "*Shaikh Depo.*") and Exhibit "D": *30(b)(6) Deposition of Hamby & Aloisio*, pp. 66:24-25; 67:1-3 (hereinafter "*H&A Depo.*")]. Safeway admitted it relied on H&A to communicate with insurance companies to obtain quotes and find the best coverage and pricing. [*Safeway 30(b)(6) Depo.*, pp. 55:4-17; 157:25; 158:1-2]. H&A completes an application based upon information from its client and submits it on the client's behalf, as it did for Safeway here. [*H&A Depo.*,

---

[3] Rafat Shaikh, the CEO and Owner of Safeway, has been in the business of buying, selling and managing commercial shopping centers for the last 25 years. [*Safeway 30(b)(6) Depo.*, pp. 13:21; 14:20-23; 15:22-25; 16:1-4].

pp. 40:2-9; 42:17-22; 44:1-22; 67:18-24; 68:21-25; 69:1-2 and *Safeway 30(b)(6) Depo.*, pp. 253:19; 254:5-7]. H&A agent, Martin Friedman, was the point person for Safeway's Seneca Applications. [*Safeway 30(b)(6) Depo.*, pp. 53:17-25; 54:1].

All loss runs used to procure the Seneca Policy were either obtained by Safeway and provided to H&A, or obtained by H&A on behalf of Safeway. [*Safeway 30(b)(6) Depo.*, pp. 50:3-11; 165:2-25; 166:1-5; 200:8-12; Exhibits 37 and 38 and Exhibit "E": *Deposition of Martin M. Friedman*, p. 42:8-15 (hereinafter "*Friedman Depo.*")]. Loss runs provide information for claims filed against a policy and generally include the date of an occurrence, the name of the claimant, the date the claim is filed, the type of occurrence and a brief description, and the amounts of money paid, if any. [*H&A Depo.*, pp. 53:12-25: 54:1-5]. H&A reviews and discusses the loss runs with the client to ensure they are current and complete. [*H&A Depo.*, pp. 56:18-20; 58:1-13; 112:12-15; *Friedman Depo.*, p. 89:2-22]. However, it is Safeway's duty and responsibility to look at the loss runs and see whether they are accurate. [Exhibit "F": *Deposition of William D. Knepper, CPCU*, pp. 198:10-25; 199:1-21 (hereinafter "*Knepper Depo.*")]. Nonetheless, Safeway does not go through the loss runs to ensure all pertinent information is reflected regarding its properties, and any occurrences or incidents that occurred. [*Safeway 30(b)(6) Depo.*, pp. 162:12-25; 163:1-7 and Exhibit "G": *Deposition of 30(b)(6) Nayank Patel*, pp. 33:11-25;

[4]

38:1-10 (hereinafter *"Safeway 30(b)(6) Depo.(Patel)"*]. Seneca accepts loss runs submitted ninety (90) days prior to the effective date of a policy, however it is understood practice in the industry the agent and insured are expected to keep the company informed of any changes of the risk during the underwriting process. [Exhibit "H": D*eposition of Mitchell Pluskalowski*, pp. 29:25; 30:1-19 (hereinafter *"Pluskalowski Depo."*)]. It is incumbent upon Safeway and H&A to include any claims or losses or occurrences on the final application if not referenced in the loss runs. [*H&A Depo.*, p. 112:16-22].

### Safeway's Application

H&A, on behalf of Safeway, initially submitted an unsigned October 2013 Application to Seneca. [*Safeway 30(b)(6) Depo.*, pp. 208:6-25; 209:1-8; Exhibit 39].[4] Martin Friedman later met with Rafat Shaikh on January 27, 2014, at which time Mr. Friedman reviewed the January 2014 Application with Mr. Shaikh, line by line, and Mr. Shaikh signed the Application documents on behalf of Safeway. [*Friedman Depo.*, pp. 65:9-25; 66:1-14; 69:2-24; 72:21-25; 73:1 and *Safeway 30(b)(6) Depo.*, pp. Errata Sheet 252-253; 254:22-24; Exhibit 40, SEN005983-SEN0005984 and *Shaikh Depo.,* pp. 19:19-25; 20:1-25; 21:1-5; 24:7-20; 31:7-16; Exhibits 162 and

---

[4] Georgia law does not require a signed application and Seneca did not require a signed application for quoting or binding a policy because the application submitted should be truthful regardless of signature. [*Pluskalowski Depo.,* pp. 27:19-25; 28:1-10; 50:2-14; 226:18-20; 273:20-25 and *Knepper Depo.*, pp. 231:25; 232:1-23].

[5]

164]. Victor Aloisio signed the January 2014 Application on behalf of H&A. [*H&A Depo.*, pp. 160:20-25; 161:1-2, 18-25; 168:12-14; 169:12-17; Exhibit 72]. The Seneca Policy was bound the morning of January 29, 2014 and in effect January 30, 2014 through January 30, 2015. [*H&A Depo.*, pp. 159:18-19; 173:3-7 and *Safeway 30(b)(6) Depo.*, p. 41:13-18].[5]

The Applications submitted by Safeway were standard ACORD applications. [*Knepper Depo.*: Exhibit 131, p. 3].[6] These forms include established, unambiguous questions and requirements necessary so an underwriter can compete the underwriting process. [*Id.* at pp. 43:12-25; 44:1-15; 185:2-10; Exhibit 131, p. 3]. Notably, there is a section labeled "Loss History" on both the October 2013 Application and the January 2014 Application, which reads as follows:

> ENTER ALL CLAIMS OR LOSSES (REGARDLESS OF FAULT AND WHETHER OR NOT INSURED) OR OCCURRENCES THAT MAY GIVE RISE TO CLAIMS FOR THE PRIOR 5 YEARS.

[*Safeway 30(b)(6) Depo.*, pp. 220:8-25; 221:1-17; Exhibit 39: SEN000467; Exhibit 40: SEN005985]. Mr. Shaikh understood this required Safeway to enter all claims or losses regardless of fault, whether or not insured, or occurrences that may give rise to

---

[5] Tri-County is an additional named insured under the Policy. [*Safeway 30(b)(6) Depo.*, pp. at 225:2-17; Exhibit 39:SEN000499].

[6] ACORD is a global, nonprofit organization that has served the insurance industry since 1970 and whose main purpose is to standardize insurance forms and applications. [*Knepper Depo.*, p. 237:12-17; Exhibit 131, p. 3].

claims for the prior five years. [*Id.* at p. 221:12-17]. Nonetheless, Safeway did not list any specific losses or claims or occurrences, but simply referred to "loss runs on file with the underwriters." [*Id.* at pp. 222:9-21; 254:8-24; Exhibit 39: SEN000467 and *H&A Depo.*, p. 162:4-11]. Additionally, in the Commercial General Liability Section of the Applications, Safeway was presented with a series of yes and no questions, and answered "No" to Question 18: "HAVE ANY CRIMES OCCURRED OR BEEN ATTEMPTED ON YOUR PREMISES WITHIN THE LAST THREE (3) YEARS?" [*Safeway 30(b)(6) Depo.*: Exhibit 39: SEN000480]. Safeway admitted this response was completely incorrect. [*Id.* at pp. 230:4-25; 231:1-2, 21-23]. Just below Mr. Shaikh's signature, the Applications reflect the following statement:

> THE UNDERSIGNED IS AN AUTHORIZED REPRESENTATIVE OF THE APPLICANT AND REPRESENTS THAT REASONABLE ENQUIRY HAS BEEN MADE TO OBTAIN THE ANSWERS TO QUESTIONS ON THIS APPLICATION. HE/SHE REPRESENTS THAT THE ANSWERS ARE TRUE, CORRECT AND COMPLETE TO THE BEST OF HIS/HER KNOWLEDGE.

[*Safeway 30(b)(6) Depo.*: Exhibit 39: SEN000466; Exhibit 40: SEN005984]. Safeway admitted it was imperative to be truthful and honest in the information provided through H&A to any insurance company, including Seneca. [*Id.* at p. 158:13-18]. Safeway also understood the need to be complete, accurate and honest in the application process and in the information submitted to Seneca and any other

[7]

insurance company in order to procure and place insurance coverage. [Id. at pp. 158:19-23; 219:15-18; 224: 14-20].

### Safeway's Knowledge Of Claims, Losses, Occurrences And Crimes

Following the filing of Seneca's lawsuit, Safeway admitted it had knowledge on October 2, 2013 that crimes, including violent crimes,[7] had occurred or been attempted at Tri County Shopping Center, including in the parking lot of the premises, between September 30, 2010 and September 30, 2013. Specifically, Safeway admitted notice of the following:

1)    An alleged assault inside Club Ritz on August 27, 2011;
2)    An alleged rape and kidnapping on December 9, 2011;
3)    An alleged battery inside Club Ritz on June 22, 2012;
4)    An alleged assault inside Club Ritz on October 15, 2012; and
5)    An alleged shooting at the 50 Yard Line on June 26, 2013

[*Safeway 30(b)(6) Depo.*, pp. 58:12-17; 98:2-25; 99:1-22; 265:12-25; 266:1-9; Exhibit 2, Interrog. 8-12; Exhibit 3; Exhibit 13; Exhibit 47, Req. For Adm. 7-18, 55].

As relates to the August 27, 2011 incident, Safeway was notified of people shooting in the parking lot via an email sent on August 31, 2011 by Cynthia Slaton, an employee of Kingdom Cleaning Company, which Safeway hired to sweep the

---

[7] The term "violent crimes" was defined in discovery and at deposition to include: "assault, aggravated assault, battery, burglary, kidnapping, rape, sexual assault, shooting and murder." [*Safeway 30(b)(6) Depo*, p. 27:6-24]. Safeway admitted assault, aggravated assault, kidnapping, rape, sexual assault, shooting and murder are violent crimes. [*Id.* at pp. 27:25; 28:1-25; 30:1-12, 20-25; 31:1].

[8]

parking lot. [*Safeway 30(b)(6) Depo.*, pp. 72:13-25; 73:1-9; 74:4-25; 75:1; Exhibit 8]. This incident was not included on the loss runs provided to Seneca or disclosed in the Applications. [*Id.* at pp. 203:18-21, 25: 204:1-2].

The December 9, 2011 incident involved both a rape and kidnapping allegation. [*Safeway 30(b)(6) Depo.*, pp. 60:6-10; 61:1-3; Exhibit 5]. Travelers sent Safeway a claim acknowledgement in February 2012 in connection with that incident and a lawsuit was later filed and served in July 2013. [*Id.* at pp. 61:4-7; 139:23-25; 140:1-25; 141:1-10; Exhibit 5; Exhibit 29; Exhibit 47, Req. For Adm. 33-34 and *Safeway 30(b)(6) Depo.(Patel)*, pp. 26:14-25; 27:1-10]. During the application and underwriting process, Seneca had no knowledge of this incident, as it was not disclosed in the Applications or described as a rape in the loss runs. [*Mrakovcic Depo.*, pp. 83:8-25; 84:1-5 and *Friedman Depo.*, p. 57:9-23; Exhibit 61].[8]

Safeway had knowledge of the June 22, 2012 shooting incident on June 26, 2012. [*Safeway 30(b)(6) Depo.*, pp. 92:1-25: 93:1-15; Exhibit 11]. Safeway received correspondence dated November 12, 2012 regarding a claim by the victim, Carlton Miller. [*Id.* at pp. 143:22-25; 144:1-7; Exhibit 32]. A lawsuit was served on December 12, 2012 concerning the Miller incident. [*Id.* at pp. 65: 1-25; 66: 1-19; Exhibit 2, Interrog. 10; Exhibit 6; Exhibit 47, Req. For Adm. 37-38]. Safeway was

---

[8] This incident was identified on the H&A spreadsheet as an assault and battery. [*Friedman Depo.*, p. 57:9-23; Exhibit 61].

[9]

notified by security guard, Mark Hunt, of the October 15, 2012 incident the very day it occurred, and received a follow up email the following day. [*Id.* at pp. 69:9-25; 70:1-7; 95:23-25; 96:1-16; 97:14-21; Exhibit 12]. Again, this shooting was not disclosed in the Applications or on the loss runs provided to Seneca. [*Id.* at p. 203:18-24].[9]

In addition to the foregoing, Safeway received notice on July 5, 2012 of a January 13, 2012 assault involving Kiara Sims. [*Safeway 30(b)(6) Depo.*, pp. 141:13-25, 142:1-4; Exhibit 30 and *Safeway 30(b)(6) Depo. (Patel)*, p. 27:12-23]. Ms. Sims filed and served a lawsuit against Safeway and WH-Tri County in April 2013. [*Safeway 30(b)(6) Depo.*, p. 142:13-22; Exhibit 31; Exhibit 47, Req. For Adm. 35-36]. Safeway also knew of an incident involving Ray Smith, Jr. and forwarded notice of a "possible claim for injury that happened on November 12, 2011 at our property" to H&A on June 29, 2012. [*Safeway 30(b)(6) Depo.*, pp. 121:5-25; 122:1-5, 15-19; Exhibit 23 and *Safeway 30(b)(6) Depo. (Patel)*, pp. 23:16-25; 24:1-23 and *H&A Depo.*, p. 135: 1-7]. A lawsuit was filed on November 6, 2013 in connection with the Ray Smith incident. [*Safeway 30(b)(6) Depo.*, pp. 122:20-25; 123:1-16; Exhibit 24]. The Ray Smith shooting incident was a violent crime not disclosed in the Applications, and not included in loss runs provided to Seneca or on the spreadsheet

---

[9] Mark Hunt also notified Safeway of the June 26, 2013 shooting incident. [*Safeway 30(b)(6) Depo.*, pp. 58:12-17; 98:2-25; 99:1-22; Exhibit 3; Exhibit 13].

[10]

prepared by H&A. [*Id.* at p. 203:5-17 and *H&A Depo.*, pp. 123:22-25; 124:1-2, 125:19-25; 126:1-25; 127:1-8; 135:8-11; 136:5-9; 137:22-25; 149:18-23; 163:2-15; Exhibit 61].[10]

**<u>The November 2013 Triple Shooting</u>**

After the October 2013 Application was submitted, Safeway was advised via email of a shooting incident on the morning of November 4, 2013, which resulted in three people being shot, one fatally. [*Safeway 30(b)(6) Depo.*, pp. 100:1-18; 104:6-15; Exhibit 14 and *Safeway 30(b)(6) Depo. (Patel)*, pp. 22:10-16, 23:9-14; 41:19-25]. Rafat Shaikh visited the property the next day to find out what happened. [*Safeway 30(b)(6) Depo.*, pp. 100:24-25; 101:1-11].[11] However, Safeway did not notify H&A until January 27, 2014, the date on which it received correspondence (dated January 23, 2014) from an attorney representing the family of Terry Rankins, advising of their wrongful death claim. [*H&A Depo.*, pp. 155:9-25; 156:1-25; 157:1-25; 158:1-25;

---

[10] Safeway was notified on February 18, 2012 via email of a fight the evening prior that resulted in the death of a 21-year old male; an argument, wherein one woman struck another woman in the head with a brick; and a fight the year prior which led to a shooting or stabbing. [*Safeway 30(b)(6) Depo.*, pp. 76:19-25; 77:1-8, 21-25; 78:1-4, 17-25; 79:1-25; 80:1-7; Exhibit 9]. Safeway also knew of a theft at the Alter Ego store in April 2012. [*Id.* at pp. 126:18-25; 127:1-25; 128:1-4]. These incidents were not included in the loss runs or Applications. [*Id.* at pp. 203:18-21; 204:3-7]. Safeway was also advised of armed robberies at some tenants' businesses. [*Id.* at p. 90:20-24].
[11] Safeway admitted the November 4, 2013 incident was the worst thing that happened on the property and, as of November 2013, crime and violent crime was a big concern. [*Safeway 30(b)(6) Depo.*, pp. 136:20-25; 137:1-7, 15-17].

159:1, 14-19 and *Shaikh* Depo., pp. 23:4-25; 24:1-7; 27:23-25; 28:1-22; 29:2-23; Exhibit 164 and *Friedman Depo.*, pp. 91:13-25; 92:1-9]. Notably, Safeway knew the Rankins' family was making a claim for wrongful death and provided a copy of the correspondence to Martin Friedman at their meeting that same day. [*Friedman Depo.*, pp. 74:5-25; 75:1-12 and *Shaikh Depo.*, pp. 24:1-20; 29:4-20; 33:21-25; 34:1-20; Exhibit 165]. Mr. Shaikh and Mr. Friedman did not discuss whether there should be additional or changed information on the Application in light of the letter. [*Shaikh Depo.*, pp. 33: 9-14]. Instead, Mr. Shaikh signed the January 2014 Application on January 27, 2014 and it was submitted by H&A to Seneca with no mention of the November 4, 2013 triple shooting or the wrongful death claim, and the loss history was <u>not</u> updated to disclose either. [*Shaikh Depo.,* pp. 19:19-25; 20:1; 31:7-16 and *H&A Depo.*, pp. 160:5-12; 163:16-25; 164:1-2 and *Friedman Depo.*, pp. 65:20-25; 66:1-8; 76:3-9; 96:8-25; 97:1-15; 99:17-25; 100:1-12].[12] The Policy was bound a few days later. [*H&A Depo.*, pp. 159:18-19; 173:3-7].

### Seneca's Reliance On Safeway's Application Materials

Seneca's AVP Underwriting Manager, Mitchell Pluskalowski, relied on the information provided by Safeway in the Applications, including the information and answers to the questions regarding loss history and crimes in deciding whether to

---

[12] This letter was also emailed to H&A on January 28, 2014 and assigned "high importance." [*Shaikh Depo.*, pp. 26:17-24; 27:9-22].

[12]

quote and bind the policy to Safeway. [*Pluskalowski Depo.*, pp. 13:3-4; 14:21-24; 15: 21-24; 21:8-23; 271: 21-25; 272: 1-14]. Mr. Pluskalowski likened his job to piecing together a puzzle, noting, "all of the information leads to completing that puzzle. If any of the information is off or inaccurate, you have an incomplete puzzle." [*Id.* at p. 26: 17-22]. If the underwriter is given incomplete, inaccurate or false information in regard to exposure information and loss information, the entire underwriting process fails. [*Knepper Depo.*, Exhibit 131, pp. 3, 5]. If there is an inconsistency between the application and the loss runs, the application trumps. [*Id.* at pp. 257:17-25; 258:1-14].

Mitchell Pluskalowski testified the question regarding crimes on the Applications was material to Seneca's underwriting of the Policy. [*Pluskalowski Depo.*, p. 272:12-14]. He further testified had the November 2013 shooting incident or the kidnapping and rape incident been reported to Seneca, it would have chosen, at a minimum, one of three options: decline coverage, exclude coverage for assault and battery, or look for an additional premium. [*Id.* at pp. 257:3-25; 258:1-25; 259:1-14; 272:12-14; 273:2-19].

William Knepper, a Chartered Property Casualty Underwriter with over 40 years of experience in the commercial insurance field, has rendered several opinions on behalf of Seneca based on his years of experience, knowledge and employment in the insurance industry. [*Knepper Depo.*: Exhibit 131 and Exhibit 1 thereto]. Mr.

[13]

Knepper's opinions support Seneca's decision to rescind Safeway's CGL policy given Safeway's two material misrepresentations in the application package. [*Id.* at Exhibit 131, p. 2]. First, Safeway knew of claims, losses and occurrences which it concealed, including major crimes such as a rape and kidnapping, the 2011 Ray Smith shooting, and the November 2013 triple shooting and murder that occurred at Tri County Shopping Center. [*Knepper Depo.*, pp. 193:8-25; 194:1-20; Exhibit 131, pp. 3-4]. Safeway had the duty to notify H&A and Seneca of these serious crimes, and had Seneca received such information, Seneca would not have issued a policy, and/or would have provided a different amount of insurance, and/or would have charged a different premium rate, and/or would have excluded the assault and battery hazard on the Policy. [*Id.* at pp. 104:10-17; 184:15-25; 185:1; 200:21-25; 201:1-8; 207:3-13; Exhibit 131, pp. 4-5]. Additionally, Safeway provided patently false information when responding "No" to the question regarding "Have any crimes occurred or been attempted on your premises within the last three (3) years?," which Mr. Knepper finds incomprehensible given Safeway's knowledge of the many crimes that had been committed on the premises. [*Id.* at p. 211:9-17; Exhibit 131, p. 5-6]. If the underwriter had known there were hundreds of crimes at the premises, he could have gone a different direction and performed a further underwriting process to make an informed decision on the risk as to whether to issue the policy, issue it with an

[14]

exclusion or different term and conditions, or for a different premium. [*Id*. at pp. 211:3-6; 213:25; 214:1-25; 215:1-18; Exhibit 131, p. 6].[13]

### III. ARGUMENT AND CITATIONS OF AUTHORITY

#### A.    Standard of Review

To prevail on a motion for summary judgment, the moving party must demonstrate there is no genuine issue of material fact and the undisputed facts, viewed in the nonmovant's favor, warrant judgment as a matter of law. *See Latson v. Boaz*, 278 Ga. 113, 113 (2004). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not sufficiently probative." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986). As more fully demonstrated below, the record in this matter, taken as a whole, demonstrates there is no genuine issue of material fact for trial and Seneca is entitled to judgment as a matter of law.

#### B.    Safeway Is Bound By The Representations Made In The October 2013 and January 2014 Applications

Under Georgia law, independent insurance agents or brokers are generally considered the agent of the <u>insured</u>, not the insurer. *Georgia Casualty & Surety Co. v.*

---

[13] Although "loss runs" might include some list of claims, loss runs do not provide information about "…losses (regardless of fault and whether or not insured) or occurrences that may give rise to claims…" and in failing to provide this information to Seneca, Safeway misrepresented its overall insurance information and did not comply with Seneca's requirement. [*Knepper* Depo.: Exhibit 131, p. 3].

*Valleywood, Inc. et al.*, 783 S.E. 2d 411 (2016); *See also Canal Ins. Co. v. Harrison*, 189 Ga. App. 681, 683(1), 376 S.E.2d 923 (1988); *Sentinel Insurance Co. v. Action Stop, LLC at al.*, 958 F. Supp. 2d. 1368 (2013). Even material misrepresentations in an unsigned application submitted by an independent insurance agent can bind an insured. *Georgia Casualty & Surety Co. v. Valley Wood, Inc. et al.*, 783 S.E. 2d 411 (2016). It is undisputed H&A was Safeway's agent and Safeway is bound by all representations made by H&A during the application process. [*Safeway 30(b)(6) Depo.*, pp. 55:4-17; 146:4-7; 157:25; 158:1-2 and *Shaikh Depo.*, pp. 11:16-25; 12:1-7 and *H&A Depo.*, pp. 66:24-25; 67:1-3].[14]

Just above Mr. Shaikh's signature on the January 2014 Application is a "declaration statement" noting the answers are true, correct and complete to the best of his knowledge. [*Safeway 30(b)(6) Depo.*, Exhibit 40: SEN005984]. An applicant maintains a duty to read an application for insurance and is bound by the representations therein when he signs the application below a declaration statement like the one in Seneca's application. *See White v. Am. Family Life Assur. Co.*, 284 Ga.

---

[14] A principal is bound by all representations made by its agent in the business of the agency, and by the agent's willful concealment of material facts, even if unknown to the principal and known only by the agent. *See Georgia Casualty & Surety Co. v. Valleywood, Inc. et al.*, 783 S.E. 2d 411 (2016). Safeway is chargeable with the composite knowledge acquired by its officers and agents acting within the scope of their duties. *Graphic Arts Mutual Insurance Co. v. Pritchett*, 220 Ga. App. 430, 431, 469 S.E. 2d 199, 201 (1995).

[16]

App. 58, 62, 643 S.E. 2d 298, 301 (2007); *See also James, Hereford & McClelland v. Powell*, 198 Ga. App. 604 (1991)("[t]he terms of the [declaration] statement required him to examine *all* the questions and answers before he signed it"). The Court in *White* further stated:

> Although this declaration may act as a shield protecting the applicant if accused of intentional fraud, it is not a sword that the applicant can use to skewer the statute that voids insurance policies that are issued based on an applicant's inaccurate statements regarding material issues, regardless of the good faith of the applicant...Thus, in voiding insurance policies that were based on an applicant's inaccurate material statements, we have consistently held the good faith of the applicant to be irrelevant, even where the application contained the declaration that the statements therein were complete and true to the best of the applicant's knowledge and belief.

*White v. Am. Family Life Assur. Co.*, 284 Ga. App. 58, 61-62, 643 S.E. 2d 298, 301 (2007) *citing* O.C.G.A. § 33-24-7 (b) (2); *See also Jennings v. Life Ins. Co. of Ga.*, 212 Ga. App. 140, 141 (1) (1994); *Brown v. JMIC Life Ins. Co.*, 222 Ga. App. 670, 671-672 (1) (1996) (physical precedent only).

Seneca is entitled to rely on statements of Safeway or H&A as true, without conducting an independent investigation. *Graphic Arts Mutual Insurance Co. v. Pritchett*, 220 Ga. App. 430, 469 S.E. 2d 199 (1995); *Colony Insurance Co. v. 9400 Abercorn, LLC*, 866 F. Supp. 2d 1376, 1379 (S.D. Ga. 2012). "Buyer beware" or *caveat emptor* doctrine is not applicable. As aptly noted in Footnote 3 of *Colony Insurance Co. v. 9400 Abercorn, LLC*, 866 F. Supp. 2d 1376, 1379 (S.D. Ga. 2012):

[17]

It would drive up insurance costs if insurers had to investigate every last fact behind an insurance application that, by definition, is supplying risk and other premium-determinative data. It lowers insurance costs for everyone if an insurer can rely on the truth when asking risk-assessing, premium-determinative questions. Applicants are motivated to supply the *whole* truth because they know that insurers can deny coverage if they do not. An insured thus cannot lie - even by omission - to an insurer by insisting that, had the insurer been more diligent…it would have learned of a material fact. That would only manipulate lower premiums at the expense of honest insureds...Otherwise, "[m]isrepresentations, in order to avoid the contract of insurance, need not be the sole inducement to the contract nor the chief influence leading to action; it is enough if, as a contributory influence, they operate upon the mind and conduct of the other party to any material extent.

### C.    Safeway Made Material Misrepresentations In The October 2013 and January 2014 Applications

Under Georgia law, "misrepresentations, omissions, concealment of facts, and incorrect statements" made by an insured in an application for insurance will prevent recovery under the policy if (1) fraudulent; (2) material either to the acceptance of the risk or to the hazard assumed by the insurer; or (3) the insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract in as large an amount or at the premium rate as applied for, or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been known to the insurer as required either by the application for the policy or contract or otherwise. *See* O.C.G.A. §33-24-7(b). A "material misrepresentation" permitting an insurer to avoid coverage is one that would influence a prudent insurer in determining whether or not to accept the risk, or in fixing a different amount of

[18]

premium in the event of such acceptance. *Georgia Casualty & Surety Co. v. Valley Wood, Inc. et al.*, 783 S.E. 2d 411 (2016); *See also Colony Insurance Co. v. 9400 Abercorn, LLC*, 866 F. Supp. 2d 1376 (S.D. Ga. 2012); *Infinity Auto Ins. Co. v. Whigham*, 2015 WL 1281829 (2015). In other words, an insurer like Seneca will prevail if it can show that the misrepresentations, statements, omissions, or concealed facts were material either to the acceptance of the risk or to the hazard assumed by the insurer; or the insurer in good faith would have made a different underwriting decision if the true facts had been known to the insurer at the time of the application. O.C.G.A. §33-24-7(b)(2)(3). Whether misrepresentations in an insurance application are material from the view of a prudent insurer, so as to render the policy void, is ordinarily a question for the jury, but if the evidence excludes every reasonable inference except that it was material it becomes a question of law for the court. *Infinity Auto Ins. Co. v. Whigham*, 2015 WL 1281829 (2015); *See also Lively et al. v. Southern Heritage Insurance Co.*, 256 Ga. App. 195 (2002).

An insurer seeking to prevent recovery on a policy due to misrepresentations by an insured has the burden to prove one of the above three statutory grounds for policy avoidance. *See* O.C.G.A. 33-24-7; *See also Graphic Arts Mutual Insurance Co. v. Pritchett*, 220 Ga. App. 430, 469 S.E. 2d 199 (1995). It is immaterial whether the insured acted in good faith in completing the application. *Infinity Auto Ins. Co. v.*

[19]

*Whigham*, 2015 WL 1281829 (2015). Rather, "the insurer need only show that the representation was [objectively] false and that it was material." *Pope v. Mercury Indem. Co. of Ga.*, 297 Ga. App. 535, 677 S.E. 2d 693, 696-697 (2009)(citing to *White v. Am. Family Life Assur. Co.*, 284 Ga. App. 58, 61, 643 S.E. 2d 298, 300 (2007). The statement must be objectively false; the subjective belief of the insured is not at issue and the insurer is not required to prove that its insured intentionally misrepresented material facts when filling out the application. *The Home Indemnity Co. Manchester, New Hampshire v. Toombs et al.*, 910 F. Supp. 1569 (1995).[15] Material misrepresentations, omissions, concealment of facts, and incorrect statements by an insured can prevent recovery under a policy, even if the applicant lacked the intent to deceive or knowledge of the falsity when making the statement. *Perkins v. American International Specialty Lines Insurance Co. et al.*, 486 B.R. 212 (N.D. Ga. 2012); *See also The Home Indemnity Co. Manchester, New Hampshire v. Toombs et al.*, 910 F. Supp. 1569 (1995).

Seneca issued the Policy in reliance on Safeway's Applications and, specifically, the information provided by Safeway in response to the Loss History Section and Question 18 regarding crimes. There is nothing ambiguous about the

---

[15] Language in an insurance policy application that statements were complete and true to best of applicant's knowledge and belief do not prevent an insurer from voiding a policy based on material misrepresentation. (*White v. Am. Family Life Assurance Co.*, 284 Ga. App. 58, 61, 643 S.E. 2d 298, 300 (2007).

[20]

question asking Safeway to "*Enter all claims or losses (regardless of fault and whether or not insured) or occurrences that may give rise to claims for the prior 5 years.*" Mr. Shaikh understood this question required Safeway to enter all claims or losses regardless of fault, whether or not insured, or occurrences that may give rise to claims for the prior five years. [*Safeway 30(b)(6) Depo.*, p. 221:12-17].[16]

Safeway referred to "loss runs on file with the underwriters," but never went through the loss runs to ensure all pertinent information is reflected regarding its properties, and any occurrences or incidents that occurred. [*Safeway 30(b)(6) Depo.*, pp. 162:12-25; 163:1-7; *Safeway 30(b)(6) Depo.(Patel)*, pp. 33:11-25; 38:1-10)]. Had Safeway done so, it would certainly have recognized the numerous crimes missing from the loss runs, which it had full knowledge of prior to October 2013, including: the August 27, 2011 shooting incident; the December 9, 2011 rape and kidnapping incident; the June 22, 2012 shooting incident; the November 12, 2011 shooting incident; and the January 13, 2012 incident. [*Safeway 30(b)(6) Depo.* pp. 60:6-10;

---

[16] Policy language "is genuinely ambiguous only when the phrasing of the policy is so confusing that an average policyholder cannot make out the boundaries of coverage." *State Auto Prop & Cas. Co. v. Henderson,* 2013 WL 949877, at *3 M.D. Ga. 2013 (citing to Ga. Baptist Children's Home v. Essex Ins. Co., 207 Ga. App. 346, 427 S.E. 2d 798 (1993). "In construing an insurance policy, the test is not what the insurer intended its words to mean, but what a reasonable person in the position of the insured would understand them to mean." *Infinity Auto Ins. Co. v. Whigham,* 2015 WL 1281829 (2015). "Words, like people, are judged by the company they keep." *Anderson v. Se. Fidelity Ins. Co.,* 251 Ga. 556, 307 S.E. 2d 499, 500 (1983).

61:1-3; 92:1-25: 93:1-15; 141:13-25, 142:1-4; 203:5-24, 25: 204:1-2; Exhibit 5; Exhibit 11; Exhibit 30 and *Mrakovcic Depo.*, p. 83:8-15 and *H&A Depo.*, pp. 123:22-25; 124:1-2, 125:19-25; 126:1-25; 127:1-8; 135:8-11; 136:5-9; 137:22-25; 149:18-23; 163:2-15; Exhibit 61]. Additionally, before signing the January 27, 2014 Application, Safeway should have notified Seneca of the November 4, 2013 triple shooting incident that resulted in three people being shot, one fatally. [*Safeway 30(b)(6) Depo.*, pp. 100:1-18; 104:6-15; Exhibit 14 and *Safeway 30(b)(6) Depo. (Patel)*, pp. 22:10-16, 23:9-14; 41:19-25]. Safeway knew of this incident when it first occurred and knew a claim for wrongful death was being made, yet failed to ensure the January 2014 Application and loss history were updated and never disclosed it to Seneca at any time prior to the binding of the Policy. [*H&A Depo.*, pp. 159:18-19; 160:5-12; 163:16-25; 164:1-2; 173:3-7 and *Friedman Depo.*, pp. 74:5-25; 75:1-12; 76:3-9; 96:8-25; 97:1-15; 99:17-25; 100:1-12 and *Shaikh Depo.*, pp. 24:1-20; 29:4-20]. Safeway cannot claim these incidents were not "*occurrences that may give rise to claims,*" especially given Safeway had already been served with lawsuits in connection with the December 9, 2011 rape and kidnapping incident, the June 22, 2012 shooting incident, the November 12, 2011 shooting incident, and the January 13, 2012 incident before submitting its October 2013 Application to Seneca, and having received a letter from an attorney regarding the wrongful death claim just

[22]

prior to signing the January 2014 Application. [*Safeway 30(b)(6) Depo.*, Exhibit 2, Interrog. 10; Exhibit 5; Exhibit 6; Exhibit 24; Exhibit 29; Exhibit 31; Exhibit 32; Exhibit 47, Req. For Adm. 33-38].

Moreover, there is no ambiguity in the question asking *"Have any crimes occurred or been attempted on your premises within the last three (3) years)?"* The question is clearly asking whether crimes occurred on the premises within the last three years, or whether crimes had been attempted on the premises within the last three years. Certainly Mr. Shaikh, who had been in the business of buying, selling and managing commercial shopping centers for the last 25 years, understood premises to mean what he was insuring, i.e. the physical shopping center structure and parking lot of Tri County Shopping Center. [*Safeway 30(b)(6) Depo.*, pp. 13:12-13, 21; 14:10-13, 20-23; 15:22-25; 16:1-4, 23-25; 17:24-25; 18:1-5, 10-14; 19:19-24]. All of the violent crimes discussed herein, and other crimes excluded from the loss runs, were responsive to this question. Safeway was obligated to disclose these crimes, especially the Rankins' wrongful death claim once received, rather than referencing incomplete and outdated loss runs.

Without a doubt, there were material misrepresentations in the Applications which warrant rescission of the Policy. In light of these material misrepresentations and objectively false statements concerning claims, losses, occurrences and crimes,

[23]

Seneca was not afforded the ability to properly assess the risk in insuring Safeway. Both Mitchell Pluskalowski, the underwriter, and William Knepper testified had Seneca received information regarding the kidnapping and rape incident and the November 2013 shooting incident, Seneca would have chosen, at a minimum, one of three options: decline coverage, exclude coverage for assault and battery, or look for an additional premium. [*Pluskalowski Depo.*, pp. 257:3-25; 258:1-25; 259:1-14; 272:12-14; 273:2-19 and *Knepper Depo.*, pp. 104:10-17; 184:15-25; 185:1; 200:21-25; 201:1-8; 207:3-13; Exhibit 131, pp. 4-5].[17] William Knepper also testified had Seneca known of the hundreds of crimes on the premises which it subsequently learned of, the underwriter would have performed a further underwriting process to make an informed decision on the risk. [*Knepper Depo.*, pp. 211:3-6; 213:25; 214:1-25; 215:1-18; Exhibit 131, p. 6].

The misrepresentations by Safeway were material and the testimony of Mitchell Pluskalowski and William Knepper establish their materiality. At a minimum, Safeway's utter failure to disclose a triple shooting that resulted in a wrongful death claim received by Safeway the very day Mr. Shaikh signed the January 2014 Application was undoubtedly material to the risk, such that no jury

---

[17] William Knepper testified as to a fourth option: to provide a different amount of insurance. [*Knepper Depo.*, pp. 104:10-17; Exhibit 131, pp. 4-5].

[24]

need decide or even consider the issue and this Court should determine it as a matter of law.  To assert a known wrongful death claim is not "material" to an insurer's risk defies both logic and common sense.

## IV.  CONCLUSION

It is plain, palpable and undisputable that Seneca is entitled to summary judgment. The false statements and omissions were material to Seneca's acceptance of the risk in insuring Safeway. Had Safeway been forthcoming during the application process, Seneca would have made a different underwriting decision regarding the risk posed. Safeway's material misrepresentations mandate rescission of the Policy, *ab initio*, as well as a determination it owes no duty to defend or indemnify Safeway and WH-Tri County to the Underlying Lawsuit. WHEREFORE, for the foregoing reasons, Plaintiff Seneca respectfully requests that this Court grant Summary Judgment in its favor.

Respectfully submitted this 3rd day of January 2017.

**SWIFT, CURRIE, McGHEE & HIERS, LLP**

*/s/ Jennifer L. Nichols*

Maren R. Cave
Georgia Bar No. 278448
Jennifer L. Nichols
Georgia Bar No. 001294
***Attorneys for Plaintiff***

[25]

## CERTIFICATION

Pursuant to LR 7.1(D) NDGa., I certify that this document has been prepared in

Times New Roman Font 14 point, as approved by the Court in LR 5.1C, NDGa.

This 3rd day of January 2017.

**SWIFT, CURRIE, McGHEE & HIERS, LLP**

/s/ Jennifer L. Nichols
Maren R. Cave
Georgia Bar No. 278448
Jennifer L. Nichols
Georgia Bar No. 001294
***Attorneys for Plaintiff***

The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309-3231
Telephone: (404) 874-8800
Facsimile: (404) 888-6199
maren.cave@swiftcurrie.com
jennifer.nichols@swiftcurrie.com

[26]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SENECA INSURANCE COMPANY, INC.<br>       Plaintiff,<br><br>v.<br><br>SAFEWAY GROUP, INC.; WH-TRI COUNTY SHOPPING CENTER, LLC; and KEITH MITCHELL,<br>       Defendants,<br><br>v.<br><br>HAMBY & ALOISIO, INC.,<br>       Third-Party Defendant. | )<br>)<br>)<br>)<br>) CIVIL FILE NO. 1:16-CV-00174-WSD<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing *Brief in Support of Motion for Summary Judgment on Behalf of Plaintiff Seneca Insurance Company, Inc.* upon all parties to this matter via electronic service through the Court's CMC/EF system as follows:

Jessica F. Pardi
MORRIS, MANNING & MARTIN, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326

Charles L. Clay, Jr.

[27]

Jennifer R. Harbaugh
Christopher B. Newbern
CHUCK CLAY & ASSOCIATES, LLC
4401 Northside Parkway, Suite 520
Atlanta, GA 30327

Darren Summerville
SUMMERVILLE FIRM
400 Colony Square, Suite 2000
1201 Peachtree Street, N.E.
Atlanta, GA  30361

Kevin A. Doyle
Lokey, Mobley and Doyle, LLP
8425 Dunwoody Place
Atlanta, GA 30350

This 3rd day of January 2017.

**SWIFT, CURRIE, McGHEE & HIERS, LLP**

*/s/ Jennifer L. Nichols*
Maren R. Cave
Georgia Bar No. 278448
Jennifer L. Nichols
Georgia Bar No. 001294
***Attorneys for Plaintiff***

The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309-3231
Telephone: (404) 874-8800
Facsimile: (404) 888-6199
maren.cave@swiftcurrie.com
jennifer.nichols@swiftcurrie.com

[28]

3332129v.1