UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SENECA INSURANCE COMPANY, INC.      Plaintiff, <br> v. <br><br> SAFEWAY GROUP, INC.; WH-TRI COUNTY SHOPPING CENTER, LLC; and KEITH MITCHELL,      Defendants, <br> v. <br><br> HAMBY & ALOISIO, INC.,      Third-Party Defendant. | ) ) ) ) ) ) CIVIL FILE NO. 1:16-CV-00174-WSD ) ) ) ) ) ) ) ) ) ) ) |

**PLAINTIFF SENECA INSURANCE COMPANY, INC.'S
STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE ISSUE TO BE TRIED**

COMES NOW Seneca Insurance Company, Inc. (hereinafter "Plaintiff" or "Seneca"), and pursuant to Federal Rule of Civil Procedure 56, submits this Statement of Material Facts As to Which Is No Genuine Issue To be Tried, and shows this Court as follows:

1.

Keith Mitchell was shot on August 17, 2014 at Tri County Shopping Center (hereinafter the "property" or "premises"). [Exhibit "A": *Deposition of 30(b)(6) Rafat*

[1]

*Shaikh*: p. 263:1-4; Exhibit 36, ¶1 (hereinafter "*Safeway 30(b)(6) Depo.*")].

2.

Keith Mitchell alleges in his lawsuit pending in State Court of Fulton County that Safeway Group, Inc. (hereinafter "Safeway") and WH-Tri County Shopping Center, LLC (hereinafter "WH-Tri County") knew of various crimes occurring on the premises in the three years prior to his shooting, yet failed to exercise ordinary care to keep the premises safe. [*Safeway 30(b)(6) Depo.*, pp. 155:14-25; 156:1-17; 263:1-4; Exhibit 36, ¶¶16-30, 35, 37-39, 43].

3.

Seneca sent a reservation of rights letter to Safeway and WH-Tri County in connection with Keith Mitchell's lawsuit, wherein Seneca advised Safeway of potential coverage issues based on Safeway's misrepresentation or omission of material information in the Applications. [*Safeway 30(b)(6) Depo.*, pp. 264:12-25; 265:1-2; Exhibit 42 and Exhibit "B": *Deposition of John Mrakovcic*, pp. 57:10-13, 23-25; 58:1-2; 60:7-25; 61:1-6 (hereinafter "*Mrakovcic Depo.*")].

4.

WH-Tri County owns both the physical shopping center structure and parking lot of Tri County Shopping Center, located at 7400 Old National Highway in Fulton County, Georgia and Safeway manages the property. [*Safeway 30(b)(6) Depo.*, pp.

13: 12-13; 14:10-13; 16:23-25; 17:24-25; 18:1-5, 10-14; 19:19-24].

5.

Rafat Shaikh, the CEO and Owner of Safeway, has been in the business of buying, selling and managing commercial shopping centers for the last 25 years. [*Safeway 30(b)(6) Depo.*, pp. 13:21; 14:20-23; 15:22-25; 16:1-4].

6.

Hamby & Aloisio (hereinafter "H&A") procured insurance policies for Safeway for approximately six years prior to procuring the Seneca Policy. [*Safeway 30(b)(6) Depo.*, p. 146:4-7 and Exhibit "C": *Deposition of Rafat Shaikh*, pp. 11:16-25; 12:1-7 (hereinafter "*Shaikh Depo.*") and Exhibit "D": *30(b)(6) Deposition of Hamby & Aloisio*, pp. 66:24-25; 67:1-3 (hereinafter "*H&A Depo.*")].

7.

Safeway admitted it relied on H&A to communicate with insurance companies to obtain quotes and find the best coverage and pricing. [*Safeway 30(b)(6) Depo.*, pp. 55:4-17; 157:25; 158:1-2].

8.

H&A completes an application based upon information from its client and submits it on the client's behalf. [*H&A Depo.*, pp. 40:2-9; 42:17-22; 44:1-22; 67:18-24; 68:21-25; 69:1-2 and *Safeway 30(b)(6) Depo.*, pp. 253:19; 254:5-7].

[3]

9.

H&A agent, Martin Friedman, was the point person for Safeway's Seneca Applications. [*Safeway 30(b)(6) Depo.*, pp. 53:17-25; 54:1].

10.

All loss runs used to procure the Seneca Policy were either obtained by Safeway and provided to H&A, or obtained by H&A on behalf of Safeway. [*Safeway 30(b)(6) Depo.*, pp. 50:3-11; 165:2-25; 166:1-5; 200:8-12; Exhibits 37 and 38 and Exhibit "E": *Deposition of Martin M. Friedman*, p. 42:8-15 (hereinafter "*Friedman Depo.*")].

11.

Loss runs provide information for claims filed against a policy and generally include the date of an occurrence, the name of the claimant, the date the claim is filed, the type of occurrence and a brief description, and the amounts of money paid, if any. [*H&A Depo.*, pp. 53:12-25: 54:1-5].

12.

H&A reviews and discusses the loss runs with the client to ensure they are current and complete. [*H&A Depo.*, pp. 56:18-20; 58:1-13; 112:12-15; *Friedman Depo.*, p. 89:2-22].

[4]

13.

It is Safeway's duty and responsibility to look at the loss runs and see whether they are accurate. [Exhibit "F": *Deposition of William D. Knepper, CPCU*, pp. 198:10-25; 199:1-21 (hereinafter "*Knepper Depo.*")].

14.

Safeway does not go through the loss runs to ensure all pertinent information is reflected regarding its properties, and any occurrences or incidents that occurred. [*Safeway 30(b)(6) Depo.*, pp. 162:12-25; 163:1-7 and Exhibit "G": *Deposition of 30(b)(6) Nayank Patel*, pp. 33:11-25; 38:1-10 (hereinafter "*Safeway 30(b)(6) Depo.(Patel)*"].

15.

Seneca accepts loss runs submitted ninety (90) days prior to the effective date of a policy, [Exhibit "H": D*eposition of Mitchell Pluskalowski*, pp. 29:25; 30:1-19 (hereinafter "*Pluskalowski Depo.*")].

16.

It is understood practice in the insurance industry the agent and insured are expected to keep the insurance company informed of any changes of the risk during the underwriting process. [*Pluskalowski Depo.*, pp. 29:25; 30:1-19].

[5]

17.

It is incumbent upon Safeway and H&A to include any claims or losses or occurrences on the final application if not referenced in the loss runs. [*H&A Depo.*, p. 112:16-22].

18.

Georgia law does not require a signed insurance application. [*Knepper Depo.*, pp. 231:25; 232:1-23].

19.

Seneca did not require a signed application for quoting or binding a policy because the application submitted should be truthful regardless of signature. [*Pluskalowski Depo.*, pp. 27:19-25; 28:1-10; 50:2-14; 226:18-20; 273:20-25].

20.

H&A, on behalf of Safeway, initially submitted an unsigned October 2, 2013 Commercial Insurance Application (hereinafter "October 2013 Application") to Seneca. [*Safeway 30(b)(6) Depo.*, pp. 208:6-25; 209:1-8; Exhibit 39].

21.

Martin Friedman met with Rafat Shaikh on January 27, 2014, at which time Mr. Friedman reviewed the January 27, 2014 Commercial Insurance Application (hereinafter "January 2014 Application") with Mr. Shaikh, line by line, and Mr.

Shaikh signed the Application documents on behalf of Safeway. [*Friedman Depo.*, pp. 65:9-25; 66:1-14; 69:2-24; 72:21-25; 73:1 and *Safeway 30(b)(6) Depo.*, pp. Errata Sheet 252-253; 254:22-24; Exhibit 40, SEN005983-SEN0005984 and *Shaikh Depo.*, pp. 19:19-25; 20:1-25; 21:1-5; 24:7-20; 31:7-16; Exhibits 162 and 164].

22.

Victor Aloisio signed the January 2014 Application on behalf of H&A. [*H&A Depo.*, pp. 160:20-25; 161:1-2, 18-25; 168:12-14; 169:12-17; Exhibit 72].

23.

The Seneca Policy was bound the morning of January 29, 2014 and in effect January 30, 2014 through January 30, 2015. [*H&A Depo.*, pp. 159:18-19; 173:3-7 and *Safeway 30(b)(6) Depo.*, p. 41:13-18].

24.

Tri-County is an additional named insured under the Policy. [*Safeway 30(b)(6) Depo.*, pp. at 225:2-17; Exhibit 39:SEN000499].

25.

The Applications submitted by Safeway were standard ACORD applications. [*Knepper Depo.*: Exhibit 131, p. 3].

26.

ACORD application forms include established, unambiguous questions and

requirements necessary so an underwriter can compete the underwriting process. [*Knepper Depo.*, pp. 43:12-25; 44:1-15; 185:2-10; Exhibit 131, p. 3].

27.

There is a section labeled "Loss History" on both the October 2013 Application and the January 2014 Application, which reads as follows:

> ENTER ALL CLAIMS OR LOSSES (REGARDLESS OF FAULT AND WHETHER OR NOT INSURED) OR OCCURRENCES THAT MAY GIVE RISE TO CLAIMS FOR THE PRIOR 5 YEARS.

[*Safeway 30(b)(6) Depo.*, pp. 220:8-25; 221:1-17; Exhibit 39: SEN000467; Exhibit 40: SEN005985].

28.

Mr. Shaikh understood Safeway was required to enter all claims or losses regardless of fault, whether or not insured, or occurrences that may give rise to claims for the prior five years. [*Safeway 30(b)(6) Depo.*, p. 221:12-17].

29.

Safeway did not list any specific losses or claims or occurrences on the Applications and referred only to "loss runs on file with the underwriters." [*Safeway 30(b)(6) Depo.*, pp. 222:9-21; 254:8-24; Exhibit 39: SEN000467 and *H&A Depo.*, p. 162:4-11].

[8]

30.

In the Commercial General Liability Section of the Applications, Safeway was presented with a series of yes and no questions, and answered "No" to Question 18: "HAVE ANY CRIMES OCCURRED OR BEEN ATTEMPTED ON YOUR PREMISES WITHIN THE LAST THREE (3) YEARS?" [*Safeway 30(b)(6) Depo.*: Exhibit 39: SEN000480].

31.

Safeway admitted its response to Question 18 was completely incorrect. [*Safeway 30(b)(6) Depo.*, pp. 230:4-25; 231:1-2, 21-23].

32.

Just below Mr. Shaikh's signature, the Applications reflect the following statement:

> THE UNDERSIGNED IS AN AUTHORIZED REPRESENTATIVE OF THE APPLICANT AND REPRESENTS THAT REASONABLE ENQUIRY HAS BEEN MADE TO OBTAIN THE ANSWERS TO QUESTIONS ON THIS APPLICATION. HE/SHE REPRESENTS THAT THE ANSWERS ARE TRUE, CORRECT AND COMPLETE TO THE BEST OF HIS/HER KNOWLEDGE.

[*Safeway 30(b)(6) Depo.*: Exhibit 39: SEN000466; Exhibit 40: SEN005984].

33.

Safeway admitted it was imperative to be truthful and honest in the information provided through H&A to any insurance company, including Seneca. [*Safeway*

[9]

*30(b)(6) Depo.*, p. 158:13-18].

34.

Safeway understood the need to be complete, accurate and honest in the application process and in the information submitted to Seneca and any other insurance company in order to procure and place insurance coverage. [*Safeway 30(b)(6) Depo.*, pp. 158:19-23; 219:15-18; 224: 14-20].

35.

Following the filing of Seneca's lawsuit, Safeway admitted it had knowledge on October 2, 2013 that crimes, including violent crimes, had occurred or been attempted at Tri County Shopping Center, including in the parking lot of the premises, between September 30, 2010 and September 30, 2013. [*Safeway 30(b)(6) Depo.*, pp. 58:12-17; 98:2-25; 99:1-22; 265:12-25; 266:1-9; Exhibit 2, Interrog. 8-12; Exhibit 3; Exhibit 13; Exhibit 47, Req. For Adm. 7-18, 55].

36.

The term "violent crimes" was defined in discovery and at deposition to include: "assault, aggravated assault, battery, burglary, kidnapping, rape, sexual assault, shooting and murder." [*Safeway 30(b)(6) Depo*, p. 27:6-24].

37.

Safeway admitted assault, aggravated assault, kidnapping, rape, sexual assault,

shooting and murder are violent crimes. [*Safeway 30(b)(6) Depo.*, pp. 27:25; 28:1-25; 30:1-12, 20-25; 31:1].

38.

Following the filing of Seneca's lawsuit, Safeway admitted notice prior to October 2, 2013 of the following crimes:

1) An alleged assault inside Club Ritz on August 27, 2011;
2) An alleged rape and kidnapping on December 9, 2011;
3) An alleged battery inside Club Ritz on June 22, 2012;
4) An alleged assault inside Club Ritz on October 15, 2012; and
5) An alleged shooting at the 50 Yard Line on June 26, 2013

[*Safeway 30(b)(6) Depo.*, pp. 58:12-17; 98:2-25; 99:1-22; 265:12-25; 266:1-9; Exhibit 2, Interrog. 8-12; Exhibit 3; Exhibit 13; Exhibit 47, Req. For Adm. 7-18, 55].

39.

As relates to the August 27, 2011 incident, Safeway was notified of people shooting in the parking lot via an email sent on August 31, 2011 by Cynthia Slaton, an employee of Kingdom Cleaning Company, which Safeway hired to sweep the parking lot. [*Safeway 30(b)(6) Depo.*, pp. 72:13-25; 73:1-9; 74:4-25; 75:1; Exhibit 8].

40.

The August 27, 2011 incident was not included on the loss runs provided to Seneca or disclosed in the Applications. [*Safeway 30(b)(6) Depo.*, pp. 203:18-21, 25: 204:1-2].

[11]

41.

The December 9, 2011 incident involved both a rape and kidnapping allegation. [*Safeway 30(b)(6) Depo.*, pp. 60:6-10; 61:1-3; Exhibit 5].

42.

Travelers sent Safeway a claim acknowledgement in February 2012 in connection with the December 9, 2011 incident and a lawsuit was later filed and served in July 2013. [*Safeway 30(b)(6) Depo.*, pp. 61:4-7; 139:23-25; 140:1-25; 141:1-10; Exhibit 5; Exhibit 29; Exhibit 47, Req. For Adm. 33-34 and *Safeway 30(b)(6) Depo.(Patel)*, pp. 26:14-25; 27:1-10].

43.

During the application and underwriting process, Seneca had no knowledge of the December 9, 2011 incident, as it was not disclosed in the Applications or described as a rape in the loss runs. [*Mrakovcic Depo.*, pp. 83:8-25; 84:1-5 and *Friedman Depo.*, p. 57:9-23; Exhibit 61].

44.

The December 9, 2011 was identified on the H&A spreadsheet as an assault and battery. [*Friedman Depo.*, p. 57:9-23; Exhibit 61].

45.

Safeway had knowledge of the June 22, 2012 shooting incident on June 26,

2012. [*Safeway 30(b)(6) Depo.*, pp. 92:1-25: 93:1-15; Exhibit 11].

46.

Safeway received correspondence dated November 12, 2012 regarding a claim by Carlton Miller, the victim of the June 22, 2012 shooting incident. [*Safeway 30(b)(6) Depo.*, pp. 143:22-25; 144:1-7; Exhibit 32].

47.

A lawsuit was served on December 12, 2012 concerning the Miller incident. [*Safeway 30(b)(6) Depo.*, pp. 65: 1-25; 66: 1-19; Exhibit 2, Interrog. 10; Exhibit 6; Exhibit 47, Req. For Adm. 37-38].

48.

Safeway was notified by security guard, Mark Hunt, of the October 15, 2012 incident the very day it occurred, and received a follow up email the following day. [*Safeway 30(b)(6) Depo.*, pp. 69:9-25; 70:1-7; 95:23-25; 96:1-16; 97:14-21; Exhibit 12].

49.

The October 15, 2012 shooting incident was not disclosed in the Applications or on the loss runs provided to Seneca. [*Safeway 30(b)(6) Depo.*, p. 203:18-24].

50.

Mark Hunt notified Safeway of the June 26, 2013 shooting incident. [*Safeway*

*30(b)(6) Depo.*, pp. 58:12-17; 98:2-25; 99:1-22; Exhibit 3; Exhibit 13].

51.

Safeway received notice on July 5, 2012 of a January 13, 2012 assault involving Kiara Sims. [*Safeway 30(b)(6) Depo.*, pp. 141:13-25, 142:1-4; Exhibit 30 and *Safeway 30(b)(6) Depo. (Patel)*, p. 27:12-23].

52.

Kiara Sims filed and served a lawsuit against Safeway and WH-Tri County in April 2013. [*Safeway 30(b)(6) Depo.*, p. 142:13-22; Exhibit 31; Exhibit 47, Req. For Adm. 35-36].

53.

Safeway knew of an incident involving Ray Smith, Jr. and forwarded notice of a "possible claim for injury that happened on November 12, 2011 at our property" to H&A on June 29, 2012. [*Safeway 30(b)(6) Depo.*, pp. 121:5-25; 122:1-5, 15-19; Exhibit 23 and *Safeway 30(b)(6) Depo. (Patel)*, pp. 23:16-25; 24:1-23 and *H&A Depo.*, p. 135: 1-7].

54.

A lawsuit was filed on November 6, 2013 in connection with the Ray Smith incident. [*Safeway 30(b)(6) Depo.*, pp. 122:20-25; 123:1-16; Exhibit 24].

55.

The Ray Smith shooting incident was a violent crime not disclosed in the Applications, and not included in loss runs provided to Seneca or on the spreadsheet prepared by H&A. [*Safeway 30(b)(6) Depo.*, p. 203:5-17 and *H&A Depo.*, pp. 123:22-25; 124:1-2, 125:19-25; 126:1-25; 127:1-8; 135:8-11; 136:5-9; 137:22-25; 149:18-23; 163:2-15; Exhibit 61].

56.

Safeway was notified on February 18, 2012 via email of a fight the evening prior that resulted in the death of a 21-year old male; an argument, wherein one woman struck another woman in the head with a brick; and a fight the year prior which led to a shooting or stabbing. [*Safeway 30(b)(6) Depo.*, pp. 76:19-25; 77:1-8, 21-25; 78:1-4, 17-25; 79:1-25; 80:1-7; Exhibit 9].

57.

Safeway knew of a theft at the Alter Ego store in April 2012. [*Safeway 30(b)(6) Depo.*, pp. 126:18-25; 127:1-25; 128:1-4].

58.

The incidents identified in the February 18, 2012 email and the theft at Alter Ego were not included in the loss runs or Applications. [*Safeway 30(b)(6) Depo.*, pp. 203:18-21; 204:3-7].

[15]

59.

Safeway was advised of armed robberies at some tenants' businesses. [*Safeway 30(b)(6) Depo.*, p. 90:20-24].

60.

After the October 2013 Application was submitted, Safeway was advised via email of a shooting incident on the morning of November 4, 2013, which resulted in three people being shot, one fatally. [*Safeway 30(b)(6) Depo.*, pp. 100:1-18; 104:6-15; Exhibit 14 and *Safeway 30(b)(6) Depo. (Patel)*, pp. 22:10-16, 23:9-14; 41:19-25].

61.

Rafat Shaikh visited the property on November 5, 2013 to find out what happened the day prior. [*Safeway 30(b)(6) Depo.*, pp. 100:24-25; 101:1-11].

62.

Safeway admitted the November 4, 2013 incident was the worst thing that happened on the property and, as of November 2013, crime and violent crime was a big concern. [*Safeway 30(b)(6) Depo.*, pp. 136:20-25; 137:1-7, 15-17].

63.

Safeway did not notify H&A of the November 4, 2013 shooting incident until January 27, 2014, the date on which it received correspondence (dated January 23, 2014) from an attorney representing the family of Terry Rankins, advising of their

[16]

wrongful death claim. [*H&A Depo.*, pp. 155:9-25; 156:1-25; 157:1-25; 158:1-25; 159:1, 14-19 and *Shaikh* Depo., pp. 23:4-25; 24:1-7; 27:23-25; 28:1-22; 29:2-23; Exhibit 164 and *Friedman Depo.*, pp. 91:13-25; 92:1-9].

64.

Safeway knew Rankins' family was making a claim for wrongful death and provided a copy of the attorney's correspondence to Martin Friedman at their meeting that same day. [*Friedman Depo.*, pp. 74:5-25; 75:1-12 and *Shaikh Depo.*, pp. 24:1-20; 29:4-20; 33:21-25; 34:1-20; Exhibit 165].

65.

This letter from Rankins' family attorney was emailed to H&A on January 28, 2014 and assigned "high importance." [*Shaikh Depo.*, pp. 26:17-24; 27:9-22].

66.

Mr. Shaikh and Mr. Friedman did not discuss whether there should be additional or changed information on the Application in light of the letter from the attorney for the Rankins family. [*Shaikh Depo.*, pp. 33: 9-14].

67.

Mr. Shaikh signed the January 2014 Application on January 27, 2014. [*Shaikh Depo.*, pp. 19:19-25; 20:1; 31:7-16 and *Friedman Depo.*, pp. 65:20-25; 66:1-8].

[17]

68.

The January 2014 Application was submitted by H&A to Seneca with no mention of the November 4, 2013 triple shooting or the wrongful death claim, and the loss history was not updated to disclose either. [*Shaikh Depo.,* pp. 19:19-25; 20:1; 31:7-16 and *H&A Depo.*, pp. 160:5-12; 163:16-25; 164:1-2 and *Friedman Depo.*, pp. 76:3-9; 96:8-25; 97:1-15; 99:17-25; 100:1-12].

69.

Seneca's AVP Underwriting Manager, Mitchell Pluskalowski, relied on the information provided by Safeway in the Applications, including the information and answers to the questions regarding loss history and crimes in deciding whether to quote and bind the policy to Safeway. [*Pluskalowski Depo.*, pp. 13:3-4; 14:21-24; 15: 21-24; 21:8-23; 271: 21-25; 272: 1-14].

70.

Mr. Pluskalowski likened his job to piecing together a puzzle, noting, "all of the information leads to completing that puzzle. If any of the information is off or inaccurate, you have an incomplete puzzle." [*Pluskalowski Depo.*, p. 26: 17-22].

71.

William Knepper testified if the underwriter is given incomplete, inaccurate or false information in regard to exposure information and loss information, the entire

[18]

underwriting process fails. [*Knepper Depo.*, Exhibit 131, pp. 3, 5].

72.

William Knepper testified if there is an inconsistency between the application and the loss runs, the application trumps. [*Knepper Depo.*, pp. 257:17-25; 258:1-14].

73.

Mitchell Pluskalowski testified the question regarding crimes on the Applications was material to Seneca's underwriting of the Policy. [*Pluskalowski Depo.*, p. 272:12-14].

74.

Mitchell Pluskalowski testified had the November 2013 shooting incident or the kidnapping and rape incident been reported to Seneca, it would have chosen, at a minimum, one of three options: decline coverage, exclude coverage for assault and battery, or look for an additional premium. [*Pluskalowski Depo.*, pp. 257:3-25; 258:1-25; 259:1-14; 272:12-14; 273:2-19].

75.

William Knepper, a Chartered Property Casualty Underwriter with over 40 years of experience in the commercial insurance field, has rendered several opinions on behalf of Seneca based on his years of experience, knowledge and employment in the insurance industry. [*Knepper Depo.*: Exhibit 131 and Exhibit 1 thereto].

[19]

76.

William Knepper testified "loss runs" might include some list of claims, but do not provide information about "...losses (regardless of fault and whether or not insured) or occurrences that may give rise to claims..." and in failing to provide this information to Seneca, Safeway misrepresented its overall insurance information and did not comply with Seneca's requirement. [*Knepper* Depo.: Exhibit 131, p. 3].

77.

William Knepper rendered an opinion that Safeway made two material misrepresentations in the application package. [*Knepper Depo.*: Exhibit 131, p. 2].

78.

William Knepper testified Safeway knew of claims, losses and occurrences which it concealed, including major crimes such as a rape and kidnapping, the 2011 Ray Smith shooting, and the November 2013 triple shooting and murder that occurred at Tri County Shopping Center. [*Knepper Depo.*, pp. 193:8-25; 194:1-20; Exhibit 131, pp. 3-4].

79.

William Knepper testified Safeway had the duty to notify H&A and Seneca of serious crimes, including rape and kidnapping, the 2011 Ray Smith shooting, and the November 2013 triple shooting, and had Seneca received such information, Seneca

[20]

would not have issued a policy, and/or would have provided a different amount of insurance, and/or would have charged a different premium rate, and/or would have excluded the assault and battery hazard on the Policy. [*Knepper Depo.*, pp. 104:10-17; 184:15-25; 185:1; 200:21-25; 201:1-8; 207:3-13; Exhibit 131, pp. 4-5].

80.

William Knepper testified Safeway provided patently false information when responding "No" to the question regarding "Have any crimes occurred or been attempted on your premises within the last three (3) years?," and found such a response incomprehensible given Safeway's knowledge of the many crimes that had been committed on the premises. [*Knepper Depo.*, p. 211:9-17; Exhibit 131, p. 5-6].

81.

William Knepper testified had the underwriter known there were hundreds of crimes at the premises, he could have gone a different direction and performed a further underwriting process to make an informed decision on the risk as to whether to issue the policy, issue it with an exclusion or different term and conditions, or for a different premium. [*Knepper Depo.*, pp. 211:3-6; 213:25; 214:1-25; 215:1-18; Exhibit 131, p. 6].

Respectfully submitted this 3rd day of January 2017.

[*Signature On Following Page*]

[21]

**SWIFT, CURRIE, McGHEE & HIERS, LLP**

*/s/ Jennifer L. Nichols*
Maren R. Cave
Georgia Bar No. 278448
Jennifer L. Nichols
Georgia Bar No. 001294
***Attorneys for Plaintiff***

The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309-3231
Telephone: (404) 874-8800
Facsimile: (404) 888-6199
maren.cave@swiftcurrie.com
jennifer.nichols@swiftcurrie.com

[22]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SENECA INSURANCE )
COMPANY, INC. )
      Plaintiff, )
)
v. )
) CIVIL FILE NO. 1:16-CV-00174-WSD
)
SAFEWAY GROUP, INC.; WH- )
TRI COUNTY SHOPPING )
CENTER, LLC; and KEITH )
MITCHELL, )
      Defendants, )
v. )
)
)
HAMBY & ALOISIO, INC., )
      Third-Party Defendant. )
)

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing

*Plaintiff Seneca Insurance Company, Inc.'s Statement of Material Facts As To*

*Which There Is No Genuine Issue To Be Tried* upon all parties to this matter via

electronic service through the Court's CMC/EF system as follows:

Jessica F. Pardi
MORRIS, MANNING & MARTIN, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326

Charles L. Clay, Jr.
Jennifer R. Harbaugh

[23]

Christopher B. Newbern
CHUCK CLAY & ASSOCIATES, LLC
4401 Northside Parkway, Suite 520
Atlanta, GA 30327

Darren Summerville
SUMMERVILLE FIRM
400 Colony Square, Suite 2000
1201 Peachtree Street, N.E.
Atlanta, GA  30361

Kevin A. Doyle
Lokey, Mobley and Doyle, LLP
8425 Dunwoody Place
Atlanta, GA 30350

This 3rd day of January 2017.

**SWIFT, CURRIE, McGHEE & HIERS, LLP**

*/s/ Jennifer L. Nichols*
Maren R. Cave
Georgia Bar No. 278448
Jennifer L. Nichols
Georgia Bar No. 001294
***Attorneys for Plaintiff***

The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309-3231
Telephone: (404) 874-8800
Facsimile: (404) 888-6199
maren.cave@swiftcurrie.com
jennifer.nichols@swiftcurrie.com

[24]

3336214v.1