UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SENECA INSURANCE COMPANY, INC. | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) CIVIL FILE NO. 1:16-CV-00174-WSD |
| SAFEWAY GROUP, INC.; WH-TRI COUNTY SHOPPING CENTER, LLC; and KEITH MITCHELL, | ) ) ) ) ) |
| Defendants. | ) ) |
| _____ | ) ) |
| SAFEWAY GROUP, INC.; WH-TRI COUNTY SHOPPING CENTER, LLC; | ) ) ) ) |
| Third-Party Plaintiffs, | ) ) |
| v. | ) ) |
| HAMBY & ALOISIO, INC., | ) ) |
| Third-Party Defendants. | ) |
| _____ | ) |

### SAFEWAY GROUP, INC. AND WH-TRI COUNTY SHOPPING CENTER, LLC'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT

COME NOW Safeway Group, Inc. ("Safeway") and WH-Tri County Shopping Center, LLC ("Tri County") and submit their Statement of Material Facts in Support of Summary Judgment as follows.

10566637 v3

1. Safeway manages shopping centers (the "Properties") including the Tri County Shopping Center. (First Shaikh Depo., p. 13).

2. Tri County owns the Tri County Shopping Center. (*Id.* at p. 14).

3. Seneca Insurance Company, Inc. ("Seneca") is a liability insurer that specializes in complex risks such as the shopping centers managed by Safeway. (Pluskalowski Depo., p. 18, ll. 10-21).

4. Seneca wanted to increase policies sold for 2014. (*Id.* at p. 22, ll. 14-24). Accordingly, Seneca incentivized agents by offering commissions of 20% – well above the industry norm – and incentivized insureds by offering discounted premiums. (*Id.* at pp. 178, ll. 24-25, 198, ll. 4-6 and 199, ll. 11-17).

5. The underwriter for the Safeway account was Mitchell Pluskalowski ("Pluskalowski"). (*Id.* at p. 16, ll.11-14).

6. Hamby & Aloisio, Inc. ("Hamby") assisted Safeway in the placement of its liability insurance, and Marty Friedman ("Friedman") of Hamby was the producer on the Safeway account. (Friedman Depo., p. 19, ll. 10-25).

7. On October 8, 2013, Hamby completed and sent to Seneca an application for Safeway's liability coverage for January 30, 2014 to January 30, 2015 (the "Initial Application"). (Ex. 39).

10566637 v3

8.  The Initial Application contained the following question and answer regarding crimes on the Properties:  "18.  HAVE ANY CRIMES OCCURRED OR BEEN ATTEMPTED ON YOUR PREMISES WITHIN THE LAST THREE (3) YEARS?  N" (Ex. 39 at SEN480).

9.  The answer "N" meaning "No" was an inadvertent error contradicted by numerous other disclosures in Safeway's application materials.  (Friedman Depo., p. 45, l. 14 – p. 46, l. 12; *see e.g.*, Exs. 59, 61 and 90).

10. Additionally, the Initial Application contained the following information regarding loss history (the "Loss History Grid"):

| LOSS HISTORY | | | | | | | |
|---|---|---|---|---|---|---|---|
| ENTER ALL CLAIMS OR LOSSES (REGARDLESS OF FAULT AND WHETHER OR NOT INSURED) OR OCCURRENCES THAT MAY GIVE RISE TO CLAIMS FOR THE PRIOR 5 YEARS (3 YEARS IN KS & NY) | | | | | | CHK HERE IF NONE | SEE ATTACHED LOSS SUMMARY |
| DATE OF OCCURRENCE | LINE | TYPE/DESCRIPTION OF OCCURRENCE OR CLAIM | DATE OF CLAIM | AMOUNT PAID | AMOUNT RESERVED | | CLAIM STATUS OPEN CLSD |
| | | Loss runs on file with the underwriters | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

(Ex. 39 at SEN467).

11. The Initial Application stated coverage had been declined, cancelled or nonrenewed in the prior three years.  (*Id.* at SEN466).

12. The Initial Application stated Safeway did not have a safety program.  (*Id.* at SEN466 and 480).

13. Included with the Initial Application was a loss run showing two crime claims resulting in payments by a prior carrier of $400,000 and $300,000. (*Id.* at SEN489).

10566637 v3

14.   Hamby also sent Seneca a collection of liability loss runs for prior policy periods (the "Loss Runs") which disclosed *many* claims for violent crimes including shootings and assaults and batteries on the Properties.  (Exs. 59 and 90).

15.   If a claim did not involve a significant payment, Seneca did not consider it relevant to the underwriting process even if it involved a violent crime such as a shooting or an assault and battery.  (Pluskalowski Depo., pp. 141 and 147-148).

16.   Ray Smith alleged he was shot at Tri County Shopping Center on or about November 12, 2011.  (Ex. 24).

17.   Safeway reported this possible claim to Travelers.  (Ex. 23).

18.   On November 6, 2013, Ray Smith filed suit against multiple defendants including Tri County (the "Smith Lawsuit").  (Ex. 24).

19.   Hamby sent Seneca a summary of the Loss Runs (the "Loss Run Summary") referencing Travelers Insurance Company ("Travelers") as Safeway's liability carrier for 2011 and identifying six (6) assaults and batteries including one open assault and battery with a reserve of $209,824.00.  (Ex. 61).

20.   At no time prior to binding, did Seneca ever inquire as to any of the crimes disclosed on the Loss Runs or the Loss Summary.  (Pluskalowski Depo., p.

4

10566637 v3

39, ll. 7-14).  Indeed Seneca did not even make any inquiry regarding an open claim with a reserve in excess of $200,000.00, which by Seneca's standards constituted a "severe claim."  (*Id.* at p. 144, ll. 9-12 and pp. 208, ll. 18 – p. 210, l. 6).

21. Based upon the information in the Loss Run Summary, Safeway's loss ratio (*i.e.* the percentage of premium used to pay losses) was at or near 95%.  (Ex. 154 and Knepper Depo., pp. 244-45).

22. To accept a risk and issue a policy, Seneca required a loss ratio of no more than 55 to 60%.  (Pluskalowski Depo., pp. 211, ll. 13-18 and 144, ll. 13-18).

23. Seneca considers 75% to be a "bad loss ratio" and would require additional scrutiny of an account over 50-55% at renewal.  (*Id.* at p. 242, ll. 12-23)

24. Mr. Pluskalowski ignored the information provided and erroneously calculated Safeway's loss ratio at 20%.  (*Id.* at p. 40).

25. Mr. Pluskalowski calculated Safeway's premium using only the square footage of the Properties and, ignoring the loss history information provided, offering a 25% discount to incentivize acceptance and "bring the pricing to where it needed to be" to undercut the current carrier.  (*Id.* at p. 60, ll. 1-15, 178, ll. 24-25 and 198, ll. 4-6).

26. Seneca requires actual loss runs (not summaries) to bind coverage.  (*Id.* at p. 211, ll. 13-18).

10566637 v3

27.  Despite multiple references to past liability coverage by Travelers, Seneca never asked for a Travelers loss run, nor did Seneca make any inquiries regarding the numerous crimes attributed to Travelers on the Loss Run Summary.  (*Id.* at pp. 207-09).

28.  Prior to binding coverage, Seneca never asked for updated loss runs.  Indeed, Seneca admits it did "nothing" to make sure it had updated loss information prior to binding.  (*Id.* at pp. 163, ll. 14-16, 265, ll. 15-23 and 266, ll. 11-21).

29.  On January 27, 2014, Friedman went to Safeway's offices to collect premium for the Seneca policy and to obtain a signature on a final application dated January 27, 2014 (the "Final Application") prepared by Hamby.  (Friedman Depo., p. 65, ll. 13-22 and Ex. 40).

30.  The Final Application did not contain Question 18.  (Ex. 40).

31.  The Final Application contained a statement that "Travelers cancelled due to losses in 2011."  (*Id.* at SEN5984).

32.  On or about November 4, 2013, there allegedly was a shooting at the Tri County Shopping Center (the "November 4 Shooting").  (Ex. 146).

33.  During the January 27, 2014, meeting, Safeway gave Friedman a letter from an attorney referencing a wrongful death claim related to the November 4 Shooting.  (Friedman Depo., p. 74, ll. 18-24 and Ex. 164).

10566637 v3

34.    Seneca did not review the Final Application, and Mr. Pluskalowski testified the Final Application "had no bearing on what we were doing." (Pluskalowski Depo., p. 224, ll. 5-9).

35.    Seneca knew the answer to Question 18 was false as Mr. Pluskalowski admitted to seeing crimes listed on the loss runs attached to the Initial Application.  (*Id.* at p. 66, ll. 4 – p. 67, l. 15).

36.    Nonetheless, on January 30, 2014, Seneca bound a policy insuring Safeway as the Named Insured and Tri County as an Additional Insured (the "Policy").  (Seneca Complaint, Ex. B).  The Policy does not contain a provision entitling Seneca to recoupment of defense expenses.

37.    Seneca's underwriting expert, William Knepper, stated multiple times he would ***not*** have insured Safeway given the information Seneca had in its possession.  (Knepper Depo., pp. 144-145, 160 and 169).

38.    After binding coverage, Seneca underwriters must order inspections on all properties within 48 hours and receive and review the inspection reports within 30 days to enforce any right to rescind coverage based upon the findings of the reports.  To save money, Seneca inspected fewer than half the Properties, selected at random.  (Pluskalowski Depo., p. 72, l. 3 – p. 74, l. 8).

39.    The inspection reports referenced crimes on the Properties.  (*Id.* at pp. 118-120 and 126).

10566637 v3

40. Keith Mitchell claims he was shot at the Tri County Shopping Center on August 17, 2014 (the "Mitchell Incident" and "Mitchell Claim"). (Ex. 36, ¶ 1).

41. On March 30, 2015, Mitchell sent correspondence to Safeway and Tri County notifying them of the Mitchell Incident (the "March 30, 2015 Letter"). (Ex. 118). Thereafter, Mr. Mitchell filed a lawsuit against Safeway and Tri County on April 6, 2015 (the "Mitchell Lawsuit") alleging of other crimes at the Tri County Shopping Center including the November 4 Shooting. (Ex. 36, ¶¶ 16-28, 30 and 38).

42. Prior to receipt of the March 30, 2015 Letter, Safeway and Tri County were unaware of the alleged Mitchell Incident. (First Shaikh Depo., p. 263).

43. Seneca has admitted it has no evidence Safeway or Tri County were aware of the Mitchell Incident prior to receipt of the March 30, 2015 Letter. (Mrakovcic Depo., p. 62, l. 21 – p. 63, l. 4).

44. Safeway and Tri County notified Seneca of the Mitchell Incident on April 6, 2015. (Ex. 119).

45. Seneca immediately set up its claim file, and the assigned adjuster, John Mrakovcic, reviewed the Mitchell Complaint, the Policy and the underwriting file including the application materials and Loss Runs

10566637 v3

evidencing crimes on the Properties.  (Mrakovcic Depo., p. 58, l. 20 – p. 60, l. 6).

46.  On April 7, 2015, Seneca sent a letter to Safeway and Tri County (the "April 7, 2015 Letter") acknowledging the Mitchell Claim and including a boilerplate statement regarding reserving rights with no information whatsoever as to the grounds for such reservation.  (Ex. 122).

47.  All reservation of rights letters require approval by Mr. Mrakovcic's supervisor, Frank Donahue.  (Mrakovcic Depo., p. 68, l. 17 – p. 69, l. 10).

48.  The April 7, 2015 Letter was "an acknowledgment letter" and therefore did not require approval.  (*Id.* at pp. 68, l. 22 – p. 69, l. 10)

49.  Seneca admits that as early as April 7, 2015, it was investigating possible late reporting of the Mitchell Claim.  (*Id.* at p. 40).  Seneca did not disclose this in its April 7, 2015 Letter.  (Ex. 122).

50.  As of April 7, 2015, Seneca also had engaged an investigator to investigate matters related to both defense *and* coverage without disclosing to Safeway there were any coverage issues or that the assigned investigator was investigating Safeway to assist Seneca in a possible declination.  (Mrakovcic Depo., pp. 42 and 43).

10566637 v3

51.    On May 1, 2015, Seneca hired the coverage counsel who eventually filed the instant action nine months later.  (Ex. 122 and Mrakovcic Depo., p. 51, ll. 16-22).

52.    On May 5, 2015, Seneca engaged defense counsel and began defending Safeway and Tri County in the Mitchell Lawsuit.  (Ex. 115).

53.    On May 13, 2015, Seneca sent a reservation of rights letter, approved by Frank Donahue, identifying certain grounds for possible denial of the Mitchell Claim.  (Ex. 42 and Mrakovcic Depo., pp. 68 and 69).

54.    Seneca did not file the instant action until January 19, 2016.  (Dkt. 1).

55.    Seneca did not seek to deposit the Policy premium into the registry of the Court until April 6, 2016.  (Dkt. 12).

10566637 v3

Respectfully submitted this 3rd day of January, 2017.

MORRIS, MANNING & MARTIN, LLP


_/s/ Jessica F. Pardi_

Jessica F. Pardi
Georgia Bar No. 561204
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
(404) 233-7000
(404) 233-9532 (fax)
jpardi@mmmlaw.com
Attorney for Defendants/Third-Party Plaintiffs Safeway Group, Inc. and WH-Tri County Shopping Center, LLC

11                                                10566637 v3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SENECA INSURANCE COMPANY, INC. | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| | ) CIVIL FILE NO. 1:16-CV-00174-WSD |
| SAFEWAY GROUP, INC.; WH-TRI COUNTY SHOPPING CENTER, LLC; and KEITH MITCHELL, | ) ) ) ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **SAFEWAY GROUP, INC. AND WH-TRI COUNTY SHOPPING CENTER, LLC'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF SUMMARY JUDGMENT** was filed electronically via CM/ECF in the United States District Court for the Northern District of Georgia, with notice of same being electronically served by the Court to all attorneys of record.

This 3rd day of January, 2017.

*/s/ Jessica F. Pardi* _____
Jessica F. Pardi

10566637 v3