UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SENECA INSURANCE | ) | |
| COMPANY, INC. | ) | |
|       Plaintiff, | ) | |
| v. | ) | |
| | ) | CIVIL FILE NO. 1:16-CV-00174-WSD |
| SAFEWAY GROUP, INC.; WH- | ) | |
| TRI COUNTY SHOPPING | ) | |
| CENTER, LLC; and KEITH | ) | |
| MITCHELL, | ) | |
|       Defendants, | ) | |
| v. | ) | |
| | ) | |
| HAMBY & ALOISIO, INC., | ) | |
|       Third-Party Defendant. | ) | |
| _____ | ) | |

**<ins>SENECA INSURANCE COMPANY, INC.'S BRIEF IN RESPONSE
TO SAFEWAY GROUP, INC. AND WH-TRI COUNTY
SHOPPING CENTER, LLC'S MOTION FOR SUMMARY JUDGMENT</ins>**

COMES NOW Seneca Insurance Company, Inc. ("Plaintiff" or "Seneca"), and

pursuant to Federal Rule of Civil Procedure 56, submits its Brief in Response to the

Motion for Summary Judgment filed on behalf of Safeway Group, Inc. ("Safeway")

and WH-Tri County Shopping Center, LLC ("WH-Tri County"), as follows:

## I.      <ins>INTRODUCTION</ins>

Keith Mitchell ("Mitchell") was shot on August 17, 2014 at Tri County

Shopping Center (the "property" or "premises") and filed the Underlying Lawsuit in

[1]

the State Court of Fulton County against WH-Tri County and Safeway.[1] [Exhibit "A": *Safeway 30(b)(6) Depo.*: Exhibit 36].[2] Mitchell alleges Safeway and WH-Tri County knew of various crimes occurring on the premises in the three years prior to his shooting, yet failed to exercise ordinary care to keep the premises safe. [*Id.* at pp. 155:14-25; 156:1-17; 263:1-4; Exhibit 36, ¶¶1, 16-30, 35, 37-39, 43].

On January 3, 2017, Seneca filed its Motion for Summary Judgment, seeking rescission of the Commercial General Liability (CGL) Policy in effect at the time of the Mitchell incident ("Policy"), as well as a determination it owes no duty to defend or indemnify Safeway and WH-Tri County in the Underlying Lawsuit. In their Cross-Motion for Summary Judgment, Safeway and WH-Tri County assert they are entitled to Summary Judgment on each of Seneca's claims on the following six grounds:[3]

1. Safeway did not make any misrepresentations in its application;
2. Any alleged misrepresentation was not material;
3. Seneca waived any claimed right to rescind the Policy;
4. Safeway provided timely notice of the Mitchell Claim;
5. Seneca defended the Mitchell Claim without reserving rights; and

---

[1] Safeway and WH-Tri County refer to the incident as "Mitchell Incident" and "Mitchell Claim."

[2] Excerpts of the deposition transcripts, as cited herein, are attached hereto as Exhibits "A" through "H". The original transcripts have been filed with the Court.

[3] Seneca hereby concedes Safeway's notice of the Mitchell Claim was timely and Seneca is not pursuing Count III: Failure to Meet Condition Precedent of its *Petition for Rescission and Declaratory Judgment*. Moreover, Seneca hereby advises the Court it is no longer seeking to recover its costs and expenses in connection with the defense of the Underlying Lawsuit, as requested in (d) of the Petition's prayer for relief. Thus, only grounds 1, 2, 3, and 5 remain at issue in this case.

[2]

6. Seneca cannot recoup defense expenses for the Mitchell Claim.

As further addressed herein, and in Seneca's Brief In Support of its Motion for Summary Judgment, Safeway made <u>numerous</u>, <u>material</u> misrepresentations in its October 2, 2013 Commercial Insurance Application ("October 2013 Application")[4] and in the <u>signed</u> January 27, 2014 Commercial Insurance Application ("January 2014 Application")[5], concerning claims, losses, occurrences, and crimes. Safeway completely failed to disclose numerous violent crimes and claims that were relevant to the underwriting process. As more fully demonstrated below, it is Seneca, <u>not</u> Safeway and WH-Tri County, that is entitled to Summary Judgment as a matter of law.

## II.   ARGUMENT AND CITATIONS OF AUTHORITY

Under Georgia law, "misrepresentations, omissions, concealment of facts, and incorrect statements" made by an insured in an application for insurance will prevent recovery under the policy if (1) fraudulent; (2) material either to the acceptance of the risk or to the hazard assumed by the insurer; or (3) the insurer in good faith would either not have issued the policy or contract, or would not have issued a policy or contract in as large an amount or at the premium rate as applied for, or would not have provided coverage with respect to the hazard resulting in the loss if the true facts

---

[4] Safeway and WH-Tri County refer to this as the "Initial Application."
[5] Safeway and WH-Tri County refer to this as the "Final Application."

had been known to the insurer as required either by the application for the policy or contract or otherwise. *See* O.C.G.A. §33-24-7(b). In completing an application, it is immaterial whether an insured acted in good faith. *Infinity Auto Ins. Co. v. Whigham*, 2015 WL 1281829 (2015). An insurer need only show that the representation was objectively false and material. *Pope v. Mercury Indem. Co. of Ga.*, 297 Ga. App. 535, 677 S.E. 2d 693, 696-697 (2009)(citing to *White v. Am. Family Life Assur. Co.,* 284 Ga. App. 58, 61, 643 S.E. 2d 298, 300  (2007).

**A.     Safeway Made <u>Material</u> <u>Misrepresentations</u> In The October 2013 and January 2014 Applications**

Safeway and WH-Tri County's claim there are no misrepresentations in the October 2013 and January 2014 Applications is an absolute falsehood.  The evidence is clear; Safeway made <u>material</u> misrepresentations during the application process regarding several shooting incidents and other violent crimes on the premises.

The Applications submitted by Safeway included a section labeled "Loss History" which reads as follows:

> ENTER ALL CLAIMS OR LOSSES (REGARDLESS OF FAULT AND WHETHER OR NOT INSURED) OR OCCURRENCES THAT MAY GIVE RISE TO CLAIMS FOR THE PRIOR 5 YEARS.

[*Safeway 30(b)(6) Depo*., pp. 220:8-25; 221:1-17; Exhibit 39: SEN000467; Exhibit 40: SEN005985].  Mr. Shaikh, the Owner and CEO of Safeway, understood this required Safeway to enter all claims or losses regardless of fault, whether or not

[4]

insured, or occurrences that may give rise to claims for the prior five years. [*Safeway 30(b)(6) Depo.*, p. 221:12-17]. Nonetheless, Safeway did not list any specific losses or claims or occurrences, but referred to "loss runs on file with the underwriters." [*Id.* at pp. 222:9-21; 254:8-24; Exhibit 39: SEN000467 and Exhibit "B": *H&A Depo.*, p. 162:4-11]. Additionally, in the Commercial General Liability Section, Safeway was presented with a series of yes and no questions, and answered "No" to Question 18: "HAVE ANY CRIMES OCCURRED OR BEEN ATTEMPTED ON YOUR PREMISES WITHIN THE LAST THREE (3) YEARS?" [*Safeway 30(b)(6) Depo.*: Exhibit 39: SEN000480].

Safeway understood the need to be complete, accurate and honest in the application process and in the information submitted to Seneca and any other insurance company in order to procure and place insurance coverage. [*Safeway 30(b)(6) Depo.*, pp. 158:13-23; 219:15-18; 224: 14-20]. Despite its knowledge to be forthcoming and honest, Safeway provided a "completely incorrect" response in connection with whether any crimes had occurred or been attempted on the premises within the last three (3) years, and it never went through the loss runs to ensure all pertinent information was reflected regarding its properties and any occurrences or incidents that occurred. [*Id.* at pp. 162:12-25; 163:1-7; 230:4-25; 231:1-2, 21-23; Exhibit 39: SEN000480; Exhibit "C": *Safeway 30(b)(6) Depo.(Patel)*, pp. 33:11-25;

38:1-10)].  The evidence demonstrates Safeway had knowledge on October 2, 2013, before submitting its October 2013 Application, that crimes, including violent crimes, had occurred or been attempted at Tri County Shopping Center, including in the parking lot of the premises, between September 30, 2010 and September 30, 2013. Specifically, Safeway admitted notice of the following violent crimes:

1)  An alleged assault inside Club Ritz on August 27, 2011;
2)  An alleged rape and kidnapping on December 9, 2011;
3)  An alleged battery inside Club Ritz on June 22, 2012;
4)  An alleged assault inside Club Ritz on October 15, 2012; and
5)  An alleged shooting at the 50 Yard Line on June 26, 2013

[*Safeway 30(b)(6) Depo*., pp. 58:12-17; 98:2-25; 99:1-22; 265:12-25; 266:1-9; Exhibit 2, Interrog. 8-12; Exhibit 3; Exhibit 13; Exhibit 47, Req. For Adm. 7-18, 55]. Notably, the August 27, 2011 assault incident was actually a shooting in the parking lot and was not included on the loss runs provided to Seneca or disclosed in the Applications. [*Id*. at pp. 72:13-25; 73:1-9; 74:4-25; 75:1; 203:18-21, 25: 204:1-2; Exhibit 8]. The June 22, 2012 assault and battery incident also involved a shooting and a lawsuit was filed in December 2012, well before the Applications were completed. [*Id.* at pp. 65:1-25; 66:1-19; 92:1-25: 93:1-15; 143:22-25; 144:1-7; Exhibit 2, Interrog. 10; Exhibit 6; Exhibit 11; Exhibit 32; Exhibit 47, Req. For Adm. 37-38]. The October 15, 2012 incident was yet another incident involving a shooting that was not disclosed in the Applications or on the loss runs provided to Seneca. [*Id*.

[6]

at pp. 69:9-25; 70:1-7; 95:23-25; 96:1-16; 97:14-21; 203:18-24; Exhibit 12]. Despite a lawsuit having been filed in July 2013, Safeway did not disclose the December 9, 2011 rape and kidnapping incident in the Applications, and it was not described as a rape in the loss runs. [*Id.* at pp. 61:4-7; 139:23-25; 140:1-25; 141:1-10; Exhibit 5; Exhibit 29; Exhibit 47, Req. For Adm. 33-34 and *Safeway 30(b)(6) Depo.*(*Patel*), pp. 26:14-25; 27:1-10 and Exhibit "D": *Mrakovcic Depo.*, pp. 83:8-25; 84:1-5 and Exhibit "E": *Friedman Depo.*, p. 57:9-23; Exhibit 61].[6]

Additionally, Safeway also knew of a November 12, 2011 shooting incident involving Ray Smith, Jr. and forwarded notice of a possible claim for injury to its agent, H&A, on June 29, 2012. [*Safeway 30(b)(6) Depo.*, pp. 121:5-25; 122:1-5, 15-19; Exhibit 23 and *Safeway 30(b)(6) Depo.* (*Patel*), pp. 23:16-25; 24:1-23 and *H&A Depo.*, p. 135: 1-7]. A lawsuit was filed on November 6, 2013, yet the incident was not disclosed in the Applications, and not included in loss runs provided to Seneca or on the spreadsheet prepared by H&A. [*Safeway 30(b)(6) Depo.*, pp. 122:20-25; 123:1-16; 203:5-17;  Exhibit 24 and *H&A Depo.*, pp. 123:22-25; 124:1-2, 125:19-25; 126:1-25; 127:1-8; 135:8-11; 136:5-9; 137:22-25; 149:18-23; 163:2-15; Exhibit 61].[7]

---

[6] This incident was identified on the H&A spreadsheet as an assault and battery. [*Friedman Depo.*, p. 57:9-23; Exhibit 61].

[7] Other incidents known to Safeway, but not identified to Seneca during the Application process include: (1) A January 13, 2012 assault involving Kiara Sims, for which a lawsuit was filed in April 2013. [*Safeway 30(b)(6) Depo.*, pp. 141:13-25,

Most significantly, after the October 2013 Application was submitted, Safeway was advised via email of a shooting incident on the morning of November 4, 2013, which resulted in **three people being shot, one fatally**. [*Safeway 30(b)(6) Depo.*, pp. 100:1-18; 104:6-15; Exhibit 14 and *Safeway 30(b)(6) Depo. (Patel)*, pp. 22:10-16, 23:9-14; 41:19-25]. Rafat Shaikh visited the property the next day to find out what happened. [*Safeway 30(b)(6) Depo.*, pp. 100:24-25; 101:1-11]. However, Safeway did not notify H&A until January 27, 2014, the date on which it received correspondence (dated January 23, 2014) from an attorney representing the family of Terry Rankins, advising of their wrongful death claim. [*H&A Depo.*, pp. 155:9-25; 156:1-25; 157:1-25; 158:1-25; 159:1, 14-19 and Exhibit "F": *Shaikh* Depo., pp. 23:4-25; 24:1-7; 27:23-25; 28:1-22; 29:2-23**;** Exhibit 164 and *Friedman Depo.*, pp. 91:13-25; 92:1-9]. Safeway provided a copy of the correspondence to Martin Friedman at their meeting that same day. [*Friedman Depo.*, pp. 74:5-25; 75:1-12 and *Shaikh Depo.*, pp. 24:1-20; 29:4-20; 33:21-25; 34:1-20; Exhibit 165]. Yet, Mr. Shaikh and

---

142:1-4, 13-22; Exhibit 30; Exhibit 31; Exhibit 47, Req. For Adm. 35-36; and *Safeway 30(b)(6) Depo. (Patel)*, p. 27:12-23]; (2) A fight on February 17, 2012 via that resulted in the death of a 21-year old male; an argument, wherein one woman struck another woman in the head with a brick; and a fight the year prior which led to a shooting or stabbing. [*Safeway 30(b)(6) Depo.*, pp. 76:19-25; 77:1-8, 21-25; 78:1-4, 17-25; 79:1-25; 80:1-7; Exhibit 9]; (3) A theft at the Alter Ego store in April 2012. [*Id.* at pp. 126:18-25; 127:1-25; 128:1-4]; and (4) Armed robberies at some tenants' businesses. [*Id.* at p. 90:20-24]. These incidents were not included in the loss runs or Applications. [*Id.* at pp. 203:18-21; 204:3-7].

Mr. Friedman did not discuss whether there should be additional or changed information on the Application in light of the letter. [*Shaikh Depo.*, pp. 33: 9-14]. Instead, Mr. Shaikh signed the January 2014 Application on January 27, 2014 and it was submitted by H&A to Seneca with <u>no mention</u> of the November 4, 2013 triple shooting or the wrongful death claim, and the loss history was <u>not</u> updated to disclose either. [*Shaikh Depo.,* pp. 19:19-25; 20:1; 31:7-16 and *H&A Depo.*, pp. 160:5-12; 163:16-25; 164:1-2 and *Friedman Depo.*, pp. 65:20-25; 66:1-8; 76:3-9; 96:8-25; 97:1-15; 99:17-25; 100:1-12].[8] The Policy was bound a few days later. [*H&A Depo.*, pp. 159:18-19; 173:3-7].   This omission was not only material; it was patently deceptive.

There is no ambiguity in the question asking *"Have any crimes occurred or been attempted on your premises within the last three (3) years)?"* and Safeway cannot in any way claim these incidents were not "*occurrences that may give rise to claims.*" Indeed, Safeway raises no such claim in its Motion. Safeway had already been served with lawsuits in connection with several of these violent crimes and received the letter from an attorney regarding the wrongful death claim just prior to signing the January 2014 Application. For Safeway to assert multiple shooting claims and a major death claim are not material, even though they were known by Safeway

---

[8] This letter was also emailed to H&A on January 28, 2014 and assigned "high importance." [*Shaikh Depo.*, pp. 26:17-24; 27:9-22].

before the binding of the Policy and not disclosed, is not only incredible but absurd. What could be more material in risk and considered legal misrepresentation than a known and documented wrongful death claim from a shooting on the premises?

Safeway's miscellaneous "arguments" to excuse its obvious material misrepresentations in an effort to avoid rescission fail. In fact, their arguments concede Seneca's point there were several omissions or inaccurate responses in the Applications.  For example, Safeway and WH-Tri County's assert the Loss History Grid contained blanks or "unanswered questions" regarding occurrences.[9]  Contrary to their assertion, the response provided to the question asking the applicant to "ENTER ALL CLAIMS OR LOSSES (REGARDLESS OF FAULT AND WHETHER OR NOT INSURED) OR OCCURRENCES THAT MAY GIVE RISE TO CLAIMS FOR THE PRIOR 5 YEARS," was not left blank or unanswered. [*Safeway 30(b)(6) Depo*., pp. 220:8-25; 221:1-17; Exhibit 39: SEN000467; Exhibit

---

[9]  Notably, Safeway and WH-Tri County cite to a series of cases from other jurisdictions which are not binding precedent on this Court. To the extent Safeway and WH-Tri County cite to the Georgia case of *Pennsylvania Life Ins. Co. v. Tanner*, 163 Ga. App. 330, 333-334, 293 S.E. 2d 520, 522-523 (1982), the case does not stand for the proposition an insurer is obligated to read an application and takes a calculated risk in issuing a policy based upon an application with a blank in it. The Court in *Pennsylvania Life Ins. Co.* found the insurer took a calculated risk in accepting the policy where the omission was glaring. *Id.* at 334, 523 (emphasis added). There was no "glaring omission" here, but rather an actual response which specifically referred the underwriter to loss runs on file.

[10]

40: SEN005985]. Although Safeway did not list any specific losses or claims or occurrences, it explicitly referred to "loss runs on file with the underwriters." [*Safeway 30(b)(6) Depo.*, pp. 222:9-21; 254:8-24; Exhibit 39: SEN000467; Exhibit 40: SEN005985 and *H&A Depo.*, p. 162:4-11]. When questioned regarding Safeway's failure to "Check here if none" in response to that question, Seneca's expert, William Knepper, articulated he did not believe a prudent underwriter should inquire as to that blank. [Exhibit "G": *Knepper Depo.*, pp. 187:16-25; 188:1]. He testified, "If there's no losses, if there are no claims, no occurrences, if there is absolutely nothing that has happened, boom, you put an X in there." [*Id.* at pp. 187:12-15]. William Knepper testified although the section was not checked, "There's never going to be a none if there is a loss run." [*Id.* at pp. 187:16-25; 188:1].

Safeway and WH-Tri County's argument that Safeway ignored the loss history it had in its possession similarly fails. The evidence establishes Seneca underwriter, Mitchell Pluskalowski, reviewed the loss runs. He testified loss runs include anything that generated a claim, and show frequency, i.e. how many losses/incidents occurred, and severity, i.e. how large of a loss occurred. [Exhibit "H": *Pluskalowski Depo.*, pp. 139:1-14; 140:21-25]. He distinguished between open versus closed claims and noted if a claim is closed, and had small reserves with only small payouts or expenses paid, it indicated there was not a lot of validity to the claim. [*Id.* at p. 141:3-17]. He further

[11]

testified if there was a large reserve on an open claim, it would be an indication it could be an issue. [*Id.* at pp. 143:13-14; 154:8-13].

According to Mitchell Pluskalowski, an underwriter would take into account not only whether there were a high frequency of crimes with a low dollar value associated with the losses, but whether Question 18 was answered yes to identify crimes on the property. [*Pluskalowski Depo.*, pp. 141:23-25; 142:1-11]. Mitchell Pluskalowski testified since the answer to Question 18 was "No," and the application was supposed to be answered honestly, he assumed a closed claim with no pay indicated it was not a valid claim. [*Id.* at p. 148:4-10]. If the answer to Question 18 had been "Yes," and the documentation showed prior occurrences and reserves, it would have been a "different story." [*Id.* at p. 148:18-22] He testified he had to take all three together to form an opinion of the risk. [*Id.*]

Of the six assaults and batteries identified in the Loss Run Summary, all but two were closed and one of the two had a low dollar value. [*H&A Depo.*: Exhibit 61]. Notably, Seneca required actual loss runs, not summaries, to bind coverage. [*Pluskalowski Depo.*, p. 211:13-18]. The only open claim of note, which was on the loss summary, but not the loss runs, was the only incident that showed an open reserve of approximately $200,000. [*Pluskalowski Depo.*, p. 144:1-5]. Mr. Pluskalowski noted, "When you take into context we had 12 years of hard copy loss

runs and 42 locations on the schedule, that was a minute detail." [*Pluskalowski Depo.*, p. 144:1-8]. He believed that claim to be an "outlier." [*Id.* at pp. 208:12-25; 209:1-4]. Although Seneca determined there was no severity based on the information available to it at the time, Mitchell Pluskalowski testified an underwriter will request additional information for open claims if there is a combination of frequency and severity. [*Id.* at p. 143:10, 18-25; 144:1-12].

Although Safeway and WH-Tri County contend William Knepper rendered the opinion he would not have bound coverage given the application in Seneca's possession, he never testified he would not have insured Safeway. Rather, he testified he did not know whether he would have issued the policy if he was the underwriter and knew of four shootings, but he <u>probably</u> would not have. [*Knepper Depo.*, pp. 144:25; 145:1-4]. He also testified "as an underwriter I <u>probably</u> would not have written this risk at all" and "<u>I think that perhaps</u> I would have done things differently, and perhaps I would have looked at - looked at this and reached a different conclusion than the Seneca underwriter did. [*Id.* at pp. 159:22-25; 169:8-9]. Notably, what Mr. Knepper would do is immaterial. A "material misrepresentation" permitting an insurer to avoid coverage is one that would influence a <u>prudent insurer</u> in determining whether or not to accept the risk, or in fixing a different amount of premium in the event of such acceptance. (emphasis added). *Georgia Casualty &*

*Surety Co. v. Valley Wood, Inc. et al.*, 783 S.E. 2d 411 (2016).  In this instance, what matters is what would Mitchell Pluskalowski would do given the information provided to him. Even William Knepper testified had Seneca known of the hundreds of crimes on the premises which it subsequently learned of, Mitchell Pluskalowski would have performed a further underwriting process to make an informed decision on the risk. [*Knepper Depo.*, pp. 211:3-6; 213:25; 214:1-25; 215:1-18; Exhibit 131, p. 6].   Both Mitchell Pluskalowski and William Knepper testified that had Seneca received information regarding the kidnapping and rape incident and the November 2013 shooting incident, Seneca would have chosen, at a minimum, one of three options: decline coverage, exclude coverage for assault and battery, or look for an additional premium. [*Pluskalowski Depo*., pp. 257:3-25; 258:1-25; 259:1-14; 272:12-14; 273:2-19 and *Knepper Depo.*, pp. 104:10-17; 184:15-25; 185:1; 200:21-25; 201:1-8; 207:3-13; Exhibit 131, pp. 4-5].[10]

Insofar as Safeway and WH-Tri County assert Seneca did nothing to make sure it had current loss history information, Georgia law is clear that Seneca does not have a duty to do so. Although Safeway and WH-Tri County erroneously attempt to place the burden on Seneca, Seneca is entitled to rely on statements of Safeway or H&A as true, without conducting an independent investigation. *Graphic Arts Mutual*

---

[10] William Knepper testified as to a fourth option: to provide a different amount of insurance. [*Knepper Depo.*, pp. 104:10-17; Exhibit 131, pp. 4-5].

[14]

*Insurance Co. v. Pritchett*, 220 Ga. App. 430, 469 S.E. 2d 199 (1995). This demonstrates the importance of the application process itself. "Applicants are motivated to supply the *whole* truth because they know that insurers can deny coverage if they do not. An insured thus cannot lie - even by omission - to an insurer by insisting that, had the insurer been more diligent…it would have learned of a material fact." Footnote 3 of *Colony Insurance Co. v. 9400 Abercorn, LLC*, 866 F. Supp. 2d 1376, 1379 (S.D. Ga. 2012).[11]

Safeway and WH-Tri County cite to Mitchell Pluskalowski's testimony the January 2014 Application "had no bearing on what we were doing," but fail to note he also testified he probably paged through it but it was not important because he already had the other application. [*Pluskalowski Depo*., p. 224:5-13]. Notably, this January 2014 Application was no different than the prior one, except for the signature on behalf of Safeway and the mention of the Travelers' policy cancellation, which had no bearing on underwriting since it pertained to property losses.[12]  Yet, a triple

---

[11] The argument Mitchell Pluskalowski should have known he was missing the Traveler's loss runs is without merit. He testified he believed he was in possession of all loss runs because he had loss runs for the very same years the Traveler's policy was in effect. [*Pluskalowski Depo*., pp. 163:23-25; 164:1-3; 207:23-25; 208:1-11]. In fact he had loss runs from 2002 until the time of Application. [*Id.* at p. 177:13-15].

[12] As relates to coverage having been declined, cancelled or nonrenewed, and the addition made to the January 2014 Application that Travelers cancelled due to losses in 2011, Mitchell Pluskalowski testified there was nothing in the loss runs on the General Liability side that would have cancelled a policy and he believed a $7 million

shooting and wrongful death claim occurred in the interim and was never disclosed to Seneca in any manner. Even assuming arguendo the January 2014 Application was never reviewed, this does not make Safeway and Tri County's misrepresentations and failure to provide complete loss runs excusable, nor does it preclude Seneca from seeking rescission of the Policy.[13]

Insofar as Safeway and WH-Tri County assert the response to Question 18 was an "an inadvertent error," an insurer is not required to prove that its insured intentionally misrepresented material facts when filling out the application and can prevent recovery under a policy even if the insured lacked the intent to deceive or lacked knowledge it was making a false statement. *The Home Indemnity Co. Manchester, New Hampshire v. Toombs et al.*, 910 F. Supp. 1569 (1995); *Perkins v. American International Specialty Lines Insurance Co. et al.*, 486 B.R. 212 (N.D. Ga. 2012). Moreover, the testimony cited by Safeway and WH-Tri County to assert Seneca knew the response was false is without merit. Although Mitchell Pluskalowski testified the thefts could "possibly" be crimes, he specifically testified that the two theft crimes on the loss run totaling over $700,000 could have pertained

---

dollar tornado loss and a million dollar claim for wind/hail loss were the basis for the cancellation. [Pluskalowski Depo., pp. 268:4-7, 23-25; 269:4-8].

[13] Safeway and WH-Tri County's arguments regarding commissions are irrelevant since it was Hamby & Aloisio that received commission, not Seneca. Regardless of whether H&A received incentives to work with Seneca, Safeway and WH-Tri County do not get rewarded for a complete failure to disclose crimes and claims.

to inside jobs. He noted "So we see a lot of times employees will steal copper wiring from the places they're employed with. We did not have a description. This was a property loss run, which we were not quoting on the property. So, no, without a detailed form description, it would be hard to say if the two relate." [*Pluskalowski Depo*., pp. 66:17-25; 67:1-11]. He further testified, "from an underwriter's perspective, it's not an external crime, meaning others break in forcibly. It could be a lot of different things." [*Id*. at p. 67:15-17]. Given this explanation, Safeway and WH-Tri County's claim Seneca knew the answer to be false is unsubstantiated, and Seneca is entitled to take the application as true.

Seneca issued the Policy in reliance on Safeway's Applications and, specifically, the information provided by Safeway in response to Question 18 regarding crimes and the Loss History Section. Seneca understood it had complete loss runs, and that was hardly the case. Safeway and WH-Tri County allege they are entitled to coverage because Seneca failed to follow its own underwriting criteria, but underwriting criteria does not excuse material misrepresentations by an insured. This argument is a red herring. Notably, Safeway and WH-Tri County blatantly omitted a fatality claim, as well as multiple shooting incidents including the November 2013 shootings, from the signed Application. Not only was Safeway obligated to complete the October 2013 Application accurately, but the underwriting process continued

[17]

even after the November 4, 2013 shooting incident and Safeway was under an obligation to provide updated loss runs. Had Safeway notified Seneca of the various violent crimes that occurred, Seneca could have properly assessed whether it needed to look more closely at the risks. To claim Mitchell Pluskalowski would ignore this information, had he been given it, is not only speculation, but conveniently ignores Safeway's legal obligation to disclose responsive information in the Application. More importantly, an underwriter cannot ignore a claim if it is not disclosed to begin with.

> **B.  Seneca Did Not Waive Its Rights To Rescind The Policy And Has Property Defended The Mitchell Claim Under A Reservation Of Rights**

Without citing to any case law, Safeway and WH-Tri County proclaim, "an insurer must act upon its intent to rescind *immediately* upon discovery of facts supporting a rescission and adhere to such intent." Safeway and WH-Tri County have completely misstated the law on this issue. The case of *Richmond v. Ga. Farm Bureau Mut. Ins. Co.*, 140 Ga. App. 215, 231 S.E.2d 245)(1976) established guidelines regarding the timeliness of a declaratory judgment action by an insurer. The Court in *Richmond* noted,

> Upon learning of facts reasonably putting it on notice that there may be grounds for noncoverage <u>and where the insured refuses to consent to a defense under a reservation of rights</u>, the insurer must thereupon (a) give the insured proper unilateral notice of its reservation of rights, (b) take

[18]

necessary steps to prevent the main case from going into default or to prevent the insured from being otherwise prejudiced, and (c) seek immediate declaratory relief including a stay of the main case pending final resolution of the declaratory judgment action. (emphasis added).

*Richmond v. Ga. Farm Bureau Mut. Ins. Co*., 140 Ga. App. at 219. The course of action identified in *Richmond* "fully informs the insured, prevents any default from being obtained in the litigation, and protects the rights of both insured and insurer pending the outcome of the declaratory judgment action." *Southern General Insurance Company v. Buck*, 202 Ga. App. 103, 105, 413 S.E. 2d 481, 482 (1991); *Richmond v. Ga. Farm Bureau Mut. Ins. Co*., 140 Ga. App. 215, 220, 231 S.E.2d 245 (1976). The Georgia Supreme Court has explained the rule set forth in *Richmond* is based on principles of fairness, and, in determining whether an insurer has met the requirements, the crucial inquiry is whether the rights of the insured were adequately protected. *Kelly  v. Lloyd's of London*, 255 Ga. 291, 293 (2) (336 S.E.2d 772) (1985).

The Underlying Lawsuit was filed by Keith Mitchell on March 31, 2015. [*Safeway 30(b)(6) Depo*.: Exhibit 36]. Safeway and WH-Tri County first notified Seneca of the Underlying Lawsuit on April 6, 2015. [*Mrakovcic Depo*.: Exhibit 119]. Seneca immediately set up its claim file and John Mrakovcic reviewed the lawsuit Complaint, the Policy, and portions of the underwriting file, including the Applications and loss runs. [*Mrakovcic Depo*., pp. 35:8-25; 37:17-19; 58:23-25; 59:1-

[19]

7]. On April 7, 2015, Seneca sent its acknowledgement letter with a reservation of rights. [*Mrakovcic Depo*., pp. 68:7-25; 69:1-10]. This letter explicitly stated:

> Seneca is investigating coverage for this claim. Seneca's investigation is conducted under a reservation of rights under the terms, conditions, exclusions and provisions of the Seneca policy. Any past or continued conduct on the part of Seneca in investigation of the claim is not intended to be, and shall not operate in any way as a waiver or invalidation of any of the requirements, conditions, provisions or terms of the referenced policy. Additionally, such actions are not intended to and will not operate to waive any rights Seneca may have under any policy to ascertain the existence and/or the extent of coverage because of violation of any policy provision or the applicability of any policy provision. Seneca specifically reserves the right to disclaim coverage and deny liability under the Seneca policy, in the event there is a conclusion that no coverage applies to this claim." [*Mrakovcic Depo*.: Exhibit 122].

Mr. Mitchell's lawsuit alleged various crimes occurred on the premises in the three years prior to his November 4, 2013 shooting. [*Safeway 30(b)(6) Depo*., pp. 155:14-25; 156:1-17; 263:1-4; Exhibit 36, ¶¶1, 16-30, 35, 37-39, 43]. Seneca promptly engaged the services of investigator Tenco to obtain a statement from the insured, diagram the location, take photographs, and obtain background information on the claimant and information as to any prior crimes or occurrences at the shopping center. [*Mrakovcic Depo*.: p. 42:2-14  and Exhibit 124].

Seneca hired coverage counsel on May 1, 2015. [*Mrakovcic Depo*., p. 51:16-22; Exhibit 115]. Defense counsel was hired on May 5, 2015. [*Id.*]. A second reservation of rights letter was subsequently sent to Safeway and WH-Tri County on

[20]

May 13, 2015, elaborating on the specific basis for the reservation of rights, including Safeway's misrepresentation or omission of material information during the application and underwriting process. [*Mrakovcic Depo*.: Exhibit 42]. This correspondence contained language similar to that provided in the April 7, 2015 letter and further noted, "Seneca expressly reserves its right to file a declaratory judgment action or other appropriate action in order to determine coverage issues." [*Id*.]. An Answer was filed in the Underlying Lawsuit on behalf of Safeway and WH-Tri County on May 20, 2015. [Exhibit "I": Answer in Underlying Lawsuit].[14] Obviously, the Answer was filed after Seneca reserved its rights. Although Seneca's *Petition for Rescission and Declaratory Judgment* was not filed until January 19, 2016, Safeway and WH-Tri County's contention Seneca "waited almost two years before taking any action whatsoever" is wholly inaccurate. Seneca filed *Plaintiff's Motion to Deposit*

---

[14] Safeway and WH-Tri County rely upon the case of *State Farm Mut. Auto Ins. Co. v. Wheeler*, which indicates to effectively preserve defenses, a reservation of rights must be made "prior to assuming and conducting the defense of the action brought against its insured." *State Farm Mut. Auto Ins. Co. v. Wheeler*, 160 Ga. App. 523, 526, 287 S.E. 2d 281, 283 (1981)(emphasis in original). The mere fact Seneca hired defense counsel on May 5, 2015, one week before the May 13, 2015 reservation of rights letter was sent, does not equate to Seneca's assuming and conducting the defense of Safeway and WH-Tri County. Both reservation of rights letters were sent by Seneca before an Answer was filed. *See Jacore Sys. v. Cent. Mut. Ins. Co*., 194 Ga. App. 512, 514, 390 S.E.2d 876 (1990)(where insurer was not required to file a declaratory judgment action to avoid waiver and estoppel and reservation of rights was entered into after insured called upon insurer to defend it in a lawsuit).

*Funds Into The Registry Of The Court* on March 17, 2016 and the Court granted the Motion on April 8, 2016.  [Docket 12 and 17].

Notably, the consent of an insured to an insurer's reservation of rights, including the terms of the reservation, may be express or implied from the "insured's tacit acquiescence in the insurer's unilateral reservation of rights"; e.g., where the insured, after receiving such notice, permits the insurer to continue the defense of the suit." *State Farm Mut. Auto. Ins. Co. v. Anderson*, 104 Ga. App. 815, 818, 123 S.E.2d 191, 193 (1961). If an insured fails to object to a reservation of rights letter and permits its insurer to go forward with its defense of a lawsuit, an insured is deemed to have consented to the letter's terms. *Jacore Sys. v. Cent. Mut. Ins. Co.*, 194 Ga. App. 512, 514, 390 S.E.2d 876, (1990).  <u>If an insured does not object to the reservation of rights letter, the insurer is not required to file a declaratory judgment action within any particular time period, or at all, to avoid estoppel.</u> *Boatright v. Old Dominion Ins. Co.*, 304 Ga. App. 119, 124, 695 S.E.2d 408 (2010).  Safeway and WH-Tri County did not object to the reservation of rights letter or refuse to consent to their defense under the reservation of rights.  There was no set time period in which Seneca was obligated to file its *Petition for Rescission and Declaratory Judgment*.[15]

---

[15] In the present case, Seneca filed its declaratory judgment action approximately nine (9) months after the Underlying Lawsuit was filed. Even a fourteen (14) month delay has not been found to establish a waiver of an insurer's right to seek a judicial

[22]

To the extent Safeway and WH-Tri County assert the April 7, 2015 letter was insufficient to preserve Seneca's reservation of rights, the case of *Wellons, Inc. v. Lexington Ins. Co.*, 566 Fed. Appx. 813, 821-822 (11th Cir. Ga. 2014) directly addresses this contention. As succinctly stated in Headnote 8:

> While the Georgia Supreme Court in World Harvest states an insurer "must" fairly inform an insured that the insurer is providing a defense under a reservation of rights, it states only that an insurer "should" inform the insured of the specific basis for the insurer's reservation of coverage. The United States Court of Appeals for the Eleventh Circuit thus reads World Harvest, on its face, to require the insured to fairly inform the insured that it is defending under a reservation of rights, but to only recommend that the insurer provide the specific basis for the reservation. Further, while World Harvest states a reservation of rights "should" inform the insured of the specific basis for the insurer's reservations about coverage, the Georgia Supreme Court does not provide the parameters of this specificity. The opinion, however, cites and relies on long-standing Georgia law which supports the Eleventh Circuit's conclusion that an effective reservation of rights need not specify every potential basis for the reservation.

*Wellons, Inc. v. Lexington Ins. Co.*, 566 Fed. Appx. 813, 821-822 (11th Cir. Ga. 2014). The Georgia Court of Appeals has repeatedly held an insurer "is not required to list each and every basis for contesting coverage in a reservation of rights letter."

*Wellons, Inc. v. Lexington Ins. Co.*, 566 Fed. Appx. at 822; *See also State Farm Mut.*

---

determination of its obligation for coverage where no prejudice has been sustained by the insured. *See Southern General Insurance Company v. Buck*, 202 Ga. App. 103, 105, 413 S.E. 2d 481, 483 (1991). No prejudice has been or can be shown by Safeway or WH-Tri County and, therefore, the nine month time period in the present case does not mandate waiver.

[23]

*Auto. Ins. Co. v. Anderson*, 104 Ga. App. 815, 123 S.E.2d 191 (1961)(where irrespective of the effectiveness of the execution of an "Authorization for Claim Service and Non-waiver of Rights," the language of a subsequent reservation of rights letter was broad enough to cover a denial of liability and sufficient to fairly inform the insured of the insurer's position).

Despite the categorization by John Mrakovcic that the April 7, 2015 letter was an "acknowledgement letter with a reservation of rights," it did, in fact, communicate Seneca's reservation of rights. [*Mrakovcic Depo*. pp. 68:7-25; 69:1-10].   Assuming this letter was not a "proper" reservation or rights, the letter sent on May 13, 2015 certainly was and Safeway and WH-Tri County never objected to its terms.   Thus, Seneca has not waived its right to rescind the Policy.

### III.   CONCLUSION

It is plain, palpable and undisputable that Seneca, not Safeway and WH-Tri County, is entitled to Summary Judgment. The false statements and omissions in the Applications regarding numerous violent crimes including a triple shooting that resulted in a wrongful death claim received by Safeway the very day Mr. Shaikh signed the January 2014 Application were absolutely material to Seneca's acceptance of the risk. Had Safeway been forthcoming during the application process, Seneca

[24]

would have made a different underwriting decision regarding the risk posed. Seneca adequately reserved its right to deny coverage and rescind the Policy.

WHEREFORE, for the foregoing reasons, Plaintiff Seneca respectfully requests this Court **GRANT** Summary Judgment in its favor, and **DENY** the Motion for Summary Judgment filed on behalf of Safeway and WH-Tri County.

Respectfully submitted this 24th day of January 2017.

**SWIFT, CURRIE, McGHEE & HIERS, LLP**

*/s/ Jennifer L. Nichols*
Maren R. Cave
Georgia Bar No. 278448
Jennifer L. Nichols
Georgia Bar No. 001294
*Attorneys for Plaintiff*

[25]

## **CERTIFICATION**

Pursuant to LR 7.1(D) NDGa., I certify that this document has been prepared in

Times New Roman Font 14 point, as approved by the Court in LR 5.1C, NDGa.

This 24th day of January 2017.

**SWIFT, CURRIE, McGHEE & HIERS, LLP**

*/s/ Jennifer L. Nichols*
Maren R. Cave
Georgia Bar No. 278448
Jennifer L. Nichols
Georgia Bar No. 001294
***Attorneys for Plaintiff***

The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309-3231
Telephone: (404) 874-8800
Facsimile: (404) 888-6199
maren.cave@swiftcurrie.com
jennifer.nichols@swiftcurrie.com

[26]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SENECA INSURANCE                    )
COMPANY, INC.                       )
        Plaintiff,          )
v.                                  )
                                    ) CIVIL FILE NO. 1:16-CV-00174-WSD
SAFEWAY GROUP, INC.; WH-            )
TRI COUNTY SHOPPING                 )
CENTER, LLC; and KEITH              )
MITCHELL,                           )
        Defendants,         )
v.                                  )
                                    )
HAMBY & ALOISIO, INC.,              )
        Third-Party Defendant.   )
_____     )

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing

*Seneca Insurance Company, Inc.'s Brief In Response to Safeway Group, Inc. and*

*WH-Tri County Shopping Center, LLC's Motion for Summary Judgment* upon all

parties to this matter via electronic service through the Court's CMC/EF system as

follows:

Jessica F. Pardi
MORRIS, MANNING & MARTIN, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326

[27]

Charles L. Clay, Jr.
Jennifer R. Harbaugh
Christopher B. Newbern
CHUCK CLAY & ASSOCIATES, LLC
4401 Northside Parkway, Suite 520
Atlanta, GA 30327

Darren Summerville
SUMMERVILLE FIRM
400 Colony Square, Suite 2000
1201 Peachtree Street, N.E.
Atlanta, GA  30361

Kevin A. Doyle
Lokey, Mobley and Doyle, LLP
8425 Dunwoody Place
Atlanta, GA 30350

This 24th day of January 2017.

**SWIFT, CURRIE, McGHEE & HIERS, LLP**

*/s/ Jennifer L. Nichols*
Maren R. Cave
Georgia Bar No. 278448
Jennifer L. Nichols
Georgia Bar No. 001294
***Attorneys for Plaintiff***

The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309-3231
Telephone: (404) 874-8800
Facsimile: (404) 888-6199
maren.cave@swiftcurrie.com
jennifer.nichols@swiftcurrie.com

[28]

3349173v.1