UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SENECA INSURANCE COMPANY, INC.     Plaintiff, v. <br><br> SAFEWAY GROUP, INC.; WH-TRI COUNTY SHOPPING CENTER, LLC; and KEITH MITCHELL,     Defendants, v. <br><br> HAMBY & ALOISIO, INC.,     Third-Party Defendant. _____ | ) ) ) ) ) ) CIVIL FILE NO. 1:16-CV-00174-WSD ) ) ) ) ) ) ) ) ) ) ) |

**SENECA INSURANCE COMPANY, INC.'S RESPONSE
TO SAFEWAY GROUP, INC. AND WH-TRI COUNTY SHOPPING CENTER,
LLC'S STATEMENT OF MATERIAL FACTS**

COMES NOW Seneca Insurance Company, Inc. ("Plaintiff" or "Seneca"), and

pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, submits this

response to Safeway Group, Inc. and WH-Tri County Shopping Center, LLC's

Statement of Material Facts, and shows this Court as follows:

1.

Safeway manages shopping centers (the "Properties") including the Tri

County Shopping Center. (First Shaikh Depo., p. 13).

[1]

**Response:**

    **Undisputed.**

2.

Tri County owns the Tri County Shopping Center. (*Id.* at p. 14).

**Response:**

    **Undisputed.**

3.

Seneca Insurance Company, Inc. ("Seneca") is a liability insurer that specializes in complex risks such as the shopping centers managed by Safeway. (Pluskalowski Depo., p. 18, ll. 10-21).

**Response:**

    **Disputed as written. The Movants' citation does not support the Movants' fact, insofar as Mitchell Pluskalowski did not testify Seneca specializes in "complex risks." He testified "60 to 70 percent of our book is commercial real estate. So commercial real estate is comprised of strip malls, shopping centers, office buildings, mixed merc, mercantile, standalone mercantile buildings. That is 60 to 70 percent of our book. So it's a huge portion of our book. And strip malls and shopping centers comprises a big part of that. It's Seneca's specialty." [*Pluskalowski Depo*., p. 18:14-21].**

[2]

4.

Seneca wanted to increase policies sold for 2014. (*Id.* at p. 22, ll. 14-24). Accordingly, Seneca incentivized agents by offering commissions of 20% - well above the industry norm - and incentivized insureds by offering discounted premiums. (*Id.* at pp. 178, ll. 24-25, 198, ll. 4-6 and 199, ll. 11-17).

**Response:**

**Disputed. Notably, the Movants' fact is not material. Moreover, the Movants have failed to comply with the provisions set out in Local Rule 56.1(B)(1), which require each material fact to be numbered separately. Also, the Movants have failed to comply with the provisions set out in Local Rule 56.1(B)(1), insofar as they have stated their fact as an issue or legal conclusion and is argumentative.**

**Further, the Movants' citation does not support the Movants' fact, insofar as it mischaracterizes the testimony presented. Mitchell Pluskalowski did not testify Seneca wanted to increase policies sold for 2014. He testified every branch has different benchmarks and Seneca sets a plan in motion every year for the next year, depending on where it figures the company will finish the current year and a realistic growth model for the following year. [*Pluskalowski Depo*., p. 22:14-24]. Additionally, Mitchell Pluskalowski specifically testified he**

[3]

**received no financial incentive or bonus based upon premium volume written.**
**[*Id* at p. 23:23-25]**

5.

The underwriter for the Safeway account was Mitchell Pluskalowski ("Pluskalowski"). (*Id.* at p. 16, ll.11-14).

**Response:**

**Undisputed.**

6.

Hamby & Aloisio, Inc. ("Hamby") assisted Safeway in the placement of its liability insurance, and Marty Friedman ("Friedman") of Hamby was the producer on the Safeway account. (Friedman Depo., p. 19, ll. 10-25).

**Response:**

**Undisputed.**

7.

On October 8, 2013, Hamby completed and sent to Seneca an application for Safeway's liability coverage for January 30, 2014 to January 30, 2015 (the "Initial Application"). (Ex. 39).

**Response:**

**Disputed as written. The Movants' citation does not support the Movants'**

[4]

**fact, insofar as the Movants' fact indicates Hamby & Aloisio (H&A) "completed" the Initial Application on October 8, 2013. The evidence demonstrates H&A, on behalf of Safeway, submitted the October 2, 2013 Commercial Insurance Application, the Initial Application, to Seneca on October 8, 2013. [*Safeway 30(b)(6) Depo*, pp. 208:6-25; 209:1-8; Exhibit 39].**

8.

The Initial Application contained the following question and answer regarding crimes on the Properties: "18. HAVE ANY CRIMES OCCURRED OR BEEN ATTEMPTED ON YOUR PREMISES WITHIN THE LAST THREE (3) YEARS?  N" (Ex. 39 at SEN480).

**Response:**

**Undisputed.**

9.

The answer "N" meaning "No" was an inadvertent error contradicted by numerous other disclosures in Safeway's application materials. (Friedman Depo., p. 45, l. 14 – p. 46, l. 12; *see e.g.*, Exs. 59, 61 and 90).

**Response:**

**Disputed. The Movants have failed to comply with the provisions set out in Local Rule 56.1(B)(1), insofar as their fact is stated as an issue or legal**

**conclusion and is argumentative. There was no testimony the "No" was "inadvertent." Rather, Safeway admitted its response to Question 18 was completely incorrect. [*Safeway 30(b)(6) Depo*., pp. 230:4-25; 231:1-2, 21-23].**

10.

Additionally, the Initial Application contained the following information regarding loss history (the "Loss History Grid"):

| | | LOSS HISTORY | | | | CLAIM STATUS | |
|---|---|---|---|---|---|---|---|
| | | ENTER ALL CLAIMS OR LOSSES (REGARDLESS OF FAULT AND WHETHER OR NOT INSURED) OR OCCURRENCES THAT MAY GIVE RISE TO CLAIMS FOR THE PRIOR 5 YEARS (3 YEARS IN KS & NY) | | | CHK HERE IF NONE | SEE ATTACHED LOSS SUMMARY | |
| DATE OF OCCURRENCE | LINE | TYPE/DESCRIPTION OF OCCURRENCE OR CLAIM | DATE OF CLAIM | AMOUNT PAID | AMOUNT RESERVED | OPEN | CLSD |
| | | Loss runs on file with the underwriters | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

(Ex. 39 at SEN467).

**Response:**

**Undisputed.**

11.

The Initial Application stated coverage had been declined, cancelled or nonrenewed in the prior three years.  (*Id.* at SEN466).

**Response:**

**Undisputed. However, the Movants' fact is not material.**

12.

The Initial Application stated Safeway did not have a safety program.  (*Id.* at

SEN466 and 480).

**Response:**

      **Undisputed. However, the Movants' fact is not material.**

13.

Included with the Initial Application was a loss run showing two crime claims resulting in payments by a prior carrier of $400,000 and $300,000. (*Id.* at SEN489).

**Response:**

      **Undisputed. However, the Movants' fact is not material.**

14.

Hamby also sent Seneca a collection of liability loss runs for prior policy periods (the "Loss Runs") which disclosed *many* claims for violent crimes including shootings and assaults and batteries on the Properties. (Exs. 59 and 90).

**Response:**

      **Undisputed.**

15.

If a claim did not involve a significant payment, Seneca did not consider it relevant to the underwriting process even if it involved a violent crime such as a shooting or an assault and battery. (Pluskalowski Depo., pp. 141 and 147-148).

**Response:**

Disputed. The Movants' citation does not support the Movants' fact, insofar as it mischaracterizes the testimony presented and is refuted by the testimony of Mitchell Pluskalowski. Mitchell Pluskalowski testified loss runs include anything that generated a claim, and show frequency, i.e. how many losses/incidents occurred, and severity, i.e. how large of a loss occurred. [*Pluskalowski Depo*., pp. 139:1-14; 140:21-25]. Mitchell Pluskalowski distinguished between open versus closed claims and noted if a claim is closed, and had small reserves with only small payouts or expenses paid, it indicated there was not a lot of validity to the claim. [*Id*. at p. 141:3-17]. He further testified if there was a large reserve on an open claim, it would be an indication it could be an issue. [*Id.* at pp. 143:13-14; 154:8-13].

According to Mitchell Pluskalowski, an underwriter would take into account not only whether there were a high frequency of crimes with a low dollar value associated with the losses, but whether Question 18 was answered yes to identify crimes on the property. [*Pluskalowski Depo*., pp. 141:23-25; 142:1-11]. Mitchell Pluskalowski testified since the answer to Question 18 was "No," and the application was supposed to be answered honestly, he assumed a closed claim with no pay indicated it was not a valid claim. [*Id.* at p. 148:4-10]. If

the answer to Question 18 had been "Yes," and the documentation showed prior occurrences and reserves, it would have been a different story. [*Id.* at p. 148:18-22]  He testified he had to take all three together to form an opinion of the risk. [*Id.*]

Mitchell Pluskalowski testified the only open claim of note, which was on the loss summary, but not the loss runs, was the **only** incident that showed an open reserve of approximately $200,000. [*Pluskalowski Depo*., p. 144:1-5]. He noted, "When you take into context we had 12 years of hard copy loss runs and 42 locations on the schedule, that was a minute detail." [*Id*. at p. 144:1-8]. He believed it to be an outlier.  [*Id.* at pp. 208:12-25; 209: 1-4]. Although Seneca determined there was no severity based on the information available to it at the time, Mitchell Pluskalowski testified an underwriter will request additional information for open claims if there is a combination of frequency and severity. [*Id.* at p. 143:10, 18-25; 144:1-12].

16.

Ray Smith alleged he was shot at Tri County Shopping Center on or about November 12, 2011.  (Ex. 24).

**Response:**

Undisputed.

[9]

17.

Safeway reported this possible claim to Travelers.  (Ex. 23).

**Response:**

**Undisputed.**

18.

On November 6, 2013, Ray Smith filed suit against multiple defendants including Tri County (the "Smith Lawsuit").  (Ex. 24).

**Response:**

**Undisputed.**

19.

Hamby sent Seneca a summary of the Loss Runs (the "Loss Run Summary") referencing Travelers Insurance Company ("Travelers") as Safeway's liability carrier for 2011 and identifying six (6) assaults and batteries including one open assault and battery with a reserve of $209,824.00.  (Ex. 61).

**Response:**

**Undisputed.**

20.

At no time prior to binding, did Seneca ever inquire as to any of the crimes disclosed on the Loss Runs or the Loss Summary. (Pluskalowski Depo., p. 39, ll. 7-

[10]

14). Indeed Seneca did not even make any inquiry regarding an open claim with a reserve in excess of $200,000.00, which by Seneca's standards constituted a "severe claim." (*Id.* at p. 144, ll. 9-12 and pp. 208, ll. 18 – p. 210, l. 6).

**Response:**

**Undisputed. However, the Movants have failed to comply with the provisions set out in Local Rule 56.1(B)(1), which require each material fact to be numbered separately.**

21.

Based upon the information in the Loss Run Summary, Safeway's loss ratio(*i.e.* the percentage of premium used to pay losses) was at or near 95%. (Ex. 154 and Knepper Depo., pp. 244-45).

**Response:**

**Disputed. Notably, the Movants' fact is not material. Moreover, the Movants' citation is not supported by the evidence and is refuted by the testimony of Mitchell Pluskalowski, who testified he believed the loss ratio to be around 20%. [*Pluskalowski Depo*., p. 144:13-18]. Richard Franklin acknowledged the discrepancy. [*Deposition of Richard Franklin*, p. 188:7-12]. Moreover, William Knepper did not testify the loss ratio was at or near 95%, but said he would probably agree. [*Knepper Depo*., pp. 244:22-25; 245:1-19].**

22.

To accept a risk and issue a policy, Seneca required a loss ratio of no more than 55 to 60%. (Pluskalowski Depo., pp. 211, ll. 13-18 and 144, ll. 13-18).

**Response:**

**Disputed. Notably, the Movants' fact is not material. Moreover, the Movants' citation does not support the Movants' fact, insofar as it mischaracterizes the testimony presented. Mitchell Pluskalowski testified "Industry standard is anything above 55 to 60 could present an issue." [*Pluskalowski Depo.*, p. 144:13-18]. He did testify a risk could not be accepted and a policy could not be issued if the ratio exceeded that amount.**

23.

Seneca considers 75% to be a "bad loss ratio" and would require additional scrutiny of an account over 50-55% at renewal. (*Id.* at p. 242, ll. 12-23).

**Response:**

**Undisputed. However, the Movants' fact is not material.**

24.

Mr. Pluskalowski ignored the information provided and erroneously calculated Safeway's loss ratio at 20%. (*Id.* at p. 40).

[12]

**Response:**

**Disputed. Notably, the Movants' fact is not material. Moreover, the Movants have failed to comply with the provisions set out in Local Rule 56.1(B)(1), insofar as they have stated their fact as an issue or legal conclusion and is argumentative. The evidence in the record directly refutes allegations Mitchell Pluskalowski ignored documents from H&A produced on behalf of Safeway. Mitchell Pluskalowski testified he reviewed the loss history provided and relied on the information provided by Safeway in the Applications, including the information and answers to the questions regarding loss history and crimes in deciding whether to quote and bind the policy to Safeway. [*Pluskalowski Depo*., pp. 13:3-4; 14:21-24; 15: 21-24; 21:8-23; 144: 1-8; 271: 21-25; 272: 1-14].**

25.

Mr. Pluskalowski calculated Safeway's premium using only the square footage of the Properties and, ignoring the loss history information provided, offering a 25% discount to incentivize acceptance and "bring the pricing to where it needed to be" to undercut the current carrier. (*Id.* at p. 60, ll. 1-15, 178, ll. 24-25 and 198, ll. 4-6).

**Response:**

**Disputed. Notably, the Movants' fact is not material. Moreover, the Movants' citation does not support the Movants' fact and is refuted by testimony presented by Mitchell Pluskalowski. Specifically, Mitchell Pluskalowski testified the premium is determined by the square footage of the shopping center and Seneca can apply credits or debits to get to a premium, or based on the quality of the risk. [*Pluskalowski Depo*., p. 60: 1-10]. He further testified he reviewed loss runs dating back to 2002, used the numbers in the liability loss runs, and he rated the premium up based on exposure and rate. [*Id.* at pp. 177:13-25; 178:1-25].**

26.

Seneca requires actual loss runs (not summaries) to bind coverage. (*Id.* at p. 211, ll. 13-18).

**Response:**

**Undisputed.**

27.

Despite multiple references to past liability coverage by Travelers, Seneca never asked for a Travelers loss run, nor did Seneca make any inquiries regarding the numerous crimes attributed to Travelers on the Loss Run Summary. (*Id.* at pp. 207-

[14]

09).

**Response:**

**Undisputed. However, the Movants' fact is not material.**

28.

Prior to binding coverage, Seneca never asked for updated loss runs.  Indeed, Seneca admits it did "nothing" to make sure it had updated loss information prior to binding.  (*Id.* at pp. 163, ll. 14-16, 265, ll. 15-23 and 266, ll. 11-21).

**Response:**

**Undisputed. However, the Movants' fact is not material.  Moreover, the Movants have failed to comply with the provisions set out in Local Rule 56.1(B)(1), which require each material fact to be numbered separately.**

29.

On January 27, 2014, Friedman went to Safeway's offices to collect premium for the Seneca policy and to obtain a signature on a final application dated January 27, 2014 (the "Final Application") prepared by Hamby. (Friedman Depo., p. 65, ll. 13-22 and Ex. 40).

**Response:**

**Undisputed.**

30.

The Final Application did not contain Question 18.  (Ex. 40).

**Response:**

**Undisputed. However, the Movants' fact is not material.**

31.

The Final Application contained a statement that "Travelers cancelled due to losses in 2011."  (*Id.* at SEN5984).

**Response:**

**Undisputed. However, the Movants' fact is not material.**

32.

On or about November 4, 2013, there allegedly was a shooting at the Tri County Shopping Center (the "November 4 Shooting").  (Ex. 146).

**Response:**

**Disputed as written. Movants have failed to comply with the provisions set out in Local Rule 56.1(B)(1), insofar as they have stated their fact as an issue or legal conclusion and is argumentative.  Moreover, the evidence demonstrates there was, without question, a shooting at the shopping center.  [*Safeway 30(b)(6) Depo*., pp. 100:1-25; 104:6-15; Exhibit 14].  Rafat Shaikh, the CEO and Owner of Safeway, visited the property on November 5, 2013 to find out what happened**

[16]

the day prior and learned three people were shot, one fatally. [*Id*. at pp. 13:21; 14:20-23; 100:24-25; 101:1-11].

33.

During the January 27, 2014, meeting, Safeway gave Friedman a letter from an attorney referencing a wrongful death claim related to the November 4 Shooting.  (Friedman Depo., p. 74, ll. 18-24 and Ex. 164).

**Response:**

**Undisputed.**

34.

Seneca did not review the Final Application, and Mr. Pluskalowski testified the Final Application "had     no     bearing     on     what     we     were     doing." (Pluskalowski Depo., p. 224, ll. 5-9).

**Response:**

**Disputed. The Movants' citation does not support the Movants' fact, insofar as Mitchell Pluskalowski testified as follows:**

> **Q.  And so did this application document supersede the October 2nd application document?**
> **A.  It had no bearing on what we were doing.**
> **Q.  Did you review it?**
> **A.  No. There was no need to.**
> **Q.  So you did not review this document?**
> **A.  We probably paged through it real quick, but it was not important as we already had the other application.**

[17]

[*Pluskalowski Depo*., p. 224:5-13].

35.

Seneca knew the answer to Question 18 was false as Mr. Pluskalowski admitted to seeing crimes listed on the loss runs attached to the Initial Application. (*Id.* at p. 66, ll. 4 – p. 67, l. 15).

**Response:**

**Disputed. The Movants have failed to comply with the provisions set out in Local Rule 56.1(B)(1), insofar as they have stated their fact as an issue or legal conclusion and is argumentative.**

**Further, the Movants' citation does not support the Movants' fact, insofar as it mischaracterizes the testimony presented. Mitchell Pluskalowski did not testify Seneca knew the answer to Question 18 was false. Mitchell Pluskalowski specifically testified that the two theft crimes on the loss run could have pertained to inside jobs. He noted " So we see a lot of times employees will steal copper wiring from the places they're employed with. We did not have a description. This was a property loss run, which we were not quoting on the property. So, no, without a detailed form description, it would be hard to say if the two relate." [*Pluskalowski Depo*., pp. 66:17-25; 67: 1-11]**. He further testified, "**from an underwriter's perspective, it's not an external crime, meaning others**

[18]

**break in forcibly. It could be a lot of different things. [*Id*. at p. 67:15-17].**

36.

Nonetheless, on January 30, 2014, Seneca bound a policy insuring Safeway as the Named Insured and Tri County as an Additional Insured (the "Policy").(Seneca Complaint, Ex. B). The Policy does not contain a provision entitling Seneca to recoupment of defense expenses.

**Response:**

**Undisputed. As relates to the recoupment of defense expenses, the Movants' fact is not material.**

37.

Seneca's underwriting expert, William Knepper, stated multiple times he would *not* have insured Safeway given the information Seneca had in its possession. (Knepper Depo., pp. 144-145, 160 and 169).

**Response:**

**Disputed. Notably, the Movants' fact is not material. Moreover, the Movants' citation does not support the Movants' fact, insofar as it mischaracterizes the testimony presented. William Knepper never testified he would not have insured Safeway given the information Seneca had in its possession. Rather, he testified he did not know whether he would have issued**

[19]

**the policy if he was the underwriter and knew of four shootings, but he <u>probably</u> would not have. [*Knepper Depo.*, pp. 144:25; 145:1-4]. He also testified "as an underwriter I <u>probably</u> would not have written this risk at all" and "<u>I think that perhaps</u> I would have done things differently, and perhaps I would have looked at - looked at this and reached a different conclusion than the Seneca underwriter did. [*Id.* at pp. 159:22-25; 169:8-9].**

38.

After binding coverage, Seneca underwriters must order inspections on all properties within 48 hours and receive and review the inspection reports within 30 days to enforce any right to rescind coverage based upon the findings of the reports. To save money, Seneca inspected fewer than half the Properties, selected at random. (Pluskalowski Depo., p. 72, l. 3 – p. 74, l. 8).

**Response:**

**Disputed. Notably, the Movants' fact is not material. Moreover, the Movants have failed to comply with the provisions set out in Local Rule 56.1(B)(1), which require each material fact to be numbered separately. Additionally, the Movants' citation does not support the Movants' fact, insofar as the testimony presented by Mitchell Pluskalowski refutes the Movants' fact. Mitchell Pluskalowski testified underwriters do not have to order and review**

**loss control inspections on every property location and can use their judgment regarding the amount of perceived exposure on individual risk. [*Pluskalowski Depo*., p. 72:3-14].**

39.

The inspection reports referenced crimes on the Properties. (*Id.* at pp. 118-120 and 126).

**Response:**

**Disputed. Notably, the Movants' fact is not material. Moreover, the Movants' citation does not support the Movants' fact, insofar as it mischaracterizes the testimony and evidence presented. Mitchell Pluskalowski testified the vandalism and theft from the Wal-Mart on one of Safeway's properties was not pertinent because Seneca was only writing a GL policy and had not received any loss history to support an issue at that location. [*Pluskalowski Depo*., p. 120:6-22]. He also testified inventory being stolen from one of the tenants would not be very important on a mono-line GL policy. [*Id.* at p. 132:1-9].**

40.

Keith Mitchell claims he was shot at the Tri County Shopping Center on August 17, 2014 (the "Mitchell Incident" and "Mitchell Claim"). (Ex. 36, ¶ 1).

[21]

**Response:**

 **Undisputed.**

41.

On March 30, 2015, Mitchell sent correspondence to Safeway and Tri County notifying them of the Mitchell Incident (the "March 30, 2015 Letter"). (Ex. 118). Thereafter, Mr. Mitchell filed a lawsuit against Safeway and Tri County on April 6, 2015 (the "Mitchell Lawsuit") alleging of other crimes at the Tri County Shopping Center including the November 4 Shooting. (Ex. 36, ¶¶ 16-28, 30 and 38).

**Response:**

 **Disputed as written. Movants have failed to comply with the provisions set out in Local Rule 56.1(B)(1), which require each material fact to be numbered separately. Moreover, the Movants' citation does not support the Movants' fact, insofar as the correspondence sent on March 30, 2015 was sent to Safeway and WH-Tri County by Mr. Mitchell's attorney, Charles L. Clay, Jr. Also, the Mitchell Lawsuit was filed on March 31, 2015, not April 6, 2015. [*Mrakovcic Depo.*: Exhibit 118 and *Safeway 30(b)(6) Depo*.: Exhibit 36, ¶¶1, 16-30, 35, 37-39, 43].**

42.

Prior to receipt of the March 30, 2015 Letter, Safeway and Tri County were

[22]

unaware of the alleged Mitchell Incident.  (First Shaikh Depo., p. 263).

**Response:**

**Undisputed. Notably, the Movants' fact is not material.**

43.

Seneca has admitted it has no evidence Safeway or Tri County were aware of the Mitchell Incident prior to receipt of the March 30, 2015 Letter. (Mrakovcic Depo., p. 62, l. 21 – p. 63, l. 4).

**Response:**

**Undisputed. Notably, the Movants' fact is not material.**

44.

Safeway and Tri County notified Seneca of the Mitchell Incident on April 6, 2015.  (Ex. 119).

**Response:**

**Undisputed.**

45.

Seneca immediately set up its claim file, and the assigned adjuster, John Mrakovcic, reviewed the Mitchell Complaint, the Policy and the underwriting file including the application materials and Loss Runs evidencing crimes on the Properties.  (Mrakovcic Depo., p. 58, l. 20 – p. 60, l. 6).

**Response:**

**Disputed as written. The Movants' citation does not support the Movants' fact, insofar as it mischaracterizes the testimony presented. John Mrakovcic testified he did not review the complete underwriting file, but reviewed the Complaint, the Policy, the Application and any loss runs in the file. [*Mrakovcic Depo*., pp. 58:23-25; 59:1-7]. He believed the loss runs may have included some crimes, but could not recall. [*Id.* at pp. 59:18-25; 60:1-6].**

46.

On April 7, 2015, Seneca sent a letter to Safeway and Tri County (the "April 7, 2015 Letter") acknowledging the Mitchell Claim and including a boilerplate statement regarding reserving rights with no information whatsoever as to the grounds for such reservation. (Ex. 122).

**Response:**

**Disputed. Notably, the Movants' fact is not material. Moreover, the Movants have failed to comply with the provisions set out in Local Rule 56.1(B)(1), insofar as they have stated their fact as an issue or legal conclusion and is argumentative.**

[24]

47.

All reservation of rights letters require approval by Mr. Mrakovcic's supervisor, Frank Donahue. (Mrakovcic Depo., p. 68, l. 17 – p. 69, l. 10).

**Response:**

**Disputed. Notably, the Movants' fact is not material. Moreover, the Movants' citation does not support the Movants' fact, insofar as it mischaracterizes the testimony presented. John Mrakovcic testified any specific reservation of rights letters required approval from Frank Donahue, but he did not have to approve an acknowledgement letter with a reservation of rights. [*Mrakovcic Depo*. pp. 68:7-25; 69:1-10].**

48.

The April 7, 2015 Letter was "an acknowledgment letter" and therefore did not require approval. (*Id.* at pp. 68, l. 22 – p. 69, l. 10)

**Response:**

**Disputed. Notably, the Movants' fact is not material. Moreover, the Movants' citation does not support the Movants' fact, insofar as it mischaracterizes the testimony presented. John Mrakovcic testified the April 7, 2015 was an "acknowledgement letter with a reservation of rights." [*Mrakovcic Depo*. pp. 68:7-25; 69:1-10].**

[25]

49.

Seneca admits that as early as April 7, 2015, it was investigating possible late reporting of the Mitchell Claim. (*Id.*at p. 40). Seneca did not disclose this in its April 7, 2015 Letter.  (Ex. 122).

**Response:**

 **Undisputed. However, the Movants' fact is not material.**

50.

As of April 7, 2015, Seneca also had engaged an investigator to investigate matters related to both defense *and* coverage without disclosing to Safeway there were any coverage issues or that the assigned investigator was investigating Safeway to assist Seneca in a possible declination.  (Mrakovcic Depo., pp. 42 and 43).

**Response:**

 **Disputed. Notably, the Movants' fact is not material. Moreover, the Movants' citation does not support the Movants' fact, insofar as the April 7, 2015 correspondence explicitly advised Safeway it was investigating coverage for the claim and had assigned Tenco Services to investigate the loss, subject to the reservation of rights.  The correspondence also advised Safeway of Seneca's reservation of rights to disclaim coverage and deny liability under the Policy in the event there was a conclusion no coverage applied to the claim. [*Mrakovcic***

*Depo*.: Exhibit 122].

51.

On May 1, 2015, Seneca hired the coverage counsel who eventually filed the instant action nine months later.  (Ex. 122 and Mrakovcic Depo., p. 51, ll. 16-22).

**Response:**

**Disputed as written. Notably, the Movants' fact is not material. Moreover, the Movants' citation does not support the Movants' fact, insofar as the record cited to by Safeway demonstrates Seneca hired coverage counsel in May 2015, but does not specifically identify May 1, 2015.  The document that does so is Exhibit 115. [*Mrakovcic Depo*.: 51:16-22; Exhibit 115].**

52.

On May 5, 2015, Seneca engaged defense counsel and began defending Safeway and Tri County in the Mitchell Lawsuit.  (Ex. 115).

**Response:**

**Disputed as written. Notably, the Movants' fact is not material. Moreover, the Movants' citation does not support the Movants' fact, insofar as the record cited to by Safeway demonstrates only that Seneca hired coverage counsel on May 5, 2015. [*Mrakovcic Depo*.: Exhibit 115]. The Movants have failed to comply with the provisions set out in Local Rule 56.1(B)(1), insofar as they have stated**

[27]

their fact as an issue or legal conclusion and is argumentative.

53.

On May 13, 2015, Seneca sent a reservation of rights letter, approved by Frank Donahue, identifying certain grounds for possible denial of the Mitchell Claim. (Ex. 42 and Mrakovcic Depo., pp. 68 and 69).

**Response:**

**Undisputed.**

54.

Seneca did not file the instant action until January 19, 2016.  (Dkt. 1).

**Response:**

**Undisputed.**

55.

Seneca did not seek to deposit the Policy premium into the registry of the Court until April 6, 2016.  (Dkt. 12).

**Response:**

**Disputed. The docket reflects Seneca sough to deposit the Policy premium into the registry of the Court upon filing *Plaintiff's Motion To Deposit Funds Into The Registry Of The Court* on March 17, 2016. The Court Ordered said Motion on April 8, 2016. [Docket 12 and 17].**

[28]

Respectfully submitted this 24th day of January 2017.

SWIFT, CURRIE, McGHEE & HIERS, LLP

/s/ Jennifer L. Nichols

Maren R. Cave
Georgia Bar No. 278448
Jennifer L. Nichols
Georgia Bar No. 001294
***Attorneys for Plaintiff***

[29]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SENECA INSURANCE COMPANY, INC. | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) CIVIL FILE NO. 1:16-CV-00174-WSD |
| SAFEWAY GROUP, INC.; WH-TRI COUNTY SHOPPING CENTER, LLC; and KEITH MITCHELL, | ) |
| Defendants, | ) |
| v. | ) |
| | ) |
| HAMBY & ALOISIO, INC., | ) |
| Third-Party Defendant. | ) |
| _____ | ) |

## **CERTIFICATE OF SERVICE**

I hereby certify that I have this day served a copy of the within and foregoing

*Seneca Insurance Company, Inc.'s Response to Safeway Group, Inc. and WH-Tri*

*County Shopping Center, LLC's Statement of Material Facts* upon all parties to this

matter via electronic service through the Court's CMC/EF system as follows:

Jessica F. Pardi
MORRIS, MANNING & MARTIN, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326

[30]

Charles L. Clay, Jr.
Jennifer R. Harbaugh
Christopher B. Newbern
CHUCK CLAY & ASSOCIATES, LLC
4401 Northside Parkway, Suite 520
Atlanta, GA 30327

Darren Summerville
SUMMERVILLE FIRM
400 Colony Square, Suite 2000
1201 Peachtree Street, N.E.
Atlanta, GA  30361

Kevin A. Doyle
Lokey, Mobley and Doyle, LLP
8425 Dunwoody Place
Atlanta, GA 30350

This 24th day of January 2017.

**SWIFT, CURRIE, McGHEE & HIERS, LLP**

*/s/ Jennifer L. Nichols*
Maren R. Cave
Georgia Bar No. 278448
Jennifer L. Nichols
Georgia Bar No. 001294
***Attorneys for Plaintiff***

The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309-3231

[31]

Telephone: (404) 874-8800

Facsimile: (404) 888-6199

maren.cave@swiftcurrie.com

jennifer.nichols@swiftcurrie.com

[32]