**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| SENECA INSURANCE COMPANY, INC.<br><br>        Plaintiff,<br><br>v.<br><br>SAFEWAY GROUP, INC.; WH-TRI COUNTY SHOPPING CENTER, LLC; and KEITH MITCHELL,<br><br>        Defendants.<br>_____<br><br>SAFEWAY GROUP, INC.; WH-TRI COUNTY SHOPPING CENTER, LLC;<br><br>        Third-Party Plaintiffs,<br><br>v.<br><br>HAMBY & ALOISIO, INC.,<br><br>        Third-Party Defendants.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) CIVIL FILE NO. 1:16-CV-00174-WSD<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**SAFEWAY GROUP, INC. AND WH-TRI COUNTY
SHOPPING CENTER, LLC'S RESPONSE TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

COME NOW Safeway Group, Inc. ("Safeway") and WH-Tri County Shopping Center, LLC ("Tri County" and collectively the "Safeway Defendants") and submit their Response to Plaintiff's Motion for Summary Judgment as follows.

10648485 v3

Seneca is not entitled to summary judgment on its claims for rescission and/or a declaration it is not obligated to defend or indemnify the Safeway Defendants for the Keith Mitchell Lawsuit for at least the following reasons:[1]

1.  Seneca's fails to meet the requisite burden of proof for summary judgment;

2.  Seneca's arguments regarding material misrepresentations fail factually and as a matter of law;

3.  Seneca waived any purported right to rescind the Policy; and

4.  Seneca has waived any right to deny coverage for the Mitchell Lawsuit on any grounds.

Each of these reasons is now discussed in detail.

## A.   SENECA FAILS TO MEET THE REQUISITE BURDEN OF PROOF FOR SUMMARY JUDGMENT.

Seneca, as the party moving for summary judgment, must show affirmatively the absence of a genuine issue of material fact and "must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial."  *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 2557; *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477.  Seneca must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving

---

[1]  In its brief, Seneca does not seek summary judgment as to its claims regarding timely notice of the Mitchell Claim or to recoup defense expenses for the Mitchell Claim.  While those claims are not addressed in this response, they are addressed in the Safeway Defendants' cross motion for summary judgment.

10648485 v3

party.  *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991).  In determining whether Seneca has met its burden, "[r]easonable doubts as to the facts should be resolved in favor of the nonmoving party," *Borg-Warner Acceptance Corp. v. Davis,* 804 F.2d 1580, 1582 (11th Cir.1986), "... and all justifiable inferences are to be drawn in [the Safeway Defendants'] favor." *Everett v. Napper,* 833 F.2d 1507, 1510 (11th Cir.1987).  Where, as here, Seneca has failed to meet this initial burden, the inquiry ends and summary judgment should be denied.  *Airtran Airlines, Inc. v. Plain Dealer Pub. Co.,* 314 F.Supp.2d 1266, 1270 (N.D. Ga. 2002).

First and foremost, Seneca's arguments are based upon purported "facts" easily refuted by the Safeway Defendants.  Not only have the Safeway Defendants provided evidence sufficient to avoid summary judgment in favor of Seneca, the Safeway Defendants have met their burden in their cross motion for summary judgment and established entitlement to summary judgment on all of Seneca's claims.

The categories of refuted facts upon which Seneca bases its motion are as follows:

### 1.    Seneca's Reliance Upon the Final Application

Seneca makes numerous incorrect assertions to support its argument there was information missing from the Final Application which would have affected its

10648485 v3

decision to issue the Policy.  This is patently false.  Seneca did not review the Final Application and did not believe it had any relevance whatsoever to the application or underwriting processes.    Indeed, Mr. Pluskalowski testified the Final Application "had no bearing on what we were doing."  (Pluskalowski Depo., p. 224, ll. 5-9).  This admission corresponds with Seneca's complaint in this action which does not reference the Final Application at all.

In choosing not to review the Final Application, Seneca admits any loss history information submitted after the Initial Application, Loss Runs and Loss Run Summary was not material to the issuance of the Policy.

**2.    Seneca's Reliance Upon the Answer to Question 18**

Seneca makes numerous false statements in support of its argument it relied upon the answer to Question 18 in the Initial Application (i.e., that no crimes occurred on the premises within the prior 3 years).  First and foremost, Mr. Pluskalowski admitted he had information attached to the Initial Application evidencing crimes had indeed occurred on the properties.  (Pluskalowski Depo., p. 66, l. 4 – p. 67, l. 15).  Second, Question 18 did not even appear in the Final Application submitted to Seneca.  (Ex. 40).  Finally, Safeway disclosed numerous crimes, including violent crimes, to Seneca during the application process.  (See e.g. Exs. 59, 90 and 61).

10648485 v3

### 3.    Safeway's Purported Failure to Disclose Certain Crimes

Materiality aside, Seneca wrongfully asserts Safeway failed to disclose the following incidents:

      a.    An alleged rape and kidnapping on December 9, 2011. This alleged crime was *disclosed* to Seneca on the Loss Run Summary. (Ex. 61).

      b.    An alleged battery inside Club Ritz on June 22, 2012. This alleged crime was *disclosed* to Seneca on the Loss Runs. (Exs. 59 at SEN1482 and 90).

      c.    An alleged January 13, 2012, assault and battery involving Kiara Sims. This alleged crime was *disclosed* to Seneca on the Loss Run Summary. (Ex. 61).

Seneca's motion is based upon incorrect and refuted facts and should be denied.

10648485 v3

**4.      The Communications Between H&A and Safeway**[2]

Seneca erroneously asserts H&A interviewed Safeway to gather application information, reviewed liability loss runs with Safeway and reviewed the Final Application with Safeway "line by line."  The record shows H&A did none of these things.  Mr. Friedman testified he did not do a client interview or "meet with Rafat [Shaileh] to discuss anything." (Friedman Depo., p. 37, ll. 12-20).  Indeed, Mr. Friedman testified the Initial Application was prepared by H&A and submitted without review by Safeway.  (*Id.*, at p. 45, ll. 3-9 and p. 47, ll. 1-8).  He also admitted he never reviewed liability loss runs with Safeway.  (*Id.*, at p. 37, ll. 12-20; p. 51, ll. 19-22; p. 62, ll. 11-17).  Finally, Mr. Friedman did not know whether or not Safeway reviewed the Final Application (*Id.*, at. p. 72, l. 21; p. 73, l. 19).

---

[2] Seneca argues H&A was Safeway's agent in the legal sense.  The Safeway Defendants consistently objected to such term and legal categorization.  As agreed upon by counsel, the legal relationship between Safeway and H&A remained an open issue. (*See* e.g. Safeway Depo., p. 35, l. 14 – p. 36, l. 8).  There are facts and evidence which indicate H&A was Seneca's agent or a dual agent.  For example, Seneca appointed H&A as a Seneca agent, Seneca and H&A have an Agency Agreement which includes a Profit Sharing Agreement and Safeway's initial premium was paid to and collected by H&A on behalf of Seneca. (Exs. 149 and 171).

**B.** **SENECA'S ARGUMENTS REGARDING MATERIAL MISREPRESENTATIONS FAIL FACTUALLY AND AS A MATTER OF LAW.**

**1.** **The Safeway Defendants Did Not Make Any Misrepresentations.**

In support of its motion, Seneca delineates eight (8) crimes Seneca erroneously contends were not disclosed by the Safeway Defendants during the application process and are material to Seneca's decision to issue the Policy. Seneca's contentions are false as each of the alleged crimes either was disclosed by the Safeway Defendants or is inarguably immaterial to Seneca's underwriting decisions. Accordingly, Seneca's claims regarding a material misrepresentation fail as a matter of law. Each of these crimes is now discussed in further detail as follows.

**a. An alleged rape and kidnapping on December 9, 2011**

This alleged crime was *disclosed* to Seneca on the Loss Run Summary. (Ex. 61). Moreover, Seneca knew this claim had an incurred loss of more than $10,000.00 and open reserves of more than $200,000.00. (*Id.*). Such a large reserve is considered a "severe" claim regardless of how the incident is described (Pluskalowski Depo., p. 144, ll. 9-12 and pp. 208, ll. 18 – p. 210, l. 6). Nonetheless, Seneca asked no questions regarding this severe, open claim. (*Id.*).

10648485 v3

### b.  An alleged battery inside Club Ritz on June 22, 2012

This alleged incident resulted in a claim by Carlton Miller which was *disclosed* to Seneca on the Loss Runs.  (Exs. 59 and 90).  Seneca asked no questions regarding this particular claim or any other claim disclosed on the Loss Runs.  (Pluskalowski Depo., p. 147, l. 25 – p. 148, l. 3).

### c.  An alleged January 13, 2012, assault and battery involving Kiara Sims

This alleged crime was *disclosed* to Seneca on the Loss Run Summary (Ex. 61).  Seneca asked no questions regarding this claim or any other claim disclosed on the Loss Run Summary.  (Pluskalowski Depo., p. 208, l. 12 – p. 209, l. 14).

### d.  An alleged November 12, 2011, incident involving Ray Smith

Seneca's argument that the Ray Smith claim was not disclosed on any of the Loss Runs and that such omission affected Seneca's underwriting decision fails as a matter of law.  Mr. Pluskalowski testified that any disclosed claim without a significant payment was irrelevant to his analysis of the risk.  (Pluskalowski Depo., pp. 141, ll. 3-19 and 147, l. 13 – p. 148, l. 3).  The Smith Lawsuit was not filed until November 6, 2013, and did not name Safeway as a defendant.  (Ex. 24).  Even assuming *arguendo* the Smith claim could have appeared on a loss run or otherwise been disclosed, there would have been no associated cost or payment, and Mr. Pluskalowski would have ignored it.  (Pluskalowski Depo., pp. 141, ll. 3-19 and 147, l. 13 – p. 148, l. 3).

**e. An alleged assault inside Club Ritz on August 27, 2011;**

**f. An alleged assault inside Club Ritz on October 15, 2012; and**

**g. An alleged shooting at the 50 Yard Line on June 26, 2013**

The alleged crimes referenced in e–g above could not possibly have been material to Seneca's underwriting process or decisions.  First and foremost, no claim ever was asserted against either of the Safeway Defendants referencing or related to any of these alleged incidents.  Moreover, there are no claimants, victims, demands or payments of any kind related to these alleged incidents.  As Mr. Pluskalowski testified numerous times, without related monetary costs and losses, an incident was not material. *See e.g.* Pluskalowski Depo., pp. 141, ll. 3-19 and 147, l. 13 – p. 148, l. 3; p. 150, ll. 1-4; p. 154, l. 25 – p. 155, l. 4; p. 155, ll. 15-20 and p. 155, l. 25 – p. 156, l. 21.

**h. The November 2013 Shooting**

Seneca's primary argument for rescission seems to be that Safeway failed to disclose the November 2013 Shooting.  This argument fails as a matter of law.  The November 2013 Shooting had not occurred at the time the Initial Application was submitted and/or the Loss Runs obtained from prior carriers, and Seneca underwrote the Policy based solely upon the Initial Application materials without requesting current loss runs prior to binding.  (Pluskalowski Depo., p. 163, ll. 14-16).  Indeed, Seneca admits it did "nothing" to make sure it had current loss

10648485 v3

history information.  (*Id.*, p. 265, ll. 15-23).  Seneca's own underwriting expert did not find this practice acceptable.  (Knepper Depo., pp. 164-66).  Finally, Seneca never reviewed the Final Application which Seneca erroneously contends should have included disclosure of the November 2013 Shooting in the Loss History Grid. (Pluskalowski Depo., p. 224, ll. 5-9).

Moreover, as Seneca's expert testified, not everything requested in the Loss History Grid is or could be encompassed in loss runs.  (Knepper Depo., p. 187, ll. 1-4).  The Loss History Grid submitted to Seneca leaves blank the questions regarding occurrences that may give rise to claims (*e.g.* the Ray Smith incident in the Initial Application and/or the November 2013 Shooting in the Final Application).  (Ex. 39 at SEN467).  Indeed, it was evident to Seneca's expert the Loss History Grid contained blanks.  (Knepper Depo., at p. 188, l. 21 – p. 189, l. 2).    **Seneca accepted an application containing unanswered questions regarding occurrences and therefore *cannot* deny liability based upon the missing information:**

> The question is whether an insurer must honor its policy when the application was incomplete, but the insurer retained the premium and delivered the contract anyway. The vast weight of authority binds insurers to their commitments in this situation. *See* 6 Lee R. Russ Thomas F. Segalla, *Couch on Insurance* § 85:18 (3rd ed. 2005) ("When the information supplied by the insured is obviously not satisfactory or adequate, the acceptance thereof by the insurer without a protest is

10648485 v3

> a waiver of the requirement of a complete or full answer.") . . . . *Bloom v. Wolfe*, 547 P.2d 934, 937 (Colo. Ct. App. 1976) ("It is well established that when an insurer accepts an application for insurance with unanswered question, liability cannot be denied on this ground.").

*Nationwide Life Ins. Co. v. Steiner*, 722 F.Supp.2d 179,186 (D.R.I. 2010). This same prohibition exists in the law in Georgia. *See e.g. Pennsylvania Life Ins. Co. v. Tanner*, 163 Ga. App. 330, 333, 293 S.E.2d 520, 522-23 (1982) (insurer obligated to read application and takes a calculated risk in issuing policy based upon application with a blank in it).

Finally, Seneca claims its decision to issue the Policy was based upon a "No" answer to question 18 which allegedly induced Seneca to believe no crimes had occurred on the Properties. The undisputed evidence eviscerates this argument. The Initial Application included a loss run identifying two thefts on the Properties resulting in losses of $700,000.00. (Ex. 39, p. SEN489). Seneca received the Loss Runs identifying shootings, assaults and batteries and other crimes. (Exs. 59 and 90). The Loss Run Summary disclosed the same crimes plus a severe open claim with a reserve of more than $200,000.00. (Ex. 61). Based upon the undisputed evidence of what Seneca received, Seneca cannot rely upon the response to Question 18 as a basis to rescind the Policy. *Peek v. So. Guar. Ins. Co.*, 240 Ga. 498, 500, 241 S.E.2d 210, 212 ("An insurer cannot justly assert reliance upon a representation it knows to be false, or is properly charged with

11

knowing to be false."). Indeed, Mr. Pluskalowski admitted he knew, prior to binding, of crimes on the Properties:

> Q. So there are three losses on this loss run totaling $708,880, correct?
>
> A. Yes.
>
> Q. And two out of those three losses are labeled as a theft, correct?
>
> A. Yes.
>
> Q. So those are crimes, correct?
>
> A. Possibly, yes.

(Pluskalowski Depo., p. 66, ll. 14-21). Accordingly, Safeway did not misrepresent the occurrence of crimes on the Properties.

## 2. Any Alleged Misrepresentation Was Not Material.

Even assuming *arguendo* a misrepresentation was made, to rescind the Policy, such misrepresentation must be material to the risk and to Seneca's issuance of the Policy under the terms stated therein. *Lively v. So. Heritage Ins. Co.*, 256 Ga. App. 195, 196, 568 S.E.2d 98, 100 (2002). Materiality is determined using an objective standard of what is material to a "prudent insurer." *Id.* Materiality, or the lack thereof, may be determined as a matter of law when there are no genuine issues of fact. *See generally, Dracz v. Am. Gen Life Ins. Co.*, 427 F.Supp.2d 1165, 1170, (M.D.Ga. 2006) citing *Jackson Nat'l Life Ins. Co. v. Snead*, 231 Ga. App. 406, 410, 499 S.E.2d 173,176 (1998).

12

10648485 v3

As Seneca ignored the loss history information submitted, it cannot now contend an alleged misrepresentation regarding Safeway's loss history to be material. Safeway can demonstrate a lack of materiality by showing:

(a)   the insurer did not rely upon the application;

(b)   any claim by the underwriter regarding materiality is "merely a blanket statement unsupported by bright-line policies regarding the specific risk;" *or*

(c)   presenting an expert to testify as to what a prudent insurer would have done in the same circumstances.

*Dracz*, 427 F.Supp.2d at 1170. While Safeway must show only *one* of these factors, it can evidence all three and is entitled to summary judgment on Seneca's rescission claim.

### a.  Seneca Did Not Rely on the Application Information.

Seneca claims reliance upon the answer to Question 18 that no crimes occurred on the Properties, but as discussed in section A(2), Mr. Pluskalowski admitted he knew this response was in error.

Moreover, Seneca completely *ignored* the loss history information submitted including, but not limited to the following:

1. Loss runs with the Initial Application identifying $700,000 of paid crime claims (Ex. 39 at SEN489);

2. Loss runs sent after the Initial Application identifying multiple crimes on the Properties including shootings and assaults and batteries (Exs. 59 and 90);

3. The Loss Run Summary disclosing at least six assaults and batteries, an open claim reserved at approximately $210,000.00 and a loss ratio of approximately 95% as discussed in sections B(3) and C(2).  (Ex. 61);

4. A statement in the Initial Application that coverage previously was declined, cancelled or nonrenewed (Ex. 39 at SEN466); and

5. The Final Application stating Travelers cancelled due to losses in 2011 (Ex. 40).

As shown in section B(1) herein, there are no misrepresentations in the Initial Application or the Final Application.  Moreover, Seneca knew or should have known the Loss History Grid included blanks and that the Loss Runs did not encompass all of the loss history information requested.  Similarly, Seneca's argument that the Ray Smith claim was not disclosed on any loss run and such omission affected Seneca's underwriting decision fails as a matter of law.  Mr. Pluskalowski testified that any disclosed claim not resulting in a significant payment was irrelevant to his analysis of the risk.  (Pluskalowski Depo., pp. 141, ll. 3-19 and 147, l. 13 – p. 148, l. 3).  The Smith Lawsuit was not filed until November 6, 2013 and did not name Safeway as a defendant.  (Ex. 24).  Even assuming *arguendo* the Smith claim should have appeared on a loss run or otherwise been disclosed, there would have been no associated cost or payment,

and Mr. Pluskalowski would have ignored it. (Pluskalowski Depo., pp. 141, ll. 3-19 and 147, l. 13 – p. 148, l. 3).

Finally, leaving no room for doubt Seneca did not rely on the application materials, Mr. Pluskalowski calculated Safeway's premium using only the square footage of the Properties and then offering a 25% discount to incentivize acceptance and "bring the pricing to where it needed to be." (*Id.* at p. 60, ll. 1-15 and 178, ll. 24-25).

### b.  The Risk Did Not Meet Seneca's Underwriting Criteria.

Seneca's underwriting requirements which must be met for issuance of a policy include: (1) a loss ratio (*i.e.* a comparison of paid premium to cost of claims) of no more than 55 to 60%; and (2) receipt of actual loss runs for the insured as opposed to summaries. Safeway did not meet these requirements.

Seneca had in its possession information from which it easily could determine Safeway's loss ratio was approximately 95%. (Exs. 59, 61 and 154; Knepper Depo., pp. 244-45). This is an extremely high loss ratio that would cause a prudent insurer to reject the risk.[3] Indeed, as discussed in section C(3) below, Seneca's own expert would not have accepted the Safeway risk.

Second, Seneca knew, or should have known, based upon multiple references to Travelers in application documents and in the Loss Run Summary,

---

[3] If not rejected outright, a prudent insurer might quote a very high premium or limit the coverages offered.

10648485 v3

that it did not receive the actual loss run for Travelers. This is a significant underwriting omission by Seneca as the Loss Run Summary disclosed Travelers had an open claim reserved at approximately $210,000.00, and the Final Application stated Travelers cancelled coverage based upon losses.[4] Without a copy of the Travelers loss run, and given the extremely high loss ratio, Mr. Pluskalowski was not authorized to insure Safeway.

### c. **Both Underwriting Experts Testified They Would Not Have Issued the Policy with the Information in Seneca's Possession.**

Richard Franklin, Safeway's underwriting expert, concluded Seneca's underwriting decisions constituted a "grievous error in judgment" and that Mr. Pluskalowski "made significant and erroneous assumptions about both crimes and Safeway's loss history." (Ex. 151, pp. 6 and 9). But Safeway does not have to rely only upon its own expert for this showing because *Seneca's* **underwriting expert stated he would not have issued the Policy given the crime and loss information provided to Seneca:**

> Q. Would you have issued the policy if you were the underwriter with four known shootings?
>
> A. I don't know the answer to that. I probably would not have.

---

[4] Mr. Pluskalowski disingenuously claims if he knew the open claim was a "rape" as stated on the actual Travelers loss run and not an "assault and battery" as described on the Loss Run Summary, it would have changed his opinion of the risk. (Pluskalowski Depo., p. 259, ll. 1-11).

10648485 v3

(Knepper Depo., pp. 144, l. 25 – p. 145, l. 4).  He reiterated this opinion throughout his deposition and was obviously suspicious of Pluskalowski's motives.  **"I would not have written this."**  (*Id.* at p. 160, ll. 8-9).  "I believe that I've already testified that I, as an underwriter I probably would not have written this risk at all . . . **But then again, my bonus has nothing to do with whether or not the company writes business or doesn't write business**. . . ."  (*Id.* at p. 169, ll. 7-13).  Finally, Knepper agreed Safeway's loss ratio was approximately 95% and therefore well above the 55-60% required by Seneca.  (Knepper Depo., pp. 244-45).

Any claim that additional or different information would have altered Seneca's underwriting decision is without merit, and any alleged misrepresentation by Safeway is immaterial as a matter of law.

## C.  <u>SENECA WAIVED ANY PURPORTED RIGHT TO RESCIND THE POLICY.</u>

Rescission "is not favored under the law" because it is "a forfeiture of rights under an otherwise valid contract," and therefore "courts are quick to find that the right to rescind has been waived."  *See generally Conway v. Romarion*, 252 Ga. App. 528, 530, 557 S.E.2d 54, 57 (2001).  An insurer waives its right to rescind if it treats a policy as valid after learning of an application misrepresentation.  *Love v. Safeco Ins. Co. of Ind.,* 2013 WL 5442208 at *7 (M.D.Ga. 2013); *Florida Int'l Indem. Co. v. Osgood,* 233 Ga. App. 111, 113, 503 S.E.2d 371, 373 (1998) quoting

10648485 v3

*Haugseth v. Cotton States Mut. Ins. Co.,* 192 Ga. App. 853, 855, 386 S.E.2d 725 (1989).  Once a waiver occurs, the rescission claim cannot be revived.  *Holloman v. D.R. Horton, Inc.,* 241 Ga. App. 141, 146, 524 S.E.2d 795 (1999).  An insurer must act upon its intent to rescind *immediately* upon discovery of facts supporting a rescission and adhere to such intent.  Seneca did neither and has waived any claimed right to rescind the Policy.

As discussed in section B(1) herein, Seneca knew prior to binding the Policy that the answer to Question 18 was incorrect.  Moreover, Seneca received information regarding previously committed crimes on the Properties in the inspection reports reviewed by Mr. Pluskalowski in April of 2014.  (Pluskalowski Depo., pp. 118-120 and 126).  Thereafter, Seneca failed to act promptly with respect to the information it claims to have learned from the Mitchell Complaint.  In early April of 2015, John Mrakovcic, the claims adjuster for Seneca, reviewed the Mitchell Complaint which alleged numerous prior crimes on the Properties.  (Mrakovcic Depo., pp. 30, l. 25 – p. 32, l. 15).  *At that same time*, he also reviewed Safeway's application and accompanying loss history information.  (*Id.*).

Accordingly, in April of 2014, Seneca first was aware of facts it now claims support rescission, *i.e.* the inspection reports evidencing prior crimes on the Properties.  Inexplicably, Seneca waited *twenty-one months* to file the instant action and *two years* to deposit the Policy premium into this Court's registry.

18

10648485 v3

(Dkt. Nos. 1 and 12).  Indeed, even if such time periods are calculated starting with Seneca's awareness of the Mitchell Claim, Seneca still delayed *nine months* in filing and *one year* in depositing funds.  (*Id.*).  Moreover, prior to filing the instant action, Seneca defended Safeway against the Mitchell Claim and treated the Policy as valid and binding.  This is not the immediate, unequivocal action required by Georgia law to rescind the Policy and therefore constitutes a waiver of any right to rescind.

## **CONCLUSION**

Seneca is not entitled to summary judgment on its claims for rescission and/or a declaration it is not obligated to defend or indemnify the Safeway Defendants for the Keith Mitchell Lawsuit for at least the following reasons:

1. Seneca's fails to meet the requisite burden of proof for summary judgment;

2. Seneca's arguments regarding material misrepresentations fail factually and as a matter of law;

3. Seneca waived any purported right to rescind the Policy; and

4. Seneca has waived any right to deny coverage for the Mitchell Lawsuit on any grounds.

10648485 v3

Respectfully submitted this 24th day of January, 2017.

MORRIS, MANNING & MARTIN, LLP


/s/ Jessica F. Pardi
Jessica F. Pardi
Georgia Bar No. 561204
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
(404) 233-7000
(404) 233-9532 (fax)
jpardi@mmmlaw.com
Attorney for Defendants/Third-Party Plaintiffs Safeway Group, Inc. and WH-Tri County Shopping Center, LLC

20

10648485 v3

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| SENECA INSURANCE COMPANY, INC. | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) CIVIL FILE NO. 1:16-CV-00174-WSD |
| SAFEWAY GROUP, INC.; WH-TRI COUNTY SHOPPING CENTER, LLC; and KEITH MITCHELL, | ) ) ) ) ) ) |
| Defendants. | ) ) |
| _____ | ) ) |
| SAFEWAY GROUP, INC.; WH-TRI COUNTY SHOPPING CENTER, LLC; | ) ) ) ) |
| Third-Party Plaintiffs, | ) ) |
| v. | ) ) |
| HAMBY & ALOISIO, INC., | ) ) |
| Third-Party Defendants. | ) ) |
| _____ | ) |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **SAFEWAY GROUP, INC. AND WH-TRI COUNTY SHOPPING CENTER, LLC'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

10597968 v3

was filed electronically via CM/ECF in the United States District Court for the Northern District of Georgia, with notice of same being electronically served by the Court to all attorneys of record.

This 24th day of January, 2017.

/s/ Jessica F. Pardi
Jessica F. Pardi

10648485 v3