**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| SENECA INSURANCE COMPANY, INC. ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) ) | CIVIL FILE NO. 1:16-CV-00174-WSD |
| SAFEWAY GROUP, INC.; WH-TRI COUNTY SHOPPING CENTER, LLC; and KEITH MITCHELL, ) ) ) ) ) | |
| Defendants. ) _____ ) ) | |
| SAFEWAY GROUP, INC.; WH-TRI COUNTY SHOPPING CENTER, LLC; ) ) ) ) | |
| Third-Party Plaintiffs, ) ) | |
| v. ) ) | |
| HAMBY & ALOISIO, INC., ) ) | |
| Third-Party Defendants. ) _____ ) | |

**SAFEWAY GROUP, INC. AND WH-TRI COUNTY SHOPPING
CENTER, LLC'S RESPONSE TO PLAINTIFF SENECA INSURANCE
COMPANY, INC.'S STATEMENT OF UNDISPUTED MATERIAL FACTS
AS TO WHICH THERE IS NO GEUINE ISSUE TO BE TRIED**

COME NOW Safeway Group, Inc. ("Safeway") and WH-Tri County

Shopping Center, LLC ("Tri County" and collectively the "Safeway Defendants")

and file their Response to Seneca Insurance Company, Inc.'s Statement of Material Facts As to Which There is No Genuine Issue to Be Tried showing this Court as follows:

**NUMBER 1:  DISPUTED** – Mr. Mitchell *alleges* he was shot on August 17, 2014 at Tri County Shopping Center.  The Safeway Defendants do not dispute the existence of such allegation.

**NUMBER 2:  UNDISPUTED**

**NUMBER 3:  UNDISPUTED**

**NUMBER 4:  DISPUTED** – The address for the Tri County Shopping Center is 7490 Old National Highway.  (*See e.g.* Ex. 39 at SEN468).

**NUMBER 5:  UNDISPUTED**

**NUMBER 6:  DISPUTED** – Seneca's own citations (*e.g.* Shaikh Depo., pp. 11-12) evidence H&A procured the prior year's coverage (2012-2013), but before that, Pritchard & Jerden assisted Safeway.

**NUMBER 7:  UNDISPUTED**

**NUMBER 8:  DISPUTED** – The Safeway 30(b)(6) Deposition pages referenced fail to support this assertion.  Moreover, Marty Friedman testified for the renewal at issue, he did not do a client interview or "meet with Rafat [Shaikh] to discuss anything."  (Friedman Depo., p. 37, ll. 12-20).

**NUMBER 9:  UNDISPUTED**

10633078 v2

**NUMBER 10:  UNDISPUTED**

**NUMBER 11:  DISPUTED** – Mr. Hamby testified as follows:

> There's not an industry standard for all carriers, but generally speaking, the information that's contained within a loss run is the date of the occurrence, the day it was filed, the type of occurrence, which is a brief description and outline, the actual amount of money paid out, the reserves, if any, and some loss runs provide the amount paid for defense cost and loss adjustment.

(H&A Depo., p. 53, ll. 17-23).

**NUMBER 12:  DISPUTED** – Mr. Friedman admitted he did not review liability loss runs with Safeway.  (Friedman Depo., p. 37, ll. 12-20; p. 51, ll. 19-22; p. 62, ll. 11-17).

**NUMBER 13:  DISPUTED** – Seneca asserts a conclusion of law regarding "duty and responsibility."  Moreover, Mr. Knepper testified only that an insured "should" look at loss runs, not that it is a duty or responsibility.  (Knepper Depo., pp. 198-99).   Finally, Mr. Franklin testified a potential insured has no duty to review loss runs for accuracy.  (Franklin Depo. p. 97, ll. 15-23).

**NUMBER 14:  DISPUTED** – The Safeway Defendants object to the phrase "all pertinent information is reflected regarding its properties, and any occurrences or incidents that occurred" as overly broad, and beyond the testimony cited. Moreover, Mr. Friedman did not provide Safeway with the liability loss runs obtained by H&A.  (Friedman Depo., p. 37, ll. 12-20; p. 51, ll. 19-22; p. 62, ll. 11-17).

10633078 v2

**NUMBER 15:  UNDISPUTED**

**NUMBER 16:  DISPUTED** –Vic Hamby testified all underwriting criteria were met even in the absence of disclosure of the November 4 Shooting to Seneca. (Vic Hamby Depo., p. 164, l. 25 – p. 165, l.12).

**NUMBER 17:  DISPUTED** – First and foremost, the Loss History Grid requests only those occurrences "which may give rise to claims" a subjective standard.  (Ex. 39 at SEN467).  Second, Seneca did not review the Final Application, so such allegation is immaterial and irrelevant.  (Pluskalowski Depo., p. 224, ll. 5-9).  Finally, Seneca knew or should have known there were blanks in the Loss History Grids submitted.  (Ex. 39 at SEN467).

**NUMBER 18:  DISPUTED** – Seneca asserts only a conclusion of law and no "fact" regardless of materiality.  Such assertion is prohibited by this Court's Standing Order Regarding Civil Litigation.  (Order, p. 8)

**NUMBER 19:  UNDISPUTED**

**NUMBER 20:  UNDISPUTED**

**NUMBER 21:  DISPUTED** – Seneca misstates Marty Friedman's testimony regarding any review of the Final Application with Safeway.  Mr. Friedman testified as follows:

> Q.    Okay.  And did you review this application with Mr. Shaikh before he signed it?

10633078 v2

A.    We went over it, yes.  And he – you know, again, **we had a trusting relationship** and he signed it, yes.  We went line by line **or, yeah, he – I told him what he was signing.**

Q.    You told him what he was signing, but what – **did Mr. Shaikh actually review the application?**

A.    **You'll have to ask Mr. Shaikh that.**

Q.    So you don't know one way or another?

A.    Right.

Q.    You presented it to him for signature.  It was already filled out, correct?

A.    Correct.  And, you know, he should review it.  It's his – it's his account, okay.

**Q.    Do you recall highlighting any portions of the application for discussion with Mr. Shaikh?**

**A.    I do not.**

**Q.    Do you recall talking about any portion of the application in specific?**

**A.    I do not.**  We had reveiwed the proposal and, you know, we had agreed on the price.  And he said, Okay, let's move forward.

(Friedman Depo., p. 72, l. 21 – p. 73, l. 19) (emphasis added).

**NUMBER 22:  UNDISPUTED**

**NUMBER 23:  UNDISPUTED**

**NUMBER 24:  UNDISPUTED**

**NUMBER 25:  DISPUTED –** The Applications *contained* ACORD forms but also included other information and materials beyond the ACORD forms. (Exs. 39 and 40).

**NUMBER 26: DISPUTED** – Seneca asserts a legal conclusion and cites only to the opinion of its own expert which is prohibited in Statements of Undisputed, Material Facts. (Standing Order Regarding Civil Litigation, p. 8). Moreover, Safeway's expert, Richard Franklin disagreed and testified the ACORD forms contain ambiguities, in particular in the Loss History Grid. (Ex. 151, p. 8, ¶ 10).

**NUMBER 27: DISPUTED** – Seneca fails to include the complete inquiry including the option for an applicant to "CHK HERE IF NONE" which was left blank on the Applications. The complete Loss History Grid appears as follows:

| LOSS HISTORY | | | | | | | |
|---|---|---|---|---|---|---|---|
| ENTER ALL CLAIMS OR LOSSES (REGARDLESS OF FAULT AND WHETHER OR NOT INSURED) OR OCCURRENCES THAT MAY GIVE RISE TO CLAIMS FOR THE PRIOR 5 YEARS (3 YEARS IN KS & NY) | | | | | | CHK HERE IF NONE | SEE ATTACHED LOSS SUMMARY |
| DATE OF OCCURRENCE | LINE | TYPE/DESCRIPTION OF OCCURRENCE OR CLAIM | DATE OF CLAIM | AMOUNT PAID | AMOUNT RESERVED | | CLAIM STATUS OPEN CLSD |
| | | Loss runs on file with the underwriters | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

(Ex. 39 at SEN467).

**NUMBER 28: DISPUTED** – Seneca misleads the Court by failing to include all of Mr. Shaikh's testimony which reads as follows:

> Q.    Okay. So that – you understood that to mean that you needed to put claims or losses that you knew about that actually had been made, right?
>
> A.    I did not read it orally. You know, my – he asked me questions about this entity or is the applicant a subsidiary of another entity. I said no. Does the applicant have any subsidiaries? No. Is a formal safety program in operation? No. That's what I – filled out.

Q. All right. But I'm focused on the loss history part of this –

A. Yes.

Q. – now. Are you with me?

A. Yes.

Q. Okay. Good.

And –

A. So –

Q. – there were no specific losses of claims or occurrences that were listed here in this application; right?

A. Yes.

Q. There was just a reference to loss runs on file with the underwriters?

A. Yes.

Q. Okay.

So, Mr. Shaikh, Safeway did not list any claims, losses, or occurrences right here? It was just a reference to loss runs on file; right?

A. Loss runs on file.

Q. Okay. And we've already established, have we not, that there were claims and occurrences on at least the Tri County Shopping Center property that were not reflected in the loss runs; right?

MS PARDI:   Object to form.

**A. No. The loss runs – I thought loss runs have everything.**

(Safeway 30(b)(6) Depo., p. 221, l. 18 – p. 223, l. 3) (emphasis added).

10633078 v2

**NUMBER 29:  UNDISPUTED** (as to the Application forms only).

**NUMBER 30:  DISPUTED** – Question 18 does not appear in the Final Application.  (Ex. 40).

**NUMBER 31:  DISPUTED** – The response was prepared by H&A without review by Safeway.  (Friedman Depo., p. 38, ll. 3-9; p. 45, ll. 3-9; p. 47, ll. 1-8).

**NUMBER 32:  DISPUTED** – Mr. Shaikh did not sign the October, 2013 Application.  (Ex. 39 at SEN466).

**NUMBER 33:  UNDISPUTED**

**NUMBER 34:  UNDISPUTED**

**NUMBER 35:  DISPUTED** – Safeway admitted *certain* crimes were *alleged* to have occurred at the Tri County Shopping Center (*See e.g.* Ex. 2 at Interrog. 8).  Seneca had knowledge of crimes as well.  (*See e.g.* Exs. 39, 59, 90 and 61).

**NUMBER 36:  DISPUTED** – The term "violent crimes" was defined unilaterally by Seneca, and such definition consistently was objected to by Safeway:

> MS PARDI:       Can we just cut to the – burglary is not a violent crime, is my objection.

> MS CAVE:       Okay.  All right.  Let me –

> MS. PARDI:       Whether you have a weapon or not, burglary is not a violent crime.

(*See e.g.* Safeway 30(b)(6) Depo., p. 29, ll. 10-14).

10633078 v2

**NUMBER 37:  UNDISPUTED**

**NUMBER 38:   DISPUTED –** Safeway notified Seneca and/or other insurers of alleged incidents 2 and 3 prior to binding of the Seneca Policy.  (Exs. 59, 61 and 90).

**NUMBER 39:  UNDISPUTED**

**NUMBER 40:  UNDISPUTED**

**NUMBER 41:  UNDISPUTED**

**NUMBER 42:  UNDISPUTED**

**NUMBER 43:   DISPUTED** – The December 9, 2011 incident with a reserve of more than $200,000.00, was disclosed on the Loss Run Summary prepared and submitted to Seneca by H&A.  (Ex. 61).

**NUMBER 44:  UNDISPUTED**

**NUMBER 45:   DISPUTED** – The property manager for Tri County Shopping Center received an email regarding an *alleged* shooting.  (Ex. 11). Moreover, this alleged incident was disclosed to Seneca on loss runs.  (Ex. 59 at SEN1482).

**NUMBER 46:  UNDISPUTED**

**NUMBER 47:  UNDISPUTED**

**NUMBER 48:  UNDISPUTED**

**NUMBER 49:  UNDISPUTED**

**NUMBER 50:  UNDISPUTED**

**NUMBER 51:  UNDISPUTED**

**NUMBER 52:  UNDISPUTED**

**NUMBER 53:  DISPUTED** – Safeway had notice of an *alleged* incident involving Ray Smith, Jr.  (Ex. 23).

**NUMBER 54:  UNDISPUTED**

**NUMBER 55:  DISPUTED** – The Ray Smith incident was an *alleged* violent crime, and the lawsuit referenced in Number 54 above was filed after the October 2, 2013 Application, the only Application reviewed by Seneca.  (Ex. 24).

**NUMBER 56:  DISPUTED** – Exhibit 9 references an *alleged* homicide on a property not owned, operated or affiliated with the Safeway Defendants. Moreover, the remainder of the alleged incidents referenced are nothing more than vague hearsay with no details of the allegations or alleged victims.  (Ex. 9).

**NUMBER 57:  UNDISPUTED**

**NUMBER 58:  DISPUTED** – The references to purported crimes are so vague as to prevent the Safeway Defendants from determining if they appear on any loss runs.  The Safeway Defendants do not dispute the alleged theft at Alter Ego was not on any loss runs or Applications.

**NUMBER 59:  UNDISPUTED**  The Safeway Defendants note, however, there is no timeframe associated with this testimony.

10

10633078 v2

**NUMBER 60:  UNDISPUTED**

**NUMBER 61:  UNDISPUTED**

**NUMBER 62:  UNDISPUTED**

**NUMBER 63:  UNDISPUTED**

**NUMBER 64:  UNDISPUTED**

**NUMBER 65:  UNDISPUTED**

**NUMBER 66:  UNDISPUTED**

**NUMBER 67:  UNDISPUTED**

**NUMBER 68:  DISPUTED** – The Final Application, which was not reviewed by Seneca, contains the same blanks regarding loss history in the Loss History Grid as the October 2, 2013 Application.  (Ex. 40).  Accordingly, the concept of "updating" is inapplicable.

**NUMBER 69:  DISPUTED** – Mr. Pluskalowski did not review the Final Application.  (Pluskalowski Depo., p. 224, ll. 5-9).  Additionally, he knew the answer to Question 18 regarding crimes, which appears in the October 2, 2013 Application, but not the Final Application, was incorrect based upon loss runs submitted disclosing crimes.  (*Id.* at p. 66, ll. 14-21).  Finally, Mr. Pluskalowski knew or should have known there were blanks in the Loss History Grid.  (Exs. 39 and 40).

**NUMBER 70:  UNDISPUTED**

11

**NUMBER 71:  UNDISPUTED**

**NUMBER 72:  DISPUTED** – Seneca asserts a legal conclusion prohibited by this Court's Standing Order Regarding Civil Litigation (p. 8) and for which its own expert admitted he has no authority:

> Q.     And you said that an application always trumps loss runs, correct?
>
> A.     Yes, I said that.
>
> Q.     So you are basically saying the underwriter can simply rely on the initial application and disregard the loss runs?
>
> A.     No.   I was referring to if there's an inconsistency between the two of them.
>
> Q.     Okay.  **Do you have any authority for that principal?**
>
> Is there a law, a book, anything that says that that's the way to do it?
>
> A.     **Not that I know of.**

(Knepper Depo., p. 258, ll. 2-14).

**NUMBER 73:  DISPUTED** – Seneca asserts a legal conclusion prohibited by this Court's Standing Order Regarding Civil Litigation (p. 8) and for which is refuted by Mr. Pluskalowski's own testimony including but not limited to his testimony that crimes were disclosed in the October 2, 2013, Application (Pluskalowski Depo., p. 66, ll. 14-21).  Moreover, he had in his possession but ignored the following disclosures:

> 1. Loss runs with the Initial Application identifying $700,000 of paid crime claims (Ex. 39 at SEN489);

2. Loss runs sent after the Initial Application identifying multiple crimes on the Properties including shootings and assaults and batteries (Exs. 59 and 90);

3. The Loss Run Summary disclosing at least six assaults and batteries, an open claim reserved at approximately $210,000.00 and a loss ratio of approximately 95% as discussed in sections B(3) and C(2).  (Ex. 61);

4. A statement in the Initial Application that coverage previously was declined, cancelled or nonrenewed (Ex. 39 at SEN466); and

5. The Final Application stating Travelers cancelled due to losses in 2011 (Ex. 40).

**NUMBER 74:   DISPUTED** – The kidnapping and rape incident was disclosed to Seneca.  (Ex. 61).  Moreover, Mr. Pluskalowski contradicts his own testimony with evidence he possessed but ignored the following:

1. Loss runs with the Initial Application identifying $700,000 of paid crime claims (Ex. 39 at SEN489);

2. Loss runs sent after the Initial Application identifying multiple crimes on the Properties including shootings and assaults and batteries (Exs. 59 and 90);

3. The Loss Run Summary disclosing at least six assaults and batteries, an open claim reserved at approximately $210,000.00 and a loss ratio of approximately 95% as discussed in sections B(3) and C(2).  (Ex. 61);

4. A statement in the Initial Application that coverage previously was declined, cancelled or nonrenewed (Ex. 39 at SEN466); and

5. The Final Application stating Travelers cancelled due to losses in 2011 (Ex. 40).

**NUMBER 75:  UNDISPUTED**

10633078 v2

**NUMBER 76:  DISPUTED** – The Safeway Defendants do not dispute the existence of the quotes from Mr. Knepper's testimony, but they do dispute Safeway misrepresented any information or failed to comply with any of Seneca's actual requirements.  Safeway's underwriting expert, Richard Franklin, concluded as follows:

> "there was no material misrepresentation by Safeway regarding loss history, on premises crime, or any other matter of consideration in the application process for the insurance placed with Seneca Insurance Group."

(Ex. 151, p. 3(B)).

**NUMBER 77:  DISPUTED** – Seneca fails to state a "fact" but rather states an opinion of its own expert which was refuted by Richard Franklin, Safeway's expert, as follows:

> "there was no material misrepresentation by Safeway regarding loss history, on premises crime, or any other matter of consideration in the application process for the insurance placed with Seneca Insurance Group."

(Ex. 151, p. 3(B)).

**NUMBER 78:  DISPUTED** – Seneca fails to state a "fact."  Mr. Knepper's conclusions as to what Safeway purportedly knew and when and that Safeway purportedly "concealed" crimes are merely his opinions and interpretation and are prohibited in Statements of Material Undisputed Facts.  (Standing Order Regarding Civil Litigation, p. 8).  Moreover, Richard Franklin, Safeway's expert, concluded as follows:

14

"there was no material misrepresentation by Safeway regarding loss history, on premises crime, or any other matter of consideration in the application process for the insurance placed with Seneca Insurance Group."

(Ex. 151, p. 3(B)).

**NUMBER 79:  DISPUTED** – Seneca states a conclusion of law and not a fact.  Mr. Knepper's conclusions are merely his interpretation of facts and/or legal argument and are prohibited in Statements of Material Undisputed Facts. (Standing Order Regarding Civil Litigation, p. 8).  Moreover, Richard Franklin, Safeway's expert, testified:

> I conclude that by reporting these claims to the appropriate agent, Safeway met their reporting obligations and did not misrepresent their claim or crime experience.  It is accepted custom and practice in the industry for insured's to report notices of potential claims to agents since they best know how and when to report them to the appropriate insurer(s).

(Ex. 151, p. 8, ¶ 9).

**NUMBER 80:  DISPUTED** – Seneca fails to state a fact but rather asserts its own expert's conclusions which constitute interpretations prohibited by this Court.  (Standing Order Regarding Civil Litigation, p. 8).  Moreover, Mr. Knepper testified Seneca knew or should have known the response to Question 18 was false.  (Knepper Depo., p. 209, ll. 11-20; p. 210, ll. 5-15).  Mr. Knepper also testified, given the crimes shown on the loss runs submitted to Seneca that he expects he would have questioned the "No" answer to Question 18.  (*Id.* at p. 122, ll. 7-14). He went on to testify that when presented with contradictory facts during the

10633078 v2

underwriting process, he "would attempt to get a reconciliation for that."  (*Id.* at p. 158, ll. 11-17).   This comports with Mr. Pluskalowski's testimony regarding information he reviewed prior to binding which evidenced the answer to Question 18 was false. (Pluskalowski Depo., p. 66, ll. 14-21).

**NUMBER 81:  DISPUTED** – There is no evidence in the record "there were hundreds of crimes at the premises."   Moreover, Mr. Knepper's testimony does not constitute a fact but rather an unsupported hypothetical and prohibited interpretation.   (Standing Order Regarding Civil Litigation, p. 8).   Finally, Mr. Knepper testified he did not know whether Safeway knew of such crimes:  "I'm going to have to go down the middle on that.  I believe that they did, but I'm not a hundred percent certain that they did."  (Knepper Depo., p. 87, ll. 10-12).

Respectfully submitted this 24th day of January, 2017.

MORRIS, MANNING & MARTIN, LLP

/s/ Jessica F. Pardi

Jessica F. Pardi
Georgia Bar No. 561204
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326
(404) 233-7000
(404) 233-9532 (fax)
jpardi@mmmlaw.com
Attorney for Defendants/Third-Party Plaintiffs Safeway Group, Inc. and WH-Tri County Shopping Center, LLC

16                                                10633078 v2

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| SENECA INSURANCE COMPANY, INC. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CIVIL FILE NO. 1:16-CV-00174-WSD |
| SAFEWAY GROUP, INC.; WH-TRI COUNTY SHOPPING CENTER, LLC; and KEITH MITCHELL, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |
| | ) |
| SAFEWAY GROUP, INC.; WH-TRI COUNTY SHOPPING CENTER, LLC; | ) |
| | ) |
| Third-Party Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| HAMBY & ALOISIO, INC., | ) |
| | ) |
| Third-Party Defendants. | ) |
| _____ | ) |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **SAFEWAY GROUP, INC. AND WH-TRI COUNTY SHOPPING CENTER, LLC'S RESPONSE TO PLAINTIFF SENECA INSURANCE COMPANY, INC.'S**

10597968 v3

**STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GEUINE ISSUE TO BE TRIED** was filed electronically via CM/ECF in the United States District Court for the Northern District of Georgia, with notice of same being electronically served by the Court to all attorneys of record.

This 24th day of January, 2017.

/s/ Jessica F. Pardi
Jessica F. Pardi

18

10633078 v2