UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| SENECA INSURANCE COMPANY, INC. <br>       Plaintiff, <br> v. <br><br> SAFEWAY GROUP, INC.; WH-TRI COUNTY SHOPPING CENTER, LLC; and KEITH MITCHELL, <br>       Defendants, <br> v. <br><br> HAMBY & ALOISIO, INC., <br>       Third-Party Defendant. <br> _____ | )<br>)<br>)<br>)<br>)<br>) CIVIL FILE NO. 1:16-CV-00174-WSD<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF PLAINTIFF SENECA INSURANCE COMPANY, INC.

The undisputed evidence in this case demonstrates Safeway made <u>numerous</u>, <u>material</u> misrepresentations in its October 2, 2013 Commercial Insurance Application ("October 2013 Application")[1] and in the <u>signed</u> January 27, 2014 Commercial Insurance Application ("January 2014 Application")[2], concerning claims, losses, occurrences, and crimes. Although Safeway and WH-Tri County attempt to either ignore or excuse Safeway's obvious and complete failure to disclose numerous

---

[1] Safeway and WH-Tri County refer to this as the "Initial Application."

[2] Safeway and WH-Tri County refer to this as the "Final Application."

[1]

violent crimes and claims relevant to the underwriting process, their arguments do not establish any genuine issues of fact for trial.  Seneca has met its burden of proof and the undisputed and relevant facts, viewed in the light most favorable to Plaintiff, warrant judgment for Seneca as a matter of law.[3]

### A.   Seneca Has Demonstrated Safeway Made <u>Material Misrepresentations</u> In The October 2013 and January 2014 Applications

To hold the misrepresentations and omissions made by Safeway are not material here would undermine and render meaningless the application process for any insurance policy. Indeed, what else could be more material than a wrongful death claim? The undisputed facts clearly demonstrate Safeway knew of a triple shooting which led to a documented wrongful death claim, and knowingly omitted it from the signed Application.  Clearly, this is material.

Although Safeway and WH-Tri County consistently reference Seneca asked no questions concerning the information provided on the Applications, or the loss runs

---

[3] As noted in *Seneca Insurance Company, Inc.'s Brief In Response to Safeway Group, Inc. and WH-Tri County Shopping Center, LLC's Motion for Summary Judgment*, Seneca has conceded Safeway's notice of the Mitchell Claim was timely and Seneca is not pursuing Count III: Failure to Meet Condition Precedent of its *Petition for Rescission and Declaratory Judgment*.  Moreover, Seneca is no longer seeking to recover its costs and expenses in connection with the defense of the Underlying Lawsuit, as requested in (d) of the Petition's prayer for relief. Seneca seeks summary judgment on all remaining claims, as addressed herein and further addressed in its *Brief in Support of Motion for Summary Judgment on Behalf of Plaintiff Seneca Insurance Company, Inc.*

and loss run summary, Seneca is legally entitled to rely on statements of Safeway or H&A as true, without conducting an independent investigation. *Graphic Arts Mutual Insurance Co. v. Pritchett*, 220 Ga. App. 430, 469 S.E. 2d 199 (1995). "Applicants are motivated to supply the *whole* truth because they know that insurers can deny coverage if they do not. An insured thus cannot lie - even by omission - to an insurer by insisting that, had the insurer been more diligent…it would have learned of a material fact." Footnote 3 of *Colony Insurance Co. v. 9400 Abercorn, LLC*, 866 F. Supp. 2d 1376, 1379 (S.D. Ga. 2012).

Safeway's most egregious omission was its failure to disclose the November 4, 2013 shooting incident, which resulted in three people being shot, one fatally. [Exhibit "A": *Safeway 30(b)(6) Depo.*, pp. 100:1-18; 104:6-15; Exhibit 14 and Exhibit "B": *Safeway 30(b)(6) Depo. (Patel)*, pp. 22:10-16, 23:9-14; 41:19-25].[4] The undisputed evidence demonstrates Safeway knew of the shooting the day it occurred, visited the premises the next day to find out what happened, and even learned of a wrongful death claim from one of the victim's families – all before Safeway signed and submitted the January 2014 Application. [*Safeway 30(b)(6) Depo.*, pp. 100:24-25; 101:1-1; Exhibit "C": *H&A Depo.*, pp. 155:9-25; 156:1-25; 157:1-25; 158:1-25; 159:1, 14-19 and Exhibit "D": *Shaikh Depo.*, pp. 23:4-25; 24:1-7; 27:23-25; 28:1-22;

---

[4] Excerpts of the deposition transcripts, as cited herein, are attached hereto as Exhibits "A" through "H". The original transcripts have been filed with the Court.

[3]

29:2-23; Exhibit 164 and Exhibit "E": *Friedman Depo.*, pp. 91:13-25; 92:1-9]. Mr. Shaikh signed the January 2014 Application and it was submitted by H&A to Seneca with <u>no mention</u> of the November 4, 2013 triple shooting or the wrongful death claim, and the loss history was <u>not</u> updated to disclose either. [*Shaikh Depo.,* pp. 19:19-25; 20:1; 31:7-16 and *H&A Depo.*, pp. 160:5-12; 163:16-25; 164:1-2 and *Friedman Depo.*, pp. 65:20-25; 66:1-8; 76:3-9; 96:8-25; 97:1-15; 99:17-25; 100:1-12]. This omission was not only material; it was patently deceptive.

Safeway and WH-Tri County claim Seneca did not review the January 2014 Application and did not believe it had any relevance whatsoever. Safeway and WH-Tri County also assert any loss history information submitted after the October 2013 Application was not material to the issuance of the Policy. Such assertions are contradicted by the evidence. Seneca accepts loss runs submitted ninety (90) days prior to the effective date of a policy, however it is understood practice in the industry the agent and insured are expected to keep the company informed of any changes of the risk during the underwriting process. [Exhibit "F": *Pluskalowski Depo.*, pp. 29:25; 30:1-19]. It is incumbent upon Safeway and H&A to include any claims or losses or occurrences on the final application if not referenced in the loss runs. [*H&A Depo.*, p. 112:16-22].

[4]

Although Mitchell Pluskalowski testified the January 2014 Application "had no bearing on what we were doing," he further testified it was not important because he already had the other application. [*Pluskalowski Depo.*, p. 224:5-13]. The October 2013 Application referenced "loss runs on file with the underwriters." Even if Mitchell Pluskalowski reviewed the January 2014 Application, no new information regarding crimes were provided in that Application and he was again told to see "loss runs on file with the underwriters." [*Id.* at pp. 222:9-21; 254:8-24; Exhibit 39: SEN000467 and *H&A Depo.*, p. 162:4-11]. <u>Safeway did not provide additional loss runs</u>. Mitchell Pluskalowski believed he had all loss runs, though he later learned the loss runs he had did not encompass all of the incidents on the property. Moreover, the content of the January 2014 Application was the same as the October 2013 Application – no new or additional information was provided.

Safeway and WH-Tri County's assertion Mitchell Pluskalowski would have ignored new loss runs or information identifying a triple shooting and wrongful death claim is simply absurd. Simply put, Mr. Pluskalowski never had that opportunity to do so. Indeed, Safeway and WH-Tri County's circular argument ignores and conveniently sidesteps their obligation to disclose the incident and resulting claim. The fact Seneca knew of some other crimes from the previously submitted loss runs, or that Question 18 did not appear on the January 2014 Application, does not obviate

[5]

Safeway of its burden to provide updated loss runs identifying new crimes that occurred or had been attempted on the shopping center premises. Safeway's misrepresentations and failure to provide complete and updated loss runs is inexcusable.

Safeway and WH-Tri County's argument that Mitchell Pluskalowski ignored the loss history in his possession is also without merit since the evidence clearly establishes he reviewed the loss runs. Contrary to Plaintiff's assertions, Mitchell Pluskalowski did not testify that a disclosed claim without a significant payment was irrelevant to his analysis of the risk. Rather, he distinguished between open versus closed claims and noted if a claim is closed, and had small reserves with only small payouts or expenses paid, it indicated there was not a lot of validity to the claim. [*Pluskalowski Depo*., p. 141:3-17]. He further testified if there was a large reserve on an open claim, it would be an indication it could be an issue. [*Id.* at pp. 143:13-14; 154:8-13]. He analyzed frequency, i.e. how many losses/incidents occurred, and severity, i.e. how large of a loss occurred, and testified an underwriter would take into account not only whether there were a high frequency of crimes with a low dollar value associated with the losses, but whether Question 18 was answered yes to identify crimes on the property. [*Id.* at pp. 139:1-14; 140:21-25; 141:23-25; 142:1-11]. Mitchell Pluskalowski testified since the answer to Question 18 was "No," and

[6]

the application was supposed to be answered honestly, he assumed a closed claim with no pay indicated it was not a valid claim. [*Id.* at p. 148:4-10].[5] He testified he had to take all three together to form an opinion of the risk. [*Id.*].[6]

Furthermore, although Safeway and WH-Tri County contend William Knepper rendered the opinion he would not have bound coverage given the application in Seneca's possession, both he and Mitchell Pluskalowski testified that had Seneca received information regarding the kidnapping and rape incident and the November 2013 shooting incident, Seneca would have chosen, at a minimum, one of three options: decline coverage, exclude coverage for assault and battery, or look for an additional premium. [*Pluskalowski Depo*., pp. 257:3-25; 258:1-25; 259:1-14; 272:12-14; 273:2-19 and Exhibit "G": *Knepper Depo.*, pp. 104:10-17; 184:15-25; 185:1;

---

[5] In his analysis of the loss runs, Mitchell Pluskalowski eliminated the June 22, 2012 Carlton Miller incident because Safeway answered "No" to Question 18, and it was a closed claim for an assault/fight for which money was only paid for expenses. [*Pluskalowski Depo*., pp. 209:15-25; 210:1-6]. The two theft crimes on the loss run totaling over $700,000 were related to property loss and did not demonstrate to Mitchell Pluskalowski that an external crime occurred. [*Id*. at pp. 66:17-25; 67:1-17].
[6] The only open claim of note, which was on the loss summary, but not the loss runs, was the only incident that showed an open reserve of approximately $200,000. [*Pluskalowski Depo*., p. 144:1-5]. Mr. Pluskalowski noted, "When you take into context we had 12 years of hard copy loss runs and 42 locations on the schedule, that was a minute detail." [*Id*. at p. 144:1-8]. He believed that claim to be an "outlier." [*Id*. at pp. 208:12-25; 209:1-4]. Although Seneca determined there was no severity based on the information available to it at the time, Mitchell Pluskalowski testified an underwriter will request additional information for open claims if there is a combination of frequency and severity. [*Id*. at p. 143:10, 18-25; 144:1-12].

200:21-25; 201:1-8; 207:3-13; Exhibit 131, pp. 4-5].[7] William Knepper also testified had Seneca known of the hundreds of crimes on the premises which it subsequently learned of, Mitchell Pluskalowski would have performed a further underwriting process to make an informed decision on the risk. [*Knepper Depo.*, pp. 211:3-6; 213:25; 214:1-25; 215:1-18; Exhibit 131, p. 6].

Material misrepresentation is an objective standard and any prudent insurer would certainly expect a rape and kidnapping, and multiple shootings including one that led to a death, to be fully disclosed on an application for insurance coverage. Safeway's failure to do so was material to the risk.   To conclude otherwise improperly rewards Safeway.

**B.     Safeway and WH-Tri County Wrongfully Assert H&A Did Not Interview Safeway, Review Loss Runs With Safeway, Or Review the January 2014 Application with Safeway Line By Line**

Safeway and WH-Tri County falsely claim Mr. Friedman of H&A testified he did not do a client interview or meet with Rafat Shaikh to discuss anything. In fact, Mr. Friedman testified an interview with the client occurred at both the inception of the relationship and also at renewals, and on an as needed basis. [*Friedman Depo.*, p. 37:1-5]. H&A reviews and discusses the loss runs with the client to ensure they are current and complete. [*H&A Depo.*, pp. 56:18-20; 58:1-13; 112:12-15; *Friedman*

---

[7] William Knepper testified as to a fourth option: to provide a different amount of insurance. [*Knepper Depo.*, pp. 104:10-17; Exhibit 131, pp. 4-5].

*Depo.*, p. 89:2-22]. Mr. Friedman testified he went to Safeway office's before the Seneca policy was quoted, specifically for the purpose of conducting a loss run review. [*Friedman Depo.*, p. 89:2-22]. Moreover, Mr. Friedman met with Rafat Shaikh on January 27, 2014, at which time Mr. Friedman reviewed the January 2014 Application with Mr. Shaikh, line by line, and Mr. Shaikh signed the Application documents on behalf of Safeway. [*Friedman Depo.*, pp. 65:9-25; 66:1-14; 69:2-24; 72:21-25; 73:1 and *Safeway 30(b)(6) Depo.*, pp. Errata Sheet 252-253; 254:22-24; Exhibit 40, SEN005983-SEN0005984 and *Shaikh Depo.,* pp. 19:19-25; 20:1-25; 21:1-5; 24:7-20; 31:7-16; Exhibits 162 and 164]. Mr. Friedman specifically testified he reviewed the application with Mr. Skaikh before he signed it and "we went over it, yes. And he – you know, again, we had a trusting relationship and he signed it, yes. We went line by line or, yeah, he – I told him what he was signing." [*Friedman Depo.*, pp. 72:21-25; 73:1].[8]

---

[8] Insofar as Safeway and WH-Tri County assert H&A was Seneca's agent, the testimony clearly demonstrates otherwise. H&A procured insurance policies with various insurers for Safeway for approximately six years prior to procuring the Seneca Policy. [*Safeway 30(b)(6) Depo.*, p. 146:4-7 and *Shaikh Depo.*, pp. 11:16-25; 12:1-7 and *H&A Depo.*, pp. 66:24-25; 67:1-3]. Specifically, Rafat Shaikh testified Safeway hired Hamby & Aloisio to handle its insurance matters after his friend recommended Mr. Friedman. [*Safeway 30(b)(6) Depo.*, pp. 145:1-25; 146:1-11]. It is undisputed H&A was Safeway's agent and Safeway is bound by all representations made by H&A during the application process. [*Safeway 30(b)(6) Depo.*, pp. 55:4-17; 146:4-7; 157:25; 158:1-2 and *Shaikh Depo.*, pp. 11:16-25; 12:1-7 and *H&A Depo.*, pp. 66:24-25; 67:1-3].

**C.     Safeway And WH-Tri County Failed To Disclose the Rape and Kidnapping Incident Of December 9, 2011 And The Shooting Incident Of June 22, 2012**

Safeway and WH-Tri County assert the following crimes were disclosed: (1) an alleged rape and kidnapping that occurred on December 9, 2011; (2) an alleged battery inside Club Ritz that occurred on June 22, 2012; and (3) an alleged assault and battery that occurred on January 13, 2012 involving Kiera Sims. Safeway and WH-Tri County conveniently skew the evidence, but the evidence speaks for itself.

Safeway and WH-Tri County conveniently ignore that the December 9, 2011 incident was identified on the H&A loss summary spreadsheet merely as an assault and battery. [*Friedman Depo.*, p. 57:9-23; Exhibit 61]. Seneca had no knowledge the incident was actually a rape and kidnapping;  it was not disclosed in the Applications or described as a rape or kidnapping in the loss runs. [*Safeway 30(b)(6) Depo.*, pp. 60:6-10; 61:1-3; Exhibit 5; Exhibit "H": *Mrakovcic Depo.*, pp. 83:8-25; 84:1-5; and *Friedman Depo.*, p. 57:9-23; Exhibit 61]. Seneca required actual loss runs, not summaries, to bind coverage. [*Pluskalowski Depo.*, p. 211:13-18]. [9]

---

[9] It is Safeway's duty and responsibility to look at the loss runs and see whether they are accurate. [*Knepper Depo.*, pp. 198:10-25; 199:1-21]. Nonetheless, Safeway does not go through the loss runs to ensure all pertinent information is reflected regarding its properties, and any occurrences or incidents that occurred. [*Safeway 30(b)(6) Depo.*, pp. 162:12-25; 163:1-7 and *Safeway 30(b)(6) Depo.*(*Patel*), pp. 33:11-25; 38:1-10].

As relates to Seneca's purported knowledge of the alleged battery inside Club Ritz on June 22, 2012, the undisputed evidence demonstrates Safeway had knowledge of the June 22, 2012 shooting incident on June 26, 2012. [*Safeway 30(b)(6) Depo.*, pp. 92:1-25: 93:1-15; Exhibit 11]. Safeway received correspondence dated November 12, 2012 regarding a claim by the victim, Carlton Miller. [*Id.* at pp. 143:22-25; 144:1-7*; Exhibit 32]. Even though Safeway was not a named Defendant in the lawsuit served on December 12, 2012, WH-Tri County was a named Defendant. [*Id.* at pp. 65: 1-25; 66: 1-19; Exhibit 2, Interrog. 10; Exhibit 6; Exhibit 47, Req. For Adm. 37-38].  Safeway knew of the shooting, yet it was <u>not</u> disclosed in the Applications or on the loss runs provided to Seneca. [*Id.* at p. 203:18-24].  Rather, the loss run identified the Carlton Miller incident as an assault/fight. [*H&A Depo.*: Exhibit 59 at SEN0001482].[10]  Clearly, a shooting is more egregious than a mere assault/fight, and Safeway had an obligation to advise Seneca of the true nature of the crime that actually occurred.[11]  Safeway did not.

---

[10] Exhibit 90 does not identify the Carlton Miller incident claim.

[11] Safeway received notice of the January 13, 2012 assault involving Kiara Sims on July 5, 2012. [*Safeway 30(b)(6) Depo.*, pp. 141:13-25, 142:1-4; Exhibit 30 and *Safeway 30(b)(6) Depo. (Patel)*, p. 27:12-23]. Ms. Sims filed and served a lawsuit against Safeway and WH-Tri County in April 2013. [*Safeway 30(b)(6) Depo.*, p. 142:13-22; Exhibit 31; Exhibit 47, Req. For Adm. 35-36]. The incident was disclosed on the loss run summary, but no information regarding the incident was on the loss runs. Again, Seneca required actual loss runs, not summaries, to bind coverage. [*Pluskalowski Depo.*, p. 211:13-18]. Seneca was never notified of the lawsuit.

In addition to the inadequate or complete non-disclosure of the incidents that occurred on December 9, 2011, January 13, 2012 and June 22, 2012, Safeway also failed to disclose the November 12, 2011 incident involving Ray Smith. Safeway knew it involved a shooting and notified H&A on June 29, 2012 of a possible claim for injury. [*Safeway 30(b)(6) Depo.*, pp. 121:5-25; 122:1-5, 15-19; Exhibit 23 and *Safeway 30(b)(6) Depo. (Patel)*, pp. 23:16-25; 24:1-23 and *H&A Depo.*, p. 135: 1-7]. Despite its knowledge, Safeway did not disclose the incident on the Applications, and it was not included in loss runs or the loss run summary prepared by H&A. [*Safeway 30(b)(6) Depo.*, pp. 122:20-25; 123:1-16; 203:5-17; Exhibit 24 and *H&A Depo.*, pp. 123:22-25; 124:1-2, 125:19-25; 126:1-25; 127:1-8; 135:8-11; 136:5-9; 137:22-25; 149:18-23; 163:2-15; Exhibit 61].[12]

**D.    Seneca Did Not Waive Its Right To Rescind The Policy And Has Property Defended The Mitchell Claim Under A Reservation Of Rights**

Safeway's argument regarding waiver simply fails. The Georgia Court of Appeals has repeatedly held an insurer "is not required to list each and every basis for

_____

[12] Safeway and WH-Tri County try to minimize Safeway's failure to disclose the alleged assault inside Club Ritz on August 27, 2011; an alleged assault inside Club Ritz on October 15, 2012; and an alleged shooting at the 50 Yard Line on June 26, 2013. The fact that no claimants or victims' names were known, that no payments had been made to date, and that no claims had been asserted are wholly irrelevant. What is material is that all three incidents were known by Safeway and should have been disclosed in response to both Question 18 regarding crimes on the property and the question seeking information on "*occurrences that may give rise to claims.*"

[12]

contesting coverage in a reservation of rights letter." *Wellons, Inc. v. Lexington Ins. Co.*, 566 Fed. Appx. 813, 822 (11th Cir. Ga. 2014).   Moreover, if an insured fails to object to a reservation of rights letter and permits its insurer to go forward with its defense of a lawsuit, an insured is deemed to have consented to the letter's terms. *Jacore Sys. v. Cent. Mut. Ins. Co.*, 194 Ga. App. 512, 514, 390 S.E.2d 876, (1990).  <u>If an insured does not object to the reservation of rights letter, the insurer is not required to file a declaratory judgment action within any particular time period, or at all, to avoid estoppel</u>. *Boatright v. Old Dominion Ins. Co.*, 304 Ga. App. 119, 124, 695 S.E.2d 408 (2010)(emphasis added).  Safeway and WH-Tri County did <u>not</u> object to the April 7, 2015 "acknowledgement letter with a reservation of rights," or the May 13, 2015 reservation of rights letter, nor have they refused to consent to their defense under the reservation of rights.  Thus, Seneca has not waived its right to rescind the Policy and there was no set time period in which Seneca was obligated to file its Petition for Rescission and Declaratory Judgment.

### E.   Conclusion

Safeway unequivocally failed to provide complete and accurate information when applying for insurance coverage with Seneca and its false statements and omissions were material to Seneca's acceptance of the risk.  Seneca would have made a different underwriting decision if all information regarding the criminal activity on

[13]

the property, including the rape and kidnapping and multiple shootings, had been disclosed. The undisputed evidence reveals such activity was not disclosed.

Safeway's material misrepresentations mandate rescission of the Policy, *ab initio*, as well as a determination it owes no duty to defend or indemnify Safeway and WH-Tri County to the Underlying Lawsuit. Plaintiff Seneca respectfully requests this Court grant Summary Judgment in its favor and deny the Cross-Motion for Summary Judgment filed on behalf of Safeway and WH-Tri County.

Respectfully submitted this 7th day of February 2017.

**SWIFT, CURRIE, McGHEE & HIERS, LLP**

*/s/ Jennifer L. Nichols*
Maren R. Cave
Georgia Bar No. 278448
Jennifer L. Nichols
Georgia Bar No. 001294
***Attorneys for Plaintiff***

[14]

## **CERTIFICATION**

Pursuant to LR 7.1(D) NDGa., I certify that this document has been prepared in

Times New Roman Font 14 point, as approved by the Court in LR 5.1C, NDGa.

This 7th day of February 2017.

                **SWIFT, CURRIE, McGHEE & HIERS, LLP**

                */s/ Jennifer L. Nichols*
                Maren R. Cave
                Georgia Bar No. 278448
                Jennifer L. Nichols
                Georgia Bar No. 001294
                ***Attorneys for Plaintiff***

The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309-3231
Telephone: (404) 874-8800
Facsimile: (404) 888-6199
maren.cave@swiftcurrie.com
jennifer.nichols@swiftcurrie.com

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SENECA INSURANCE              )
COMPANY, INC.                 )
      Plaintiff,        )
v.                            )
                      ) CIVIL FILE NO. 1:16-CV-00174-WSD
SAFEWAY GROUP, INC.; WH-      )
TRI COUNTY SHOPPING           )
CENTER, LLC; and KEITH        )
MITCHELL,                     )
      Defendants,       )
v.                            )
                              )
HAMBY & ALOISIO, INC.,        )
      Third-Party Defendant.  )
_____ )

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing

***Reply Brief in Support of Motion for Summary Judgment on Behalf of Plaintiff***

***Seneca Insurance Company, Inc.*** upon all parties to this matter via electronic service

through the Court's CMC/EF system as follows:

Jessica F. Pardi
MORRIS, MANNING & MARTIN, LLP
1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326

[16]

Charles L. Clay, Jr.
Jennifer R. Harbaugh
Christopher B. Newbern
CHUCK CLAY & ASSOCIATES, LLC
4401 Northside Parkway, Suite 520
Atlanta, GA 30327

Darren Summerville
SUMMERVILLE FIRM
400 Colony Square, Suite 2000
1201 Peachtree Street, N.E.
Atlanta, GA  30361

Kevin A. Doyle
Lokey, Mobley and Doyle, LLP
8425 Dunwoody Place
Atlanta, GA 30350

This 7th  day of February 2017.

**SWIFT, CURRIE, McGHEE & HIERS, LLP**

*/s/ Jennifer L. Nichols*
Maren R. Cave
Georgia Bar No. 278448
Jennifer L. Nichols
Georgia Bar No. 001294
***Attorneys for Plaintiff***

The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, Georgia 30309-3231
Telephone: (404) 874-8800
Facsimile: (404) 888-6199
maren.cave@swiftcurrie.com
jennifer.nichols@swiftcurrie.com

[17]

3357932v.1